# **EXHIBIT B**



**U.S. Department of Justice**
Civil Division, Federal Programs Branch
20 Massachusetts Ave., NW
Washington, DC 20530

September 28, 2017

<u>**Via ECF and by Fax**</u>

The Hon. Naomi Reice Buchwald
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

  Re:  *Knight First Amendment Institute at Columbia University, et al. v. Trump, et al.,*
    **No. 17-cv-5205 (NRB)**

Dear Judge Buchwald,

  The parties in the above-referenced matter seek leave to file a corrected version of the stipulation that the parties submitted as an attachment to their September 25, 2017 letter motion. *See* Joint Letter Mot. for Conference, ECF No. 28. The corrected version is attached to this letter motion, and it removes the word "DRAFT" from the header of the stipulation. The two versions of the stipulation are otherwise identical (save for an update to the date and the signature block).

  To avoid confusion, the parties also request that the Court ask the Clerk's office to remove from the public docket, or disable the electronic link to, the original version of the stipulation, *see* Stipulation, ECF No. 28-1, if such a result is feasible.

        Respectfully submitted,

        */s/ Jameel Jaffer*       

Jessica Ring Amunson (*pro hac vice*)  Jameel Jaffer (JJ-4653)
Tassity S. Johnson (*pro hac vice*)   Katherine Fallow (KF-2535)
Jenner & Block LLP       Alex Abdo (AA-0527)
1099 New York Avenue, NW, Suite 900 Knight First Amendment Institute
Washington, DC 20001       at Columbia University
              314 Low Library
              535 West 116th Street
              New York, NY 10027
              (212) 854-9600

Jameel.Jaffer@knightcolumbia.org

*Counsel for Plaintiffs*


CHAD A. READLER
Acting Assistant Attorney General

ERIC R. WOMACK
Assistant Branch Director

*/s/ Michael H. Baer*
MICHAEL H. BAER
DANIEL HALAINEN
Trial Attorneys
U.S. Department of Justice,
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20530
Telephone:     (202) 305-8573
Facsimile:     (202) 616-8460
E-mail: Michael.H.Baer@usdoj.gov

*Counsel for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KNIGHT FIRST AMENDMENT INSTITUTE AT COLUMBIA UNIVERSITY, *et al.*,<br><br>　　　　*Plaintiffs*,<br><br>　　v.<br><br>DONALD J. TRUMP, President of the United States, *et al.*,<br><br>　　　　*Defendants*. | No. 17-cv-5205 (NRB) |

## STIPULATION

　　　The parties in the above-captioned matter hereby stipulate to the following facts for purposes of this litigation.  The parties have agreed that this Stipulation applies exclusively to this litigation and does not constitute an admission for purposes of any other proceeding, and Defendants have agreed that they will not contest Plaintiffs' allegation that the Individual Plaintiffs were blocked from the President's Twitter account because the Individual Plaintiffs posted tweets that criticized the President or his policies.

　　　1.　　　Plaintiff Knight First Amendment Institute at Columbia University is a 501(c)(3) organization that works to defend and strengthen the freedoms of speech and the press in the digital age through strategic litigation, research, and public education. Staff at the Knight First Amendment Institute operate a Twitter account under the handle @knightcolumbia, and this account follows @realDonaldTrump.

　　　2.　　　Plaintiff Rebecca Buckwalter, who resides in Washington, DC, is a writer and political consultant. She operates a verified Twitter account under the handle @rpbp.

1

3.      Plaintiff Philip Cohen, who resides in Takoma Park, MD, is a professor of sociology at the University of Maryland, College Park. He operates a verified Twitter account under the handle @familyunequal.

4.      Plaintiff Holly Figueroa, who resides in Mercer Island, WA, is a political organizer and songwriter. She operates a verified Twitter account under the handle @AynRandPaulRyan.

5.      Plaintiff Eugene Gu, who resides in Nashville, TN, is a resident in general surgery at Vanderbilt University Medical Center and the CEO of Ganogen Research Institute. He operates a verified Twitter account under the handle @eugenegu.

6.      Plaintiff Brandon Neely, who resides in Tomball, TX, is a police officer. He operates a verified Twitter account under the handle @BrandonTXNeely.

7.      Plaintiff Joseph Papp, who resides in Bethel Park, PA, is a former professional road cyclist and current anti-doping advocate and author. He operates a verified Twitter account under the handle @joepabike.

