# EXHIBIT I

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:21-cv-22441-SCOLA/GOODMAN**

_____

DONALD J. TRUMP, et al.,

                        Plaintiffs,

v.

TWITTER, INC., and JACK DORSEY,

                        Defendants.

_____

**DEFENDANT TWITTER, INC.'S**
**REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER**

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.    Plaintiffs' Claims Are Governed By A Valid Forum Selection Clause............................ 2

    A.    Transfer Is Warranted Because Six Of The Seven Plaintiffs Do Not Contest That They Are Bound By The Forum Selection Clause............................ 2

    B.    Mr. Trump Is Bound By The Forum Selection Clause ............................................ 2

II.    The Forum Selection Clause Mandates Transfer .................................................... 5

    A.    The Forum Selection Clause Is Mandatory And Exclusive .................................... 5

    B.    Plaintiffs' Claims Are Within The Forum Selection Clause's Broad Scope ........... 7

    C.    There Is No Public Policy Basis To Exempt The State Law Claims From The Forum Selection Clause .................................................................................. 8

III.    The § 1404 Analysis Requires Transfer ................................................................. 10

CONCLUSION .................................................................................................................. 10

# TABLE OF AUTHORITIES

**CASES**                                                                 Page(s)

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49 (2013)..............2, 9, 10

*Blixseth v. Disilvestri*, 2013 WL 12063940 (S.D. Fla. Jan. 31, 2013)............................................7

*Bromlow v. D & M Carriers, LLC*, 438 F. Supp. 3d 1021 (N.D. Cal. 2020) ..................................2

*Cienega Gardens v. United States*, 331 F.3d 1319 (Fed. Cir. 2003) ................................................4

*Dura-Cast Prod., Inc. v. Rotonics Mfg., Inc.*, 2010 WL 3565725 (M.D. Fla. Sept. 10, 2010) ...........................................................................................................................6

*Elite Advantage, LLC v. Trivest Fund, IV, L.P.*, 2015 WL 4982997 (S.D. Fla. Aug. 21, 2015) ..........................................................................................................................10

*Emerald Grande, Inc. v. Junkin*, 334 F. App'x 973 (11th Cir. 2009).............................................6

*Exceptional Urgent Care Ctr. I, Inc. v. Protomed Med. Mgmt. Corp.*, 2009 WL 2151181 (M.D. Fla. July 13, 2009)....................................................................................8

*Farmers Grp., Inc. v. Madio & Co.*, 869 So. 2d 581 (Fla. Dist. Ct. App. 2004)............................8

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991)......................................................10

*Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269 (11th Cir. 2004) ...........................................................................................................................5

*Gordon v. Sandals Resorts Int'l, Ltd.*, 418 F. Supp. 3d 1132 (S.D. Fla. 2019), *appeal dismissed sub nom. Gordon v. Sandals Resorts Int'l, Ltd*, 2020 WL 3042742 (11th Cir. Apr. 1, 2020) ...........................................................................2, 8, 9

*Hindi v. BirdEye, Inc.*, 2019 WL 4091425 (S.D. Fla. Aug. 29, 2019) ...........................................6

*Knight First Adendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226 (2d Cir. 2019), *cert. granted, judgment vacated sub nom. Biden v. Knight First Amendment Inst. At Columbia Univ.*, 141 S. Ct. 1220 (2021)............................................5

*Lipcon v. Underwriters at Lloyd's London*, 148 F.3d 1285 (11th Cir. 1998)................................9

*Loomer v. Facebook, Inc.*, 2020 WL 2926357 (S.D. Fla. Apr. 13, 2020) ....................................10

*McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290 (M.D. Ga. 2003) ................................................2

*Meterlogic, Inc. v. Copier Sols., Inc.*, 185 F. Supp. 2d 1292 (S.D. Fla. 2002)..............................7

*Moghaddam v. Dunkin Donuts, Inc.*, 2002 WL 1940724 (S.D. Fla. Aug. 13, 2002) ...................10

*Nat'l R.R. Passenger Corp. v. Atchison, Topeka and Santa Fe Ry. Co.*, 470 U.S. 451 (1985) ...............................................................................................................4

*Nat. Res. Def. Council, Inc. v. James R. Perry*, 940 F.3d 1072 (9th Cir. 2019) ............................6

*Nissen v. Pierce Cty.*, 357 P. 3d 45 (Wash. 2015) ..........................................................................4

*Powers v. Ohio*, 499 U.S. 400 (1991) .............................................................................................4

*SAI Ins. Agency, Inc. v. Applied Sys., Inc.*, 858 So. 2d 401 (Fla. Dist. Ct. App. 2003) ..........................................................................................................................8

*Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066 (11th Cir.1987) (en banc) ...............................8

*Stiles v. Bankers Healthcare Grp., Inc.*, 637 F. App'x 556 (11th Cir. 2016) ..............................7, 8

*Stokes v. Markel Am. Ins. Co.*, 2019 WL 8017457 (S.D. Fla. June 28, 2019)...............................9

*Travelcross, S.A. v. Learjet, Inc.*, 2011 WL 13214118 (S.D. Fla. Mar. 28, 2011) ........................6

*Trump v. Padilla*, No. 2:19-at-00705 (N.D. Cal. Aug. 6, 2019)...................................................10

*Trump v. YouTube, LLC*, No. 1:21-cv-22445 (S.D. Fla. Oct. 6, 2021) ............................... *passium*

## STATUTES, RULES, AND REGULATIONS

28 U.S.C. § 1404(a) .....................................................................................................................2, 10

31 U.S.C. § 1341(a)(l)(B) ................................................................................................................5

42 U.S.C. 2209 .................................................................................................................................4

44 U.S.C. 2202 .................................................................................................................................5

Fla. Stat. §501.202(2)......................................................................................................................3

## INTRODUCTION

Nothing in Plaintiffs' opposition excuses their decision to file this lawsuit in the wrong court. None of the seven Plaintiffs dispute that they agreed to the Twitter User Agreement—including the forum selection clause—by signing up for and using the Twitter platform. And aside from Plaintiff Donald Trump, they do not dispute that the clause is binding on them. They also do not dispute that the clause governs their central claim—asserting that the First Amendment bars Twitter from restricting or suspending their Twitter accounts. This alone warrants transfer to the Northern District of California.

In any event, the arguments Plaintiffs advance against transfer are unavailing and were very recently rejected by Judge Moore of this court in his order transferring Plaintiffs' nearly identical case against YouTube. *See Trump v. YouTube, LLC*, No. 1:21-cv-22445, Order on Mot. to Transfer (Dkt. 70) (S.D. Fla. Oct. 6, 2021) (attached as Exhibit A) (hereinafter *Trump v. YouTube*). First, Plaintiffs erroneously assert that the forum selection clause does not bind Mr. Trump because he was once President and could not commit the United States to a private agreement. But the federal government is not a party to this lawsuit and no party seeks to or has standing to vindicate any governmental interest. Rather, Mr. Trump filed this lawsuit as "a private citizen" (Am. Compl. ¶ 17) and seeks to vindicate his own private First Amendment rights and to obtain personal relief, including reinstatement of his account for use in his personal capacity. And he agreed to the Twitter User Agreement as a private citizen by using the account for years prior to becoming President. This is a dispute between private parties governed by a private contract.

Second, Plaintiffs posit that by including Florida statutory claims, they can escape their contractual commitment to litigate solely in California. But like their First Amendment claim, Plaintiffs' state-law claims fall within the broad scope of Twitter's mandatory, exclusive forum selection clause. Each claim challenges Twitter's decision to deny Plaintiffs access to Twitter's Services for violating the Rules in Twitter's Terms—precisely the type of "dispute related to Twitter's Terms or Services" that must be filed "solely in" the courts of northern California.

Third, this case, brought by residents of several states on behalf of a putative nationwide class seeking nationwide relief, can hardly be characterized as a localized controversy. Merely tacking on state law claims, particularly when those claims can be adjudicated by courts in the pre-

1

selected forum, does not make this the "exceptional case[]" in which a "valid forum selection clause [need not] be given controlling weight." *See Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 62-64 (2013). As Judge Moore concluded, no Florida public policy justifies denying transfer. *See Trump v. YouTube* at 15-16 (quoting *Gordon v. Sandals Resorts Int'l, Ltd.*, 418 F. Supp. 3d 1132, 1140-41 (S.D. Fla. 2019)). The Court should accordingly transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

## ARGUMENT

### I. Plaintiffs' Claims Are Governed By A Valid Forum Selection Clause

#### A. Transfer Is Warranted Because Six Of The Seven Plaintiffs Do Not Contest That They Are Bound By The Forum Selection Clause

Plaintiffs seek to avoid the forum selection clause by arguing that it does not apply to just one of them, Plaintiff Donald Trump. *See* Opp. 1-7. As explained below, those arguments are wrong. *See infra* 2-5. But they are also irrelevant. Aside from Mr. Trump, none of the Plaintiffs disputes that they entered into and are bound by Twitter's User Agreement. And because each of their claims must therefore be transferred under the forum selection clause, it automatically follows that the entire action should be sent to the Northern District of California.

The rule is straightforward: "[W]here … some of the Plaintiffs are not bound by [a] forum selection clause, [those Plaintiffs] are bound by their choice to bring suit in concert with others that are." *McNair v. Monsanto Co.*, 279 F. Supp. 2d 1290, 1309–10 (M.D. Ga. 2003); *see also Bromlow v. D & M Carriers, LLC*, 438 F. Supp. 3d 1021, 1029 (N.D. Cal. 2020) ("Non-signatory plaintiffs … subjected their cases to the applicable forum-selection clause by choosing to join a collective action with other [signatory] plaintiffs."). Plaintiffs made that choice here. They elected to bring the same claims against the same defendants in a single action. They are therefore required to bring that action in the forum—the courts of northern California—where they are contractually obligated to litigate.

#### B. Mr. Trump Is Bound By The Forum Selection Clause

Mr. Trump is also bound by the clause. He has correctly conceded—in this suit and elsewhere—that his use of the Twitter platform was governed by the Twitter User Agreement even while he was President. *See* Mot. to Transfer 7-8. Twitter does not seek to enforce that Agreement

against any governmental entity, and nothing about this motion implicates a government contract. Plaintiffs' assertions otherwise are meritless.

First, the agreement between Mr. Trump and Twitter is a private contract. He signed up for Twitter and agreed to its User Agreement as a private citizen. Am. Compl. ¶ 43. And he does not dispute that by continuing to use the platform for years, he agreed to the forum selection clause included in subsequent versions of the Agreement—versions that went into effect long before he became President or used his private account in that public capacity. *See, e.g.*, Opp. Ex. A, Twitter Terms of Service, version 2 (effective Sept. 10, 2009), *available at* https://twitter.com/de/tos/previous/version_2; *see also* Am. Compl. ¶ 76 ("Use of [Twitter's] platform was expressly conditioned on agreeing to these restrictions, or User access was denied.").[1] He is now suing Twitter as a "private citizen," Am. Compl. ¶ 17, complaining that suspension of his account prevents him from "communicat[ing] with family and friends" and "campaigning" and "fundraising" for himself and others now that he has left office. *Id*. ¶ 112. He asserts personal rights under the First Amendment, *id.* ¶¶ 5, 175, 182, and Florida laws that protect "consumer[s]," not government entities, *see* Fla. Stat. §501.202(2); Am. Compl. ¶ 207—including a law that went into effect months after his term ended, *id.* ¶ 226. And he seeks damages that would be awarded to himself and reinstatement of his account for his own private use, *id.* ¶ 220, 233 (seeking "injunctive relief allowing the Plaintiff … to resume posting content"); Opp. 20 ("the relief sought is essentially prospective in nature"). From top to bottom, this is a private dispute between private parties controlled by Mr. Trump's private contract with Twitter. *See Trump v. YouTube* at 9.

Second, Twitter is not seeking to enforce its forum selection clause against the federal government, and no governmental rights are at issue in this case. "[N]o federal agency or entity is a party in this case" or faces transfer to the Northern District of California. *Trump v. YouTube* at 9. "[Mr.] Trump is bringing this case not as the President of the United States, but as a 'private citizen.'" *Id.* Nor could he do otherwise. *See id.* The United States has not assigned any rights

---

[1] Mr. Trump admits that he continued to use his Twitter account between September 2009, when the version of the Terms that included the forum selection clause went into effect, and January 2017, when he was inaugurated. Am. Compl. ¶ 43. And he has conceded here and elsewhere that abiding by the Terms was a condition of continuing to use his account. *See* Mot. to Transfer 8.

it might possess in any government account to Mr. Trump. And as a private citizen, Mr. Trump can (and does) assert only his own rights; he lacks standing to assert any governmental rights or authority. *See Powers v. Ohio*, 499 U.S. 400, 410 (1991) ("In the ordinary course, a litigant must assert his or her own legal rights and interests …."). His "status in this case as a private citizen is further confirmed by the fact that he is pursuing claims under FDUTPA—which provides no cause of action for the federal government or its officials." *Trump v. YouTube* at 9. Whatever limits might prevent enforcement of a forum selection clause against the federal government, "the Court need not reach th[ose] issue[s]" here. *Id.*; *see also* Opps. 5-6, n.2. For the same reason, Mr. Trump cannot rely on the forum selection clause's "government entity" exception, Opp. 4-5, as it applies only "if you *are* a federal, state, or local government entity," and satisfy other criteria, Twitter, Terms of Service at 9 (emphasis added), Mot. to Transfer, Decl. of Patrick J. Carome, Ex. A.

Third, Plaintiffs' apparent argument that Mr. Trump could unilaterally rewrite or terminate his pre-existing private contract with Twitter simply by choosing to use his Twitter account for official business "is not supported by any citation to legal authority." *Trump v. YouTube* at 10-11.[2]  A public employee who texts about an official matter using her private cell phone might trigger a duty to preserve the message in accordance with public records laws, but that does not suddenly void her cell phone contract, or subject it to government procurement laws. *See, e.g.*, *See Nissen v. Pierce Cty.*, 357 P. 3d 45, 53 (Wash. 2015) (records agency employee created on a private telephone within the scope of employment were a "public record" under Washington Public Records Act, but carrier's related records were not); 42 U.S.C. § 2209. So too here. Mr. Trump cites the Anti-Deficiency Act and the Presidential Records Act but neither law renders the Twitter Terms unenforceable in litigation brought by a private citizen to vindicate private rights and obtain private remedies. The Anti-Deficiency Act applies only to a "contract or obligation *for the payment of money*" by the government, 31 U.S.C. § 1341(a)(l)(B) (emphasis added), not to a

---

[2] Any other rule would raise serious constitutional concerns. Allowing a public official's unilateral actions to extinguish private contractual rights would run up against limits on state action under the Takings and Due Process Clauses. *See Cienega Gardens v. United States*, 331 F.3d 1319, 1335 (Fed. Cir. 2003) ("[C]ontract rights can be property within the meaning of the Fifth Amendment and require compensation if taken for public use." (internal quotation omitted)); *Nat'l R.R. Passenger Corp. v. Atchison, Topeka and Santa Fe Ry. Co.*, 470 U.S. 451, 472 (1985).

contract governing a *private* citizen's use of a *free* service. And the Presidential Records Act says nothing about private contracts or forum-selection clauses at all. 44 U.S.C. § 2202.[3]

Finally, Plaintiffs fare no better in invoking the Second Circuit's now-vacated decision in *Knight First Amend. Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 237 (2d Cir. 2019), *cert. granted, judgment vacated sub nom. Biden v. Knight First Amend. Inst. At Columbia Univ.*, 141 S. Ct. 1220 (2021). That decision held that Mr. Trump's use of his Twitter account while President made it a First-Amendment-constrained "public forum," preventing Mr. Trump from blocking others from interacting with his Tweets. *Id.* at 237-238. Like the other authorities he cites, *Knight* nowhere hints that Twitter's forum-selection clause might be unenforceable. *See Trump v. YouTube* at 9-10. To the contrary, the court observed that the Twitter platform "is governed by terms of service which users agree to when they use the platform." *Knight*, 928 at 231 n.2. And even as to the issues before it, the Second Circuit emphasized: "No one disputes that before he became President[,] the Account was a purely private one or that *once he leaves office the Account will presumably revert to its private status*." *Id.* at 231 (emphasis added). Even if *Knight* were relevant here (which it is not), it points in the same direction. The forum-selection clause in the private contract between Mr. Trump and Twitter governs this private dispute.

## II. The Forum Selection Clause Mandates Transfer

### A. The Forum Selection Clause Is Mandatory And Exclusive

There can be no serious dispute that the language in Twitter's forum selection clause "dictates an exclusive forum for litigation under the contract." *Global Satellite Commc'n Co. v. Starmill U.K. Ltd.*, 378 F.3d 1269, 1272 (11th Cir. 2004); *see also* Mot. to Transfer 9 (listing cases finding Twitter's clause to be mandatory). It provides that "*[a]ll* disputes related to these Terms

---

[3] The Terms of Service expressly provide, in the portion headed "Ending These Terms," that the forum selection clause continues to "survive," even when the contractual relationship between the parties otherwise ends. Twitter, Terms of Service at 8 (listing section number of the Terms, which contains the forum selection clause, as one of the sections that "shall continue to apply" and "survive"). As a result, even if the private contractual agreement that Mr. Trump formed with Twitter before his presidency somehow functionally terminated when he became President (or thereafter chose to use his personal account for governmental purposes), the forum selection clause continues to bind him in this lawsuit, in which he sues as a private citizen, asserts private rights, and seeks private remedies.

or the Services *will be* brought *solely* in the federal or state courts located in San Francisco County, California, United States." Twitter, Terms of Service at 9 (emphasis added). This language—"*all* disputes," "*will* be brought"—is uniformly interpreted in this circuit and elsewhere to be mandatory. *See Emerald Grande, Inc. v. Junkin*, 334 F. App'x 973, 976 (11th Cir. 2009) (clause declaring that preselected forum "*will* be the venue for any dispute" was mandatory (emphasis added)); *Nat. Res. Def. Council, Inc. v. James R. Perry*, 940 F.3d 1072, 1078 (9th Cir. 2019) ("The word 'will,' like the word 'shall,' is a mandatory term."); *Hindi v. BirdEye*, Inc., 2019 WL 4091425, at *6 (S.D. Fla. Aug. 29, 2019). And the instruction that the forum for such suits is "*solely"* in California further confirms that fact.

Plaintiffs' contrary argument makes no sense. They argue that the provision in the contract concerning "consent to personal jurisdiction" and waiving objections as to inconvenient forum somehow creates ambiguity about the mandatory nature of the preceding phrase that "*[a]ll* disputes related to these Terms or the Services *will be* brought *solely* in the federal or state courts located in San Francisco County, California." Twitter, Terms of Service at 9 (emphasis added). The provision on which Plaintiffs rely does not even address the forum in which a user may sue Twitter; it instead speaks to defenses that a user waives in a suit filed by Twitter against him. *See id.* ("*you* consent to personal jurisdiction and waive any objection as to inconvenient forum" (emphasis added)). There is nothing "contradictory," Opp. 9, about one provision mandating an exclusive forum and a second provision waiving defenses against being sued in that forum, and Plaintiffs' reliance on cases finding ambiguity in such waiver language "is misplaced." *See Trump v. YouTube* at 12. The court's conclusion in *Travelcross, S.A. v. Learjet, Inc.*, was based specifically on the fact that the clause at issue there *did not* include the type of mandatory and exclusive limitation on where suits "will be brought" that Twitter's clause *does* include. 2011 WL 13214118, at *2 (S.D. Fla. Mar. 28, 2011). And in *Dura-Cast Prods., Inc. v. Rotonics Mfg., Inc.*, the court rejected a similar argument on the basis that the clause at issue *did* include exclusivity language similar to the language in Twitter's contract. 2010 WL 3565725, at *1-2 (M.D. Fla. Sept. 10, 2010) (interpreting clause requiring that "the courts of the state of Florida shall have sole and exclusive jurisdiction of all disputes" as mandatory).

## B.    Plaintiffs' Claims Are Within The Forum Selection Clause's Broad Scope

Plaintiffs do not dispute that their central claim falls within the scope of and is controlled by the forum selection clause.  Count I claims that Twitter violated the First Amendment by barring or restricting their use of the Twitter platform for violating the Twitter Rules.  Such a claim straightforwardly "relate[s] to" the Twitter "Terms" or Twitter's "Services."  This alone requires transfer of this action in its entirety.  *See Meterlogic, Inc. v. Copier Sols., Inc.*, 185 F. Supp. 2d 1292, 1303 (S.D. Fla. 2002) ("To allow this case and [transferred] litigation to proceed simultaneously would contravene the policy of statutory transfer, which is to avoid duplicative litigation, inconvenience, and unnecessary expenses."); *Blixseth v. Disilvestri*, 2013 WL 12063940, at *15 (S.D. Fla. Jan. 31, 2013); *Stiles v. Bankers Healthcare Grp., Inc.*, 637 F. App'x 556, 561 (11th Cir. 2016).

Plaintiffs are also wrong to assert that their state-law claims are outside the clause's scope because they "are not based on their access to [the Twitter platform], but rather [Twitter's] deceptive practices."  Opp. 10-13.  Twitter's forum selection clause is not so limited; as noted, it governs all disputes "related to" either the "Terms" or Twitter's "Services"—including its platform—in any way.  *See* Mot. to Transfer 9-10.[4]  Plaintiffs' Florida statutory claims "are inextricably linked to the [Twitter Terms]" and are therefore "covered by the … clause."  *Trump v. YouTube* at 19.  Those claims reference and are based on Twitter's enforcement of its Terms to deny Plaintiffs—but not others—access to its platform.  *See id.*  Plaintiffs allege that Twitter's "policies ostensibly proclaim objective, uniform standards," but are not consistent with its decision to "suspend[] or ban[] [Plaintiffs] from the platform."  Am. Compl. ¶ 204.  And their Florida state law claims specifically attack what they view as "inconsistent application" of Twitter's Terms.

---

[4] Plaintiffs erroneously define the word "Terms" in Twitter's Terms of Service as "access to and use of the Services," Opp. 10, and argue that claims therefore must arise from such access or use to fit within the forum selection clause, *id.* at 11.  But the language they cite does not define the word "Terms"; it instead explains what the Terms do ("govern . . . access to and use of the services") and does not limit the forum selection clause in any way.  Rather, the Terms encompass the agreement between Twitter and the user, and the forum selection clause references "any dispute relating to" either those Terms or Twitter's Services—including, but not only, disputes regarding access to or use of the platform.  Mot. to Transfer 9-10.

*See id*. ¶¶ 225, 237-40 (Twitter policies and rules are part of the "Terms").  Moreover, Plaintiffs' Florida state law claims *do* relate to their "access to" the platform—their allegation that Twitter's practices are deceptive stems from Twitter's refusal to afford them such access.  *See id*. ¶¶ 204, 225.  Put simply, Plaintiffs' claims regarding the veracity of Twitter's public representations both attack and turn on an evaluation of Twitter's enforcement of its Terms and its decisions about access to its platform.  Such allegations necessarily "relate to" both the Terms and Services and are therefore covered.  *See Stiles*, 637 F. App'x at 561 (claim that rises and falls on the same facts and arguments as claims within a forum selection clause's scope should be considered covered).[5]

*Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir.1987) (en banc), on which Plaintiffs rely, also supports application of the clause.  There, the court concluded that a clause requiring parties to litigate "any case or controversy arising under or in connection with" their contract encompassed both contract and tort claims.  The contractual language in *Stewart*— "any case . . . in connection with"—is akin to the "all disputes related to" language in Twitter's forum selection clause.  And like the claims in *Stewart*, each of Plaintiffs' claims is "directly or indirectly related to the business relationship established by" their contract with Twitter, *id*.

## C.  There Is No Public Policy Basis To Exempt The State Law Claims From The Forum Selection Clause

Plaintiffs also argue that Florida public policy requires narrowing or disregarding the forum selection clause to ensure a forum for their Florida statutory claims.  Opp. 10-13.  But they identify no reason why transfer would conflict with that interest, and Florida courts have rejected the notion that "the mere presence of a [FDUTPA] claim of statutory fraud in a complaint will suffice to invalidate an otherwise valid forum selection clause."  *SAI Ins. Agency, Inc. v. Applied Sys., Inc.*, 858 So. 2d 401, 403-04 (Fla. Dist. Ct. App. 2003); *see also Farmers Grp., Inc. v. Madio & Co*., 869 So. 2d 581, 582 (Fla. 4th Dist. Ct. App. 2004) ("[T]he mere fact that [defendant]'s remaining claims allege statutory violations of the FDUTPA does not mean that they are not subject to the

---

[5] That is true despite the fact that the claims sound in tort and are based on a state statute.  *See Exceptional Urgent Care Ctr. I, Inc. v. Protomed Med. Mgmt. Corp.*, 2009 WL 2151181, at *1 (M.D. Fla. July 13, 2009) ("FDUTPA claims are not per se exempt from forum selection clauses" and fell within clause governing "all disputes arising out of or relating to [an] agreement"); *Gordon*, 418 F. Supp. 3d at 1141.

8

forum selection clause."). This Court too has already held that Florida consumer protection statutory claims can be litigated in courts outside this state, and that the state's interest in such claims does not preclude transfer. *Gordon*, 418 F. Supp. 3d at 1139. As this Court explained, courts elsewhere can "provide[] an adequate alternative forum for [] plaintiffs to bring a FDUTPA claim," and in any event, "[t]he Eleventh Circuit has held that it 'will not invalidate choice clauses ... simply because the remedies available in the contractually chosen forum are less favorable than those available in [the plaintiff's selected forum].'" *Id.* (quoting *Lipcon v. Underwriters at Lloyd's London*, 148 F.3d 1285, 1297 (11th Cir. 1998). Other courts in Florida have come to the same conclusion. *See, e.g.*, *Trump v. YouTube* at 15-17; *Stokes v. Markel Am. Ins. Co.*, 2019 WL 8017457, at *5 (S.D. Fla. June 28, 2019); Mot. to Transfer 14 & n. 6, 7.

Nor is there any local interest or Florida-specific relief at issue here that could make this the "exceptional case" in which "public-interest factors *overwhelmingly* disfavor a transfer," as is required to override the strong presumption favoring enforcement of forum-selection clauses. *Atl. Marine Constr. Co.*, 571 U.S. at 64, 67 (emphasis added). Tacking on two state law claims to a federal constitutional cause of action hardly renders this ordinary case "exceptional." *Id.* The Florida statutory claims do not even turn this case into a "localized controversy," Opp. 14-15, that Florida has a significant public policy interest in being decided locally, *id.* 14. *See Trump v. YouTube* at 19-22. After all, Plaintiffs are the former President of the United States, individuals from Nevada, Florida, and New York, and an organization based in Washington, D.C., Am. Compl. ¶¶ 17-24, and are suing a California company and its California-resident chief executive officer, ¶¶ 25-26, on behalf of a putative nationwide class, ¶ 18, based on content-moderation practices with no distinct connection to Florida, ¶¶ 203, 217, 232, asserting violations of the U.S. Constitution, ¶¶ 168-187, and seeking to invalidate a federal law, ¶¶ 188-199. And their attempt to invoke Mr. Trump's role as President at the time he was removed from Twitter's platform, *see* Opp. 15-16, does not make this case exceptional in any relevant respect. In fact, that then-President Trump's account was suspended while he was still in office—rather than when he was a private citizen in Florida whom Florida's consumer protection laws were intended to protect—decreases the relevance of his current residence and emphasizes that San Francisco, where Twitter made the decision to suspend his account, is the more important locus of this dispute. *See infra* 10; *see also*

9

*Trump v. YouTube* at 17, 19 (recognizing that Mr. Trump's parallel suit against another online platform raises issues that are "national in scope" and holding therefore that "public policy does not preclude the application of the forum-selection clause").[6]

## III.     The § 1404 Analysis Requires Transfer

Plaintiffs are also wrong that § 1404 would not favor transfer, even if the forum selection clause did not govern. Opp. 18-20. Plaintiffs' choice of forum is entitled to little weight "when the operative facts underlying the action occurred outside the district chosen by the plaintiff." *Moghaddam v. Dunkin Donuts, Inc*., 2002 WL 1940724, at *3 (S.D. Fla. Aug. 13, 2002); *see also Elite Advantage, LLC v. Trivest Fund, IV, L.P*., 2015 WL 4982997, at *10 (S.D. Fla. Aug. 21, 2015). And while Plaintiffs assert that they have limited resources to litigate in California, Opp. 19, that contention is unsupported by any factual evidence and is belied by the fact that Mr. Trump has previously voluntarily litigated in California, *see* Compl., *Trump v. Padilla*, No. 2:19-cv-01501 (E.D. Cal. Aug. 6, 2019). Only a handful of the named plaintiffs even live in Florida, and at least one is domiciled in the Ninth Circuit. *See* Am. Compl. ¶¶ 19-24. By contrast, other private interest factors favor litigating in California: This case turns on Twitter's decision to remove or limit Plaintiffs' access to its platform, actions taken at Twitter's headquarters in California. As such, the majority of documents and witnesses relevant to those decisions are located in California and are more likely subject to process there, making trial of the case in California comparatively "easy, expeditious and inexpensive," *Atl. Marine Constr. Co*., 571 U.S. at 63.

## CONCLUSION

For the foregoing reasons, this case should be promptly transferred to the Northern District of California.

---

[6] Likewise meritless is Plaintiffs' cursory suggestion (Opp. 16-18), for which they cite no authority, that Florida public policy counsels against enforcing Twitter's forum selection clause at all because Twitter's utility and popularity allegedly render the company's bargaining power greater than that of its users. Opp. 16-18. Courts have declined to treat unequal bargaining power as a basis for invalidating contracts. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp*., 500 U.S. 20, 32 (1991). And Plaintiffs' claim that Twitter is a "requirement of life," such that their consent to the Terms was somehow compelled, is not serious. *See Loomer v. Facebook, Inc*., 2020 WL 2926357, at *3 (S.D. Fla. Apr. 13, 2020); *Trump v. YouTube* at 23 n.8.

Respectfully submitted,

/s/ Peter W. Homer

Patrick J. Carome (*pro hac vice*)
Ari Holtzblatt (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Ave. NW
Washington, D.C. 20006
Tel.: (202) 663-6800
Fax: (202) 663-6363
patrick.carome@wilmerhale.com

Felicia H. Ellsworth (*pro hac vice*)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: (617) 526-6000
Fax: (617) 526-5000
felicia.ellsworth@wilmerhale.com

Peter W. Homer (FL Bar No. 291250)
HOMER BONNER
1200 Four Seasons Tower
1441 Brickell Ave.
Miami, FL 33131
Tel.: (305) 350-5139
Fax: (305) 982-0063
phomer@homerbonner.com

**Attorneys for Defendant Twitter, Inc.**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 7, 2021, a true and correct copy of the foregoing and attached exhibit were electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document and attached exhibit will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ Peter W. Homer*
Peter W. Homer