# EXHIBIT J

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-22440-CIV-WILLIAMS/MCALILEY

DONALD J. TRUMP, *et al.*,

       Plaintiffs,

v.

FACEBOOK, INC. and
MARK ZUCKERBERG,

       Defendants.
_____/

## NOTICE OF SUPPLEMENTAL AUTHORITY

       Defendants Facebook, Inc. and Mark Zuckerberg give notice of filing an October 26, 2021 order transferring *Donald Trump, et al. v. Twitter, Inc. and Jack Dorsey*, Case No. 21-22441-CIV-SCOLA (S.D. Fla. 2021), to the Northern District of California (D.E. 87).  The order is attached as **Exhibit 1**.

Dated: October 27, 2021

s/ Maria J. Beguiristain
Maria J. Beguiristain
Florida Bar No. 69851
W. Dylan Fay
Florida Bar No. 125673
WHITE & CASE LLP
200 South Biscayne Boulevard
Suite 4900
Miami, Florida 33131
Telephone: (305) 371-2700
Facsimile: (305) 358-5744
Email: mbeguiristain@whitecase.com
Email: wfay@whitecase.com


Craig S. Primis, P.C. (admitted *pro hac vice*)
K. Winn Allen, P.C. (admitted *pro hac vice*)
Ronald K. Anguas, Jr. (admitted *pro hac vice*)
Kate H. Epstein (admitted *pro hac vice*)
James Y. Xi (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
craig.primis@kirkland.com
winn.allen@kirkland.com
ronald.anguas@kirkland.com
kate.epstein@kirkland.com
james.xi@kirkland.com

*Attorneys for Defendants Facebook, Inc.
and Mark Zuckerberg*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on the 27th day of October 2021, the foregoing was electronically transmitted to the Clerk of Court using the CM/ECF system, which will transmit notification of such filing to all registered participants.

*s/ Maria J. Beguiristain*
Maria J. Beguiristain

# EXHIBIT 1

United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Donald Trump, Linda Cuadros, and American Conservative Union, Plaintiffs, | )<br>)<br>) |
| v. | ) Civil Action No. 21-22441-Civ-Scola<br>)<br>) |
| Twitter, Inc. and Jack Dorsey, Defendants. | )<br>)<br>) |

**Order Granting Motion to Transfer**

This cause is before the Court upon Defendant Twitter, Inc.'s ("Twitter") motion to transfer to the Northern District of California. (Mot., ECF No. 41.) Twitter requests that the Court transfer this action to the Northern District of California pursuant to a forum selection clause in Twitter's Terms of Service. (*See generally*, Mot., ECF No. 41.) Plaintiffs Donald J. Trump, Linda Cuadros, American Conservative Union, Rafael Barboza, Dominick Latella, Wayne Allen Root, and Naomi Wolf oppose the motion. (Resp. in Opp'n, ECF No. 58.) Twitter filed a reply (ECF No. 65), and the Plaintiffs were afforded leave to file a surreply. (ECF No. 75.) After careful review of the parties' arguments, the record, and relevant legal authorities, the Court **grants** Twitter's Motion. **(ECF No. 41.)**

1. **Background**

This action arises from various actions taken by Twitter affecting the Plaintiffs' use of their Twitter accounts.

Twitter is a corporation with its principal place of business in San Francisco, California. (Am. Compl., ECF No. 21 at ¶ 25.) Twitter operates an internet communications platform that allows millions of users to share their opinions and follow current events. (*Id.* at ¶ 2.) Twitter users communicate with the public and their followers through posts called "Tweets." (*Id.* at ¶ 25.) To create a Twitter account, prospective users are required to complete an online registration process. (*Id.* at ¶ 25.) The registration process involves the user's acceptance of Twitter's User Agreement, which includes its Terms of Service, rules, and policies. (*Id.* at ¶ 37.) Each user is required to assent to the User Agreement and acknowledge that by continuing use of Twitter's services, the user agrees to be bound by the current version of its Terms of Service. (*Id.*) The

parties do not dispute that the Plaintiffs accepted Twitter's Terms of Service and rules by assenting to Twitter's User Agreement and continued use of Twitter's services.

Since at least September 2009, the User Agreement has stated that "[a]ll disputes related to these Terms or Services will be brought solely in the federal or state courts located in San Francisco County, California, United States," and that the parties "consent to personal jurisdiction and waive any objection as to inconvenient forum." (2021 Twitter Terms of Service, ECF No. 41–2; 2009–2020 Twitter Terms of Service, ECF No. 58–1.) The User Agreement exempts government officials or agencies using Twitter in their official capacities and who are legally unable to accept the forum selection clause. (*Id.*) By agreeing to the terms of the User Agreement, users also agree to abide by Twitter's rules and policies. The rules regulate the content users may post on the platform and prohibit violent, inciteful, hateful content and prohibit the spreading of misinformation regarding Covid-19. (*Id.* at ¶ 37.); *see also* (Carome Decl., ECF Nos. 41–3, 41–4, 41–5.) Twitter may enforce these policies by blocking or removing specific Tweets that it determines to be in violation of the Rules, by temporarily or permanently suspending an account, or by a combination of these steps. (Carome Decl., ECF No. 41–5.)

Trump created his Twitter account in 2009 and used it for several years to engage with his followers about politics, celebrities, golf, and business interests. (*Id.* at ¶ 43.) Trump continued using his Twitter account even after he was sworn in as the Forty-Fifth President of the United States. (*Id.* at ¶ 44.) On January 7, 2021, Twitter permanently suspended then–President Trump's account for purportedly violating its Rules prohibiting the incitement of violence related to the January 6 Capitol attack. (*Id.* at ¶ 113.) Twitter also suspended the accounts of other named Plaintiffs or caused their accounts to lose thousands of followers. (*Id.* at ¶¶ 122, 128, 129, 132, 142, 145, 150, 153.)

The Plaintiffs initiated this action on July 7, 2021 and filed the operative amended complaint on July 27, 2021. (Am. Coml., ECF No. 21.) The Plaintiffs allege the following claims: (1) violation of the First Amendment to the United States Constitution, (2) seeking a declaratory judgment that Section 230 of the Communications Decency Act, 47 U.S.C. § 230 is unconstitutional, and related injunctive relief; (3) a claim seeking injunctive relief under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statutes § 501.203(8); and (4) a claim seeking damages under FDUTPA, Florida Statutes § 501.2041. As part of their theory of liability, the Plaintiffs' claim that Twitter, and its owner Defendant Jack Dorsey, succumbed to the coercion efforts of Democratic legislators and took actions to censor the Plaintiffs' Twitter accounts based on their conservative beliefs. (*Id.* at ¶ 51.)

On September 1, 2021, Twitter filed the instant motion to transfer to the Northern District of California as required by the forum selection clause in Twitter's Terms of Service contained in its User Agreement. (*See generally*, Mot., ECF No. 41.)

**2. Legal Standard**

"[T]he appropriate way to enforce a forum selection clause pointing to a state or foreign forum is through the doctrine of forum non conveniens." *Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013). "28 U.S.C. § 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Id.* Generally, to obtain a transfer based on the doctrine of forum non conveniens, a movant must demonstrate that: "(1) an adequate alternative forum is available; (2) the public and private factors weigh in favor of a transfer; and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice." *GDG Acquisitions, LLC v. Gov't of Belize,* 749 F.3d 1024, 1028 (11th Cir. 2014).

However, this analysis changes dramatically if the agreement between the parties contains a valid forum selection clause. *Atl. Marine*, 571 U.S. at 63. Indeed, the existence of a forum selection clause is essentially dispositive in the 28 U.S.C. § 1404(a) or forum non conveniens analysis. *Id.* at 62; *see also GDG Acquisitions,* 749 F.3d at 1028 ("an enforceable forum selection clause carries near-determinative weight" in the forum non conveniens analysis). "When the parties have agreed to a valid forum selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atl. Marine Constr. Co.*, 571 U.S. at 62.

In analyzing the application of a forum selection clause, a court must determine whether: (1) the clause is valid; (2) the clause is mandatory or permissive; and (3) the claim at issue falls within the scope of the clause. *See Bahamas Sales Assoc., LLC v. Byers*, 701 F.3d 1335, 1340 (11th Cir. 2012) ("To determine if a claim falls within the scope of a clause, we look to the language of the clause."); *Fla. Polk Cty. v. Prison Health Servs. Inc.*, 170 F.3d 1081, 1083 (11th Cir. 1999) (courts must further determine whether clause is mandatory or permissive).

Once established, the existence of a valid forum selection clause governing the claims at issue shifts the burden from the party seeking dismissal or transfer to the nonmovant to establish that dismissal is improper. *See Atl. Marine.,* 571 U.S. at 63; *Stiles v. Bankers Healthcare Grp., Inc.*, 637 F.

App' x 556, 562 (11th Cir. 2016); *Pappas v. Kerzner Int'l Bah. Ltd.*, 585 F. App'x 962, 967 (11th Cir. 2014). The party seeking to avoid the forum selection clause bears a "heavy burden of proof" that the clause should be set aside. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991). A court evaluating a motion to transfer should "afford no weight to either the plaintiff's selected forum or the parties' private interests, and [should] ignore the choice-of-law rules of the original venue." *Hisey v. Qualtek USA, LLC*, 753 F. App'x 698, 703 (11th Cir. 2018) (citing *Atl. Marine*, 571 U.S. at 62–65).

Typically, a plaintiff may seek to overcome this burden by showing that the public interest favors the preselected forum. *Id.* "Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.* (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 & n.6 (1981)).

### 3. Analysis

Twitter has filed the subject motion to transfer this matter to the Northern District of California as required by the mandatory forum selection clause accepted by the Plaintiffs when they assented to the User Agreement. (*See generally*, Mot. ECF No. 41.) Twitter also argues that the Plaintiffs' claims stem from Twitter's application of its Terms of Service, rules, and policies, and thus, are within the broad scope of the forum selection clause.

The Plaintiffs do not dispute that they accepted the terms of the Twitter User Agreement. Yet, the Plaintiffs oppose the motion on the grounds that Trump was the sitting President at the time his account was suspended and thus, the forum selection clause by its very own terms excludes him from the forum requirement. (*See generally*, Resp. in Opp'n, ECF No. 58.) The Plaintiffs also argue that the clause is ambiguous and not mandatory, and that the public interest weighs in favor of denying transfer.

In reply, Twitter argues that Trump is not exempt from application of the forum selection clause because he has filed this action in his individual capacity, seeks reinstatement of his Twitter account for use in his personally capacity, and originally assented to Twitter's User Agreement as an individual. (*See generally*, Reply, ECF No. 65.)

The Plaintiffs filed a surreply arguing that this Court should decline following the holding in *Trump v. YouTube, LLC*, No. 21-cv-22445-KMM, ECF No. 70 at 13 (S.D. Fla. Oct. 6, 2021) (Moore, J.). In that related case, the Honorable K. Michael Moore granted YouTube's motion to transfer because the forum selection clause was valid and mandatory, and the plaintiffs, including Trump, failed to meet their heavy burden of showing the public interest favors

their preferred forum.

For the reasons stated below, the Court finds that the motion to transfer is due to be **granted**. **(ECF No. 41.)** First, Trump's former status as the President of the United States does not preclude the application of the forum selection clause. Second, the forum selection clause is valid and mandatory. Third, the forum selection clause encompasses the Plaintiffs' claims. And fourth, the Plaintiffs have failed to satisfy their heavy burden to show that this case should not be transferred.

### A. Trump is not exempted from the application of Twitter's forum selection clause

The parties agree that from September 2009 through August 2021, Twitter's User Agreement has contained a version of the following forum selection clause at issue in this case:

> **6. General**
> We may revise these Terms from time to time. The changes will not be retroactive, and the most current version of the Terms, which will always be at twitter.com/tos (https://twitter.com/en/tos), will govern our relationship with you. We will try to notify you of material revisions, for example via a service notification or an email to the email associated with your account. By continuity to access or use the Services after those revisions become effective, you agree to be bound by the revised Terms.
>
> The laws of the State of California, excluding its choice of law provisions, will govern these Terms and any dispute that arises between you and Twitter. All disputes related to these Terms or the Services will be brought <u>solely</u> in the federal or state courts located in San Francisco County, California, United States, and you consent to personal jurisdiction and waive any objection as to inconvenient forum.
>
> If you are a federal, state, or local government entity in the United States using the Services in your official capacity <u>and legally unable to accept the controlling law, jurisdiction or venue clauses above, then those clauses do not apply to you</u>. For such U.S. federal government entities, these Terms and any action related thereto will be governed by the laws of the United States of America (without reference to conflict of laws) and, in the absence of federal law and to the extent permitted under federal law, the laws of the

> State of California (excluding choice of law).

(2021 Twitter Terms of Service, ECF No. 41–2; 2009–2020 Twitter Terms of Service, ECF No. 58–1.) (emphasis added).

The Plaintiffs argue that Trump is exempted from the forum selection clause because he was the sitting President at the time his Twitter account was suspended and was legally unable to accept the forum selection clause.

Even assuming that Trump was using his account in his official capacity, Trump has not advanced any legal authority to support his contention that he satisfies the second requirement of the exemption: that he is "legally unable to accept the controlling law, jurisdiction, or venue clauses. . ." The response in opposition cites several regulations to show that Trump was legally prohibited from accepting the forum selection clause at issue. (Resp. in Opp'n, ECF No. 58 at 9.) However, after a careful review of the citations, the Court finds that not one prevents Trump for accepting the forum selection clause.

The Plaintiffs cite to 44 U.S.C. § 2904, which outlines the general responsibilities for records management by the Archivist of the United States and by the Administrator of General Services. The Court does not find, nor do the Plaintiffs cite to, any section of the code that prevents a federal actor from accepting a forum selection clause.

Next, the Plaintiffs argue that 36 C.F.R. § 1220 prevents Trump from accepting Twitter's forum selection clause. Notably, the Plaintiffs fail to point the Court to the specific language they rely on. Section 1220 "specifies policies for Federal agencies' records management programs relating to proper records creation and maintenance, adequate documentation, and records disposition." 36 C.F.R. § 1220.1. Again, the Court is unable to find any authority prohibiting Trump from accepting Twitter's forum selection clause.

The Plaintiffs also cite to 31 U.S.C. § 1341, which sets forth the limitations on expending for federal employees. Section 1341 prohibits federal employees from: "(B) involve[ing] either government in a contract or obligation for the payment of money before an appropriation is made unless authorized by law; . . [or] " (D) involve[ing] either government in a contract or obligation for the payment of money required to be sequestered under section 252 of the Balanced Budget and Emergency Deficit Control Act of 1985." 31 U.S.C. § 1341. The Plaintiffs have not shown that Twitter's User Agreement constitutes a contractual obligation for the payment of money. After reviewing the different versions of the User Agreement's Terms of Service, the Court finds that the contract between the parties is not one for the exchange of money. Lastly, the Plaintiffs cite to a regulation governing procurement contracts, which has no bearing to the contract at issue in this case. 41 C.F.R. § 1, *et seq.*

Moreover, the Court finds that the Plaintiffs' reliance on *Knight First Amend. Inst. at Columbia Univ. v. Trump*, 928 F.3d 226, 230 (2d Cir. 2019), *cert. granted, judgment vacated sub nom. Biden v. Knight First Amend. Inst. At Columbia Univ.*, 141 S. Ct. 1220, 209 L. Ed. 2d 519 (2021), is misplaced. There, the Second Circuit held that Trump's Twitter account was a public forum, such that Trump violated the First Amendment by blocking other Twitter users from interacting with his account. *Knight*, 928 F.3d at 237–38. *Knight* has no bearing on the proceedings at hand because it did not consider the enforceability of Twitter's forum selection clause, particularly, whether Trump was exempted from its requirements in his capacity as President.

For these reasons, the Court finds that Trump's status as President of the United States does not exclude him from the requirements of the forum selection clause in Twitter's Terms of Service.

### B. Twitter's forum selection clause is mandatory and enforceable

Twitter argues that the forum selection clause in its Terms of Services is mandatory and enforceable under the circumstances because "other courts to consider the question have found Twitter's forum selection clause to be mandatory." (Mot., ECF No. 41 at 14.) Twitter cites to several cases in which other federal courts have enforced Twitter's forum selection clause. *See Brittain v. Twitter Inc.*, No. CV-18-01714-PHX-DGC, 2019 WL 110967, at *2 (D. Ariz. Jan. 4, 2019); *see also Wingo v. Twitter, Inc.*, No. 14-2643, 2014 WL 7013826, at *3 (W.D. Tenn. Dec. 12, 2014); *Doshier v. Twitter, Inc.*, 417 F. Supp. 3d 1171, 1180 (E.D. Ark. 2019). Additionally, Twitter contends that the forum selection clause, by its own terms, is mandatory. (Mot., ECF No. 15–17.)

On the other hand, the Plaintiffs contend that Twitter's forum selection clause is ambiguously worded, and that any ambiguity should be interpreted against the drafter. (Resp. in Opp'n, ECF No. 58 at 7–8.) The Plaintiffs argue that "Defendant's forum selection clause contains terminology that suggests it could be either mandatory or permissive. Specifically, while it references exclusivity in that "all disputes . . . will be brought solely" in California, it then proceeds to state that parties to this clause "consent to personal jurisdiction and waive any objection" to actions brought in California." (*Id.* at 8.) Moreover, the Plaintiffs aver that an ambiguity exists as a result of the use of "consent" because it implies that the clause is not mandatory. (*Id.*) The Plaintiffs further argue that the forum selection clause at issue is permissive, rather than mandatory and thus, does not command the forum for this litigation. (*Id.* at 9–10.) The Plaintiffs aver that this case is analogous to *Travelcross, S.A. v. Learjet, Inc.*, No. 10-61842-CIV, 2011 WL 13214118, at *1 (S.D. Fla. Mar. 28, 2011), where the court found that a forum selection clause was ambiguous.

In reply, Twitter argues that "[t]he provision on which Plaintiffs rely does not even address the forum in which a user may sue Twitter; it instead speaks to defenses that a user waives in a suit filed by Twitter against him." (Reply, ECF No. 65 at 6.) "There is nothing 'contradictory,' about one provision mandating an exclusive forum and a second provision waiving defenses against being sued in that forum." (*Id.*) Lastly, Twitter distinguishes *Travelcross* because that case was "based specifically on the fact that the clause at issue there did not include the type of mandatory and exclusive limitations on where suits will be brought, that Twitter's clause does include." (*Id.*)

After considering the parties' arguments and reviewing the relevant legal authorities, the Court finds that Twitter's forum selection clause is mandatory, not permissive. Indeed, the clause states "<u>All</u> disputes related to these Terms or the Services will be brought <u>solely</u> in the federal or state courts located in San Francisco County, California, United States." (2021 Twitter Terms of Service, ECF No. 41–2; 2009–2020 Twitter Terms of Service, ECF No. 58–1.) The use of "all" and "solely" clearly demonstrate the forum selection clause is mandatory. *Landau v. Jaffa*, No. 18-60772-CIV, 2018 WL 4778426, at *3 (S.D. Fla. July 19, 2018) (Seltzer, J.) (determining forum selection clause was enforceable and mandatory because it required that the parties "resolve all disputes within the <u>sole</u> jurisdiction of the courts of the State of Utah.") (emphasis added); *Margolis v. Warner Chilcott (US), LLC*, No. 16-23891-CIV, 2017 WL 9324774, at *3 (S.D. Fla. June 14, 2017) (Torres, MJ.) (finding forum selection clause was enforceable and mandatory because it stated, "Employer and Employee consent to the <u>sole</u> jurisdiction of the federal and state courts of New Jersey.") (emphasis added). Additionally, the use of the word "consent" is not dispositive considering the mandatory language employed. *Margolis*, 2017 WL 9324774, at *3.

Moreover, the Court finds that the Plaintiffs' reliance on *Travelcross* is misplaced. There, the forum selection clause stated, "the courts of Kansas shall have exclusive jurisdiction to hear and determine all claims, disputes, actions or suits which may arise hereunder." *Travelcross*, 2011 WL 13214118, at *2. The court explained that "jurisdiction is not the same as venue," and found that the "'exclusive jurisdiction' language does not mandate venue in Kansas." (*Id.*) Next, the court found that the next sentence— "Travelcross expressly consents to jurisdiction and venue in the state and federal courts of Kansas for any claims or disputes arising hereunder"—is not apparently mandatory. *Id.* The court reasoned that the sentence did not includes words like "shall," or "only." *Id.* Here, Twitter has used words like "solely" and included "all disputes." *See YouTube,* No. 21-cv-22445-KMM, ECF No. 70 at 13 (finding forum selection clause was mandatory and enforceable and distinguishing

*Travelcross* because "[i]n this case there is no cause for uncertainty because the forum selection clause states that all claims "will be litigated exclusively" in California courts."). In their surreply, the Plaintiffs attempt to distinguish *YouTube* by arguing that unlike the clause in that case, Twitter's forum selection clause exempts federal government officials and because Trump's account was suspended while he was President he is not bound by the clause. (Surreply, ECF No. 75 at 3–4.) This argument has already been rejected by the Court.

Lastly, the Court notes that the Plaintiffs do not attempt to distinguish the cases relied on by Twitter in which other federal courts found its forum selection clause mandatory and enforceable.

### C. Twitter's forum selection clause encompasses the Plaintiffs' claims

Twitter argues that the language of the forum selection clause includes the Plaintiffs' claims because the clause requires that "all disputes related to [Twitter's] Terms or the Services" to be litigated in California." (Mot., ECF No. 41 at 15.) This clause encompasses Plaintiffs' claims because they relate to Plaintiffs' use of the Twitter platform and to Twitter's enforcement of its terms. (*Id.*)

In response, the Plaintiffs argue that the claims asserted in the amended complaint do not arise within the scope of the forum selection clause. (Resp., in Opp'n, ECF No. 58 at 10–12.) The Plaintiffs dispute that their claims are based on the access and use of Twitter's services because Plaintiffs FDUPTA claims relate to Twitter's deceptive practices towards all current and prospective users in Florida. (*Id.* at 11.) (citing *Management Computer Controls, Inc. v. Charles Perry Constr., Inc.*, 743 So. 2d 627 (Fla. 1st DCA 1999)). Additionally, the Plaintiffs argue that public policy weighs in favor of finding that the FDUPTA claims do not arise out of the agreement between the parties and that the forum selection clause does not apply. (*Id.* at 12.)

In reply, Twitter argues that its forum selection clause "is not so limited; as noted, it governs all disputes 'related to' either the 'Terms' or Twitter's 'Services'—including its platform—in any way." (Reply, ECF No. 65 at 11.) Additionally, the Plaintiffs' Florida statutory claims "are inextricably linked to the [Twitter Terms]" and are therefore "covered by the … clause." (*Id.*) (citing *YouTube*, No. 21-cv-22445-KMM, ECF No. 70 at 19.

The Court finds that the application of the forum selection clause in this litigation, including the Plaintiffs' FDUPTA claims, does not contravene public policy. *See Gordon v. Sandals Resorts Int'l, Ltd.*, 418 F. Supp. 3d 1132, 1139 (S.D. Fla. 2019), *appeal dismissed sub nom. Gordon v. Sandals Resorts Int'l, Ltd*, No. 19-14869-GG, 2020 WL 3042742 (11th Cir. Apr. 1, 2020) (noting that

"Florida has a muddled public policy regarding whether a forum selection clause should be enforced against a plaintiff bringing a [FDUPTA] claim," and "declin[ing] to find that the enforcement of the forum selection clause would contravene Florida public policy.") (Scola, J.); *see also McCoy v. Sandals Resorts Int'l, Ltd.*, No. 19-CV-22462, 2019 WL 6130444, at *10 (S.D. Fla. Nov. 19, 2019) (Bloom, J.), *appeal dismissed sub nom. Gordon v. Sandals Resorts Int'l, Ltd*, No. 19-14869-GG, 2020 WL 3260707 (11th Cir. Apr. 1, 2020) ("Therefore, as in *Gordon*, the Court declines to find that enforcement of the forum selection clause at issue here would contravene Florida's public policy.); *YouTube*, No. 21-cv-22445-KMM, ECF No. 70 at 16.

Next, the Court must determine whether the FDUTPA claims in the amended complaint arise under the terms of the forum selection clause. For the reasons discussed below, the Court finds that the forum selection clause applies to the Plaintiffs' FDUTPA claims.

Although the Plaintiffs argue that their claims do not arise under the forum selection clause and instead stem from the deceptive practices prohibited by FDUTPA, a review of the amended complaint leads the Court to a different conclusion. In counts three and four, the Plaintiffs bring claims for violations of FDUTPA. Each count challenges Twitter's application of its policies, rules, standards, which serve to regulate User content. (Am. Compl., ECF No. 21 at ¶¶ 204, 205, 224, 225.) Indeed, at the heart of the Plaintiffs' FDUTPA claims is that Twitter was deceptive in its "inconsistent application of their standards in banning the Plaintiff and the Putative Class Members." (*Id.* at ¶ 212.) Accordingly, the Court rejects the Plaintiffs' argument that their FDUTPA claims are independent from any agreement between the Plaintiffs and the Defendants. "To the contrary, the FDUTPA claims are inextricably linked to the aforementioned provisions of the [Terms of Service], based on the allegations included in the Amended Complaint." *YouTube*, No. 21-cv-22445-KMM, ECF No. 70 at 19.

In their surreply, the Plaintiffs argue that *YouTube* is inapplicable because the Court failed to consider the application of Florida's Social Media Platforms Act ("SMPA"), which creates a private cause of action against Social Medial Platforms that fail to consistently apply their standards for content moderation." (Surreply, ECF No. 75 at 1–2.) However, the complaint does not separate its FDUTPA claims from the conclusory allegations that the Defendants violated SMPA. (Am. Compl., ECF No. 21 at ¶ 232.) Nor do the Plaintiffs explain what remedies they are entitled to under the SMPA that are

different from FDUTPA or that would be unavailable in California.[1]

For these reasons, the Court finds that the broad language used in Twitter's forum selection clause encompasses the Plaintiffs' claims. *See Loomer v. Facebook, Inc.*, No. 19-CV-80893, 2020 WL 2926357, at *3 (S.D. Fla. Apr. 13, 2020) (Smith, J.) (recognizing that a forum selection clause that applies to "any claim, cause of action, or dispute you have against us that arises out of or relates to these Terms or the Facebook Products" is broad enough to encompass claims related to deactivation of Facebook accounts); *see also YouTube*, No. 21-cv-22445-KMM, ECF No. 70 at 19.

### D. Public interest does not compel that the Court retain jurisdiction

Having found that the parties' agreement contains a valid forum selection clause, the burden now shifts to the Plaintiffs to show that transfer of this action is improper. *McCoy*, 2019 WL 6130444, at *4 (citing *Stiles v. Bankers Healthcare Grp., Inc.*, 637 F. App'x 556, 562 (11th Cir. 2016)). The Plaintiffs bear a high burden in this regard. *Atl. Marine*, 571 U.S. at 64. The Court is limited to consider only public interest factors. *McCoy*, 2019 WL 6130444, at *4.

The Plaintiffs offer five public interest considerations that weigh against a transfer: (1) the FDUTPA claims constitute a localized controversy that will affect how the Defendants engage in business in Florida; (2) several Plaintiffs, including Trump, are residents of Florida; (3) the bargaining positions between Twitter and its users weighs against a transfer, (4) Justice Clarence Thomas's concerns regarding Section 230 in an opinion on a petition denying a writ of certiorari; and (5) recent case law weighs against a transfer of this action. (Resp. in Opp'n, ECF No. 58 at 13–17.)

The Defendants argue that there is no rule against applying a forum selection clause to FDUTPA claims. (Reply, ECF No. 65 at 9.) Additionally, they contend that the Plaintiffs have failed to satisfy their high burden of showing that public interest factors overwhelmingly disfavor a transfer. (*Id.*) The Court agrees.

First, the Court has already found that the Plaintiffs' FDUTPA claims do not create a public interest reason for keeping this case in the Southern District of Florida. Second, this case does not present a localized controversy that warrants keeping the case in this district. "To the contrary, this case involves issues that are national in scope." *YouTube*, No. 21-cv-22445-KMM,

---

[1] The Court notes that in a footnote in their surreply, the Plaintiffs contend that "[t]here is no California statute remotely similar to the SMPA," however, this does not amount to an explanation of what remedies they would be deprived of if the case were transferred to the Northern District of California.

ECF No. 70 at 21. Indeed, while Trump and some other Plaintiffs are located in Florida, others are located throughout the country. (Am. Compl., ECF No. 21 at ¶¶ 18–24.) This putative class action is based on a nationwide class. (*Id.* at ¶ 234.) Third, Twitter is headquartered in California. (*Id.* at ¶ 25.) Fourth, the Plaintiffs invoke the First Amendment of the United States constitute to invalidate a federal statute. And Fifth, the Plaintiffs' remaining arguments related to the parties' bargaining power, Justice Clarence's concerns, and the addictive nature of social media do not constitute the types of public interest considerations that weigh against applying a forum selection clause. *YouTube*, No. 21-cv-22445-KMM, ECF No. 70 at 21 (citing *Atl. Marine*, 571 U.S. at 64 ("Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'")). These arguments do not share a nexus with Florida and instead raise general national issues related to social media platforms.

      Nor is the Court persuaded by the Plaintiffs' reliance on *Seaman v. Priv. Placement Cap. Notes II, LLC*, No. 16-CV-00578-BAS-DHB, 2017 WL 1166336, at *1 (S.D. Cal. Mar. 29, 2017). That case stemmed from an enforcement action brought by the Securities and Exchange Commission, in which a receiver had been authorized to bring civil claims against the corporate defendants. The defendants moved to transfer the litigation to another district. The court denied the defendants' request for a transfer, finding that the public interest weighed against the application of a forum selection clause. *Seaman*, 2017 WL 1166336, at *7. The court explained that litigating in another forum would increase costs on a receiver that had been appointed, thereby decreasing the funds available to investors and creditors. *Id.* Additionally, many of the investors resided in the original district. *Id.* Moreover, the Court noted that the alleged fraud and resulting injuries had occurred in the original district. *Id.* Those circumstances are not present in this case. Here, almost half of the Plaintiffs reside outside of Florida and Twitter's inconsistent application of its rules and policies occurs nationwide. Certainly, the Plaintiffs intend to bring a nationwide class. Accordingly, the Court finds that the Plaintiffs have failed to meet their stringent burden of "showing that public-interest factors overwhelmingly disfavor a transfer." *Atl. Marine,* 571 U.S. at 64.

### 4. Conclusion

      For the reasons discussed above, the Court **grants** Twitter's motion to transfer to the Northern District of California (ECF No. 41). The Clerk is directed to take all actions to transfer the case to the Northern District of

California.

**Done and ordered** in chambers, at Miami, Florida, on October 26, 2021.

_____
Robert N. Scola, Jr.
United States District Judge