8.      Plaintiff Nicholas Pappas, who resides in New York City, is a comic and writer. He operates a verified Twitter account under the handle @Pappiness.[1]

9.      Defendant Donald Trump is President of the United States and is sued in his official capacity only. President Trump operates and oversees the operation of a verified Twitter account under the handle @realDonaldTrump. The President has blocked all of the Plaintiffs except the Knight First Amendment Institute from this account.

---

[1] For ease of reference, Plaintiffs other than the Knight Institute are referred to herein as the "Individual Plaintiffs," collectively.

2

10. Defendant Hope Hicks is the White House Acting Communications Director and is sued in her official capacity only. Ms. Hicks does not have access to the @realDonaldTrump account.

11. Defendant Sarah Huckabee Sanders is the White House Press Secretary and is sued in her official capacity only. Ms. Sanders does not have access to the @realDonaldTrump account.

12. Defendant Daniel Scavino is the White House Social Media Director and Assistant to the President and is sued in his official capacity only. Mr. Scavino posts messages on behalf of President Trump to @realDonaldTrump and other social media accounts, including @POTUS and @WhiteHouse. Mr. Scavino has access to the @realDonaldTrump account, including the access necessary to block and unblock individuals from the @realDonaldTrump account.

13. Twitter is a social media platform with more than 300 million active users worldwide, including some 70 million in the United States. The platform allows users to post short messages, to repost or respond to others' messages, and to interact with other Twitter users in relation to those messages.

### **How Twitter Works[2]**

14. <u>Users</u>. A Twitter "user" is an individual who has created an account on the platform. A user can post "tweets," up to 140 characters in length, to a webpage on Twitter that is attached to the user's account. Tweets can include photographs, videos, and links. Some Twitter users do not tweet—i.e., post messages—at all. Others post hundreds of messages a day.

---

[2] The parties agree that the Court may take judicial notice of the information published in the "Using Twitter" and "Policies and reporting" guides available on Twitter's "Twitter Support" webpage, https://support.twitter.com/.

15. <u>Timelines</u>. A Twitter user's webpage displays all tweets generated by the user, with the most recent tweets appearing at the top of the page. This display is known as a user's "timeline." When a user generates a tweet, the timeline updates immediately to include that tweet. Anyone who can view a user's Twitter webpage can see the user's timeline. Below is a screenshot of part of the timeline associated with the @realDonaldTrump account:



16.     A Twitter user must have an account name, which is an @ symbol followed by a unique identifier (e.g., @realDonaldTrump), and a descriptive name (e.g., Donald J. Trump). The account name is called the user's "handle." Alongside the handle, a user's webpage will display the date the user joined Twitter and a button that invites others to "Tweet to" the user. (This button is visible only to other Twitter users.) A user's Twitter webpage may also include a short biographical description; a profile picture, such as a headshot; a "header" image, which appears as a banner at the top of the webpage; the user's location; a button labeled "Message," which allows two users to correspond privately; and a small sample of photographs and videos posted to the user's timeline, which link to a full gallery. Thus, part of the webpage for @realDonaldTrump recently looked like this:



17.    <u>Tweets</u>. An individual "tweet" comprises the tweeted content (i.e., the message, including any embedded photograph, video, or link), the user's account name (with a link to the user's Twitter webpage), the user's profile picture, the date and time the tweet was generated, and the number of times the tweet has been replied to (♡), retweeted by (↻), or liked by (♡) other users. Thus, a recent tweet from @realDonaldTrump looks like this:



18.    By default, Twitter webpages and their associated timelines are visible to everyone with internet access, including those who are not Twitter users. However, although non-users can view users' Twitter webpages (if the accounts are public), they cannot interact with users on the Twitter platform.

19.    <u>Following</u>. Twitter users can subscribe to other users' messages by "following" those users' accounts. Users generally can see all tweets posted or retweeted by accounts they have followed. The display of tweets from the accounts a user follows is labeled "Home" on Twitter's site, but it is often referred to as a user's "feed."

20.    <u>Verification</u>. Twitter permits users to establish accounts under their real names or pseudonyms. Users who want to establish that they are who they claim to be can ask Twitter to

"verify" their accounts. When an account is verified, a blue badge with a checkmark appears next to the user's name on his or her Twitter page and on each tweet the user posts.

21. <u>Retweeting</u>. Beyond posting tweets to their followers, Twitter users can engage with one another in a variety of ways. For example, they can "retweet"—i.e., repost—the tweets of other users, either by posting them directly to their own followers or by "quoting" them in their own tweets. When a user retweets a tweet, it appears on the user's timeline in the same form as it did on the original user's timeline, but with a notation indicating that the post was retweeted. This is a recent retweet by @realDonaldTrump:



22. <u>Replying</u>. A Twitter user can also reply to other users' tweets. Like any other tweet, a reply can be up to 140 characters in length and can include photographs, videos, and links. When a user replies to a tweet, the reply appears on the user's timeline under a tab labeled "Tweets & replies." The reply may also be viewed from the original user's feed by clicking on the tweet that prompted the reply—the reply will appear below the original tweet, along with

other users' replies to the same tweet. When a user replies to a tweet, it starts what Twitter describes as a "conversation."

23.    <u>Comment threads</u>. A Twitter user can also reply to other replies. A user whose tweet generates replies will see the replies below his or her original tweet, with any replies-to-replies nested below the replies to which they respond. The collection of replies and replies-to-replies is sometimes referred to as a "comment thread." Reply tweets by verified users, reply tweets by users with a large number of followers, and reply tweets that are "favorited" and retweeted by large numbers of users generally appear higher in the comment threads. Conversely, reply tweets from non-verified accounts, reply tweets from users with a small number of followers, and reply tweets with few "favorites" or retweets, generally appear lower in the comment threads.  Reply tweets that appear higher in the comment threads are likely to be viewed by more people than those that appear lower in the threads. Twitter is called a "social" media platform in large part because of comment threads, which reflect multiple overlapping "conversations" among and across groups of users. Below is a recent @realDonaldTrump tweet that prompted tens of thousands of comments:



24.    <u>Favoriting</u>. A Twitter user can also "favorite" or "like" another user's tweet by clicking on the heart icon that appears under the tweet. By "liking" a tweet, a user may mean to convey approval or to acknowledge having seen the tweet.

25.     <u>Mentioning</u>. A Twitter user can also "mention" another user by including the other user's Twitter handle in a tweet. A Twitter user mentioned by another user will receive a "notification" that he or she has been mentioned in another user's tweet.

26.     Tweets, retweets, replies, likes, and mentions are controlled by the user who generates them. No other Twitter user can alter the content of any retweet or reply, either before or after it is posted. Twitter users cannot prescreen tweets, replies, likes, or mentions that reference their tweets or accounts.

27.     <u>Protected tweets</u>. Because all Twitter webpages are by default visible to all Twitter users and to anyone with access to the internet, users who wish to limit who can see and interact with their tweets must affirmatively "protect" their tweets. Other users who wish to view "protected" tweets must request access from (*i.e.*, request to "follow") the user who has protected her tweets. "Protected" tweets do not appear in third-party search engines, and they are searchable only on Twitter, and only by the user and her approved followers. Users must protect all the tweets in their accounts or none; tweets may not be protected on a tweet-by-tweet basis.

28.     <u>Blocking</u>. A user who wants to prevent another user from interacting with her account on the Twitter platform can do so by "blocking" that user. (Twitter provides users with the capability to block other users, but it is the users themselves who decide whether to make use of this capability.) When a user is signed in to a Twitter account that has been blocked, the blocked user cannot see or reply to the blocking user's tweets, view the blocking user's list of followers or followed accounts, or use the Twitter platform to search for the blocking user's tweets. The blocking user will not be notified if the blocked user mentions her or posts a tweet; nor, when signed in to her account, will the blocking user see any tweets posted by the blocked user.

29.     If, while signed in to the blocked account, the blocked user attempts to follow the blocking user, or to access the Twitter webpage from which the user is blocked, the blocked user will see a message indicating that the other user has blocked him or her from following the account and viewing the tweets associated with the account. This is an example of a notification from Twitter that a user has been blocked:



30.     After a user has been blocked, the blocked user can still mention the blocking user. Tweets mentioning the blocking user will be visible to anyone who can view the blocked user's tweets and replies. A blocked user can also reply to users who have replied to the blocking user's tweets, although the blocked user cannot see the tweet by the blocking user that prompted

the original reply. These replies-to-replies will appear in the comment thread, beneath the reply to the blocking user's original tweet.

31.     If a blocked user is not signed in to Twitter, he or she can view all of the content on Twitter that is accessible to anyone without a Twitter account. That includes the tweets of a blocking user and the replies to a blocking user's tweet, assuming that the tweets and replies are not "protected."

## President Trump's @realDonaldTrump Account

32.     Donald Trump established @realDonaldTrump in March 2009. Before his inauguration, he used this account to tweet about a variety of topics, including popular culture and politics. Since his inauguration in January 2017, President Trump has used the @realDonaldTrump account as a channel for communicating and interacting with the public about his administration. He also has continued to use the account, on occasion, to communicate about other issues not directly related to official government business.

33.     This Stipulation incorporates by reference all of the tweets posted as of the date of this Stipulation to the @realDonaldTrump account since January 20, 2017. The parties will jointly agree on an exhibit containing a true and correct copy of these tweets and replies to be filed with Defendants' opening brief. The exhibit may not include tweets that were subsequently deleted from the @realDonaldTrump account.

34.     This Stipulation incorporates by reference all available header images and profile photos used on the @realDonaldTrump Twitter web page since January 20, 2017 to the date of this Stipulation. The parties will jointly agree on an exhibit containing a true and correct copy of these header images to be filed with Defendants' opening brief.

35.     The Twitter page associated with the account is registered to Donald J. Trump, "45th President of the United States of America, Washington, D.C." The account bears a blue

badge indicating that it has been verified by Twitter. On July 7, 2017, the header photograph showed an American flag. In the few weeks before that date, the header photograph showed images of President Trump performing his official duties, such as making a speech to the Department of Energy, flanked by Vice President Mike Pence and Secretary of Energy Rick Perry.

36.     The @realDonaldTrump account is generally accessible to the public at large without regard to political affiliation or any other limiting criteria. President Trump has not "protected" his tweets, so any member of the public can view his tweets without being signed in to Twitter, and anyone who wants to follow the account can do so. President Trump has not issued any rule or statement purporting to limit (by form or subject matter) the speech of those who reply to his tweets. The account has 35 million followers—16 million more than @POTUS and 21 million more than @WhiteHouse—as of the filing of this Stipulation. The only accounts that cannot follow @realDonaldTrump are those that the President has blocked.

37.     On July 2, 2017, President Trump tweeted from @realDonaldTrump, "My use of social media is not Presidential – it's MODERN DAY PRESIDENTIAL." A month earlier, White House Press Secretary Sean Spicer stated at a press conference that tweets from President Trump should be understood as "official statements by the President of the United States." On June 23, 2017, the White House responded to a request from the House Permanent Select Committee on Intelligence for official White House records by referring the Committee to the President's "statement" made on Twitter on June 22, 2017. The White House social media director, Dan Scavino, has, on at least one occasion, promoted @realDonaldTrump, @POTUS, and @WhiteHouse equally as channels through which "President Donald J. Trump . . . [c]ommunicat[es] directly with you, the American people!" The @WhiteHouse account's

description directs Twitter users to "Follow for the latest from @POTUS @realDonaldTrump and his Administration." Further, tweets from @POTUS are sometimes retweeted by @realDonaldTrump, and tweets from @realDonaldTrump are frequently retweeted by @POTUS.

38.    With the assistance of  Mr. Scavino in certain instances, President Trump uses @realDonaldTrump, often multiple times a day, to announce, describe, and defend his policies; to promote his Administration's legislative agenda; to announce official decisions; to engage with foreign political leaders; to publicize state visits; to challenge media organizations whose coverage of his Administration he believes to be unfair; and for other statements, including on occasion statements unrelated to official government business. President Trump sometimes uses the account to announce matters related to official government business before those matters are announced to the public through other official channels. For example, the President used @realDonaldTrump to announce on June 7, 2017, for the first time, that he intended to nominate Christopher Wray for the position of FBI director. Likewise, on June 22, 2017, he used @realDonaldTrump to acknowledge for the first time that he did not possess tapes of conversations with former FBI Director James Comey.

39.    Mr. Scavino in certain instances assists President Trump in operating the @realDonaldTrump account, including by drafting and posting tweets to the account. Other White House aides besides Mr. Scavino will, in certain instances, also suggest content for @realDonaldTrump tweets. President Trump also sometimes dictates tweets to Mr. Scavino, who then posts them on Twitter. President Trump and/or Mr. Scavino sometimes retweet the tweets of those who participate in comment threads associated with the @realDonaldTrump account.

40.     The National Archives and Records Administration has advised the White House that the President's tweets from @realDonaldTrump, like those from @POTUS, are official records that must be preserved under the Presidential Records Act. The Ninth Circuit cited one of the President's tweets in striking down Executive Order 13,780, the order that temporarily suspends nationals of certain countries from entering the United States. *Hawaii v. Trump*, 859 F.3d 741, 773 n.14 (9th Cir. 2017), *cert. granted sub nom. Trump v. Int'l Refugee Assistance Project*, No. 16-1436, 2017 WL 2722580 (U.S. June 26, 2017).

41.     Typically, tweets from @realDonaldTrump generate thousands of replies from members of the public, and some of those replies generate hundreds or thousands of replies in turn. For example, on July 26, 2017, President Trump issued a series of tweets (reproduced below) announcing "that the United States Government will not accept or allow . . . Transgender individuals to serve" in the military, and after less than three hours, the three tweets, collectively, had been retweeted nearly 70,000 times, liked nearly 180,000 times, and replied to about 66,000 times:





42.     This level of engagement is typical for President Trump's tweets. His tweets

frequently receive 15,000–20,000 retweets or more. His tweets frequently receive even more

likes. It's common for President Trump's tweets to approach 100,000 likes. For example, this

recent tweet was liked more than 126,000 times and retweeted more than 33,000 times in approximately 3 days.



43.     The President's tweets are each replied to tens of thousands of times, as in the example above, which received 81,000 replies, and the example below, which received 73,000 replies, as of the time the screenshots of the tweets were taken.



44.     Given the number of followers that President Trump has on Twitter and the level of engagement with his tweets, the comment threads that appear beneath each of his tweets are seen by a very large number of people. As a general matter, comments that appear near the top of

17

the comment threads are more prominent and visible, and therefore seen by more people, than comments that appear lower in the threads. For this reason, Twitter users often compete to have their replies appear near the top of the comment threads, especially for threads on tweets by extremely popular accounts, such as President Trump's. A reply near the top of the reply thread of an account as popular as President Trump's is likely to be seen many thousands of times. A high reply placement is likely to garner further engagement for that user—the reply is more likely to spread and be seen by more people, and the user may gain more followers as a result.

45. The President and the White House also operate two other Twitter accounts: @POTUS and @WhiteHouse. The @POTUS account currently has approximately 19.9 million followers, it follows approximately 42 other Twitter users, and it has tweeted approximately 1,015 times since January 20, 2017. The @WhiteHouse account currently has approximately 15.2 million followers, it follows approximately 13 other Twitter users, and it has tweeted approximately 1,268 times since January 20, 2017.

## The Blocking of the Individual Plaintiffs

46. The President blocked Ms. Buckwalter from the @realDonaldTrump account on June 6, 2017. At 8:15 that morning, President Trump tweeted, "Sorry folks, but if I would have relied on the Fake News of CNN, NBC, ABC, CBS washpost or nytimes, I would have had ZERO chance winning WH." Ms. Buckwalter replied, "To be fair you didn't win the WH: Russia won it for you." Ms. Buckwalter's reply tweet received 9,033 likes and 3,371 retweets. Ms. Buckwalter's @rpbp account remains blocked by @realDonaldTrump.

47. The President blocked Plaintiff Professor Cohen from the @realDonaldTrump account on June 6, 2017. At 8:44 that evening, President Trump tweeted, "#ICYMI [In Case You Missed It] Announcement of Air Traffic Control Initiative… Watch" with a link to an announcement of his Air Traffic Control Initiative. Professor Cohen replied with a tweet showing

a photograph of the President with these words superimposed on the photograph: "Corrupt Incompetent Authoritarian. And then there are the policies. Resist." Professor Cohen's tweet received 307 likes and 35 retweets. Professor Cohen's @familyunequal account remains blocked by @realDonaldTrump.

48.     The President blocked Ms. Figueroa from the @realDonaldTrump account on May 28, 2017. That morning, addressing the previous week's terrorist attack in Manchester, England, President Trump tweeted: "British Prime Minister May was very angry that the info the U.K. gave to the U.S. about Manchester was leaked. Gave me full details!" Ms. Figueroa replied to the President in a series of tweets, including one that contained an image of the Pope looking incredulously at President Trump, along with the statement "This is pretty much how the whole world sees you. #AMJoy #SundayMorning." Her reply received 15,000 likes and 5,300 retweets. Ms. Figueroa's @AynRandPaulRyan account remains blocked by @realDonaldTrump.

49.     The President blocked Dr. Gu from the @realDonaldTrump account on June 18, 2017. At 4:02 AM that morning, President Trump tweeted: "The new Rasmussen Poll, one of the most accurate in the 2016 Election, just out with a Trump 50% Approval Rating. That's higher than O's #'s!" At 4:12 AM, Dr. Gu replied: "Covfefe: The same guy who doesn't proofread his Twitter handles the nuclear button." Dr. Gu's tweet received 2,900 likes and 239 retweets. Dr. Gu's @eugenegu account remains blocked by @realDonaldTrump.

50.     The President blocked Mr. Neely from the @realDonaldTrump account on June 12, 2017. That morning, President Trump tweeted: "Congratulations! First new Coal Mine of Trump Era Opens in Pennsylvania." He included a link to a *Fox News* article about the opening of the mine. Mr. Neely replied: "Congrats and now black lung won't be covered under

#TrumpCare." The tweet received 3,334 likes and 341 retweets. Mr. Neely's @BrandonTXNeely account remains blocked by @realDonaldTrump.

51.     The President blocked Mr. Papp from the @realDonaldTrump account on or about June 3, 2017. At 12:35 on June 3, President Trump tweeted a video of his weekly presidential address with the hashtag "#WeeklyAddress." At 12:36 and 12:39, Mr. Papp replied to the President with a pair of linked tweets stating, "Greetings from Pittsburgh, Sir.," and "Why didn't you attend your #PittsburghNotParis rally in DC, Sir? #fakeleader." The second tweet received 335 likes and 34 retweets. Mr. Papp's @joepabike account remains blocked by @realDonaldTrump.

52.     The President blocked Mr. Pappas from the @realDonaldTrump account on June 5, 2017. That morning, President Trump tweeted: "The Justice Dept. should ask for an expedited hearing of the watered down Travel Ban before the Supreme Court - & seek much tougher version!" and "In any event we are EXTREME VETTING people coming into the U.S. in order to keep our country safe. The courts are slow and political!" Mr. Pappas replied: "Trump is right. The government should protect the people. That's why the courts are protecting us from him." Mr. Pappas' tweet received 395 retweets and 1,181 likes. Mr. Pappas' @Pappiness account remains blocked by @realDonaldTrump.

53.     Shortly after the Individual Plaintiffs posted the tweets described in paragraphs 46 to 52 of this Stipulation, in which they criticized the President or his policies, the President blocked each of the Individual Plaintiffs.

54.     As a result of the President's blocking of the Individual Plaintiffs from @realDonaldTrump, the Individual Plaintiffs cannot view the President's tweets; directly reply to

these tweets; or use the @realDonaldTrump webpage to view the comment threads associated

with the President's tweets while they are logged in to their verified accounts.

55.     The Individual Plaintiffs can view tweets from @realDonaldTrump when using an

internet browser or other application that is not logged in to Twitter, or that is logged in to a

Twitter account that is not blocked by @realDonaldTrump.  Using these methods, some of the

Individual Plaintiffs have viewed @realDonaldTrump tweets since they were blocked.  For

example, Professor Cohen tweeted a screenshot of an @realDonaldTrump tweet on August 1,

2017, and explained how he was able to view the tweet:



However, all of the methods the Individual Plaintiffs may use to view @realDonaldTrump tweets require them to take more steps than non-blocked, signed-in users to view the President's tweets. In addition, while non-blocked users can set their accounts to deliver real-time "push" notifications of the President's tweets, blocked users cannot.

56.     Some of the Individual Plaintiffs have established second accounts so that they can view the President's tweets. For example, Ms. Buckwalter created a second Twitter account, @realRPBP, in June 2017, and has used the @realRPBP account on some occasions to view @realDonaldTrump tweets and receive push notifications for @realDonaldTrump tweets.  The @realRPBP account follows @realDonaldTrump and is not blocked.  The @realRPBP account is not verified and has two followers.

57.     The Individual Plaintiffs can view replies to @realDonaldTrump tweets, and can post replies to those replies, while logged in to the blocked accounts. Replies-to-replies appear in the comment threads that originate with @realDonaldTrump tweets and are visible to users who have not blocked (or been blocked by) the Individual Plaintiffs.  The below screenshot illustrates how an Individual Plaintiff's participation in such a comment thread would appear to a user who has not been blocked by @realDonaldTrump.  In this example, the @realDonaldTrump account posted a tweet on August 20, 2017, at 4:22 PM, and a user with the handle @danibostick posted a reply at 4:25 PM, followed by two additional replies at 4:27 PM and 4:29 PM.  Dr. Gu tweeted a reply to @danibostick from the @eugenegu account at 4:30 PM:



58.     Although the Individual Plaintiffs who have been blocked have the ability to view and reply to replies to @realDonaldTrump tweets, they cannot see the original @realDonaldTrump tweets themselves when signed in to their blocked accounts, and in many instances it is difficult to understand the reply tweets without the context of the original @realDonaldTrump tweets.  All but one of the Individual Plaintiffs have posted replies in comment threads that originated with @realDonaldTrump tweets after their accounts were blocked. Because of the additional steps and time involved in using this method, some of the

Plaintiffs have stopped replying to replies to @realDonaldTrump tweets altogether, while others reply less frequently than if they had not been blocked.

59.     In the past, Plaintiffs Holly Figueroa, Eugene Gu, and Brandon Neely used a third-party service called Favstar that could be used by blocked users to view and reply to a blocking account's tweets if the blocked user established a Favstar account and followed certain steps.  The parties' understanding is that it is no longer possible for blocked users to use the Favstar service to view and reply to a blocking account's tweets.

60.     All of the Individual Plaintiffs have found these various "workarounds" to be burdensome and to delay their ability to respond to @realDonaldTrump tweets.  As a result, four of the Individual Plaintiffs do not use them and the others use them infrequently.

61.     The Knight Institute has not been blocked from the @realDonaldTrump account. The Knight Institute desires to read comments that otherwise would have been posted by the blocked Plaintiffs, and by other accounts blocked by @realDonaldTrump, in direct reply to @realDonaldTrump tweets.  The Knight Institute is able to read such comments only to the extent the blocked users have chosen to post them through the methods specified in paragraphs 57 to 59.

62.     The @knightcolumbia account follows Professor Cohen's account, @familyunequal.  As of August 22, 2017, the Knight Institute did not follow the other six Individual Plaintiffs on Twitter.

63.     This Stipulation incorporates by reference selected tweets and replies posted to the Individual Plaintiffs' Twitter accounts, as described in paragraphs 2 through 8. The parties will jointly agree on an exhibit containing a true and correct copy of these tweets and replies to be filed with Defendants' opening brief.

24

Date: September 28, 2017                  Respectfully submitted,

                                          */s/ Jameel Jaffer*
Jessica Ring Amunson (*pro hac vice*)     Jameel Jaffer (JJ-4653)
Tassity S. Johnson (*pro hac vice*)       Katherine Fallow (KF-2535)
Jenner & Block LLP                        Alex Abdo (AA-0527)
1099 New York Avenue, NW, Suite 900       Knight First Amendment Institute
Washington, DC 20001                            at Columbia University
                                          314 Low Library
                                          535 West 116th Street
                                          New York, NY 10027
                                          (212) 854-9600
                                          Jameel.Jaffer@knightcolumbia.org

                                          *Counsel for Plaintiffs*


                                          CHAD A. READLER
                                          Acting Assistant Attorney General

                                          ERIC R. WOMACK
                                          Assistant Branch Director

                                          */s/ Michael H. Baer*
                                          MICHAEL H. BAER
                                          DANIEL HALAINEN
                                          Trial Attorneys
                                          U.S. Department of Justice,
                                          Civil Division, Federal Programs Branch
                                          20 Massachusetts Avenue, NW
                                          Washington, DC 20530
                                          Telephone:    (202) 305-8573
                                          Facsimile:    (202) 616-8460
                                          E-mail: Michael.H.Baer@usdoj.gov

                                          *Counsel for Defendants*