# EXHIBIT K

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-22440-CIV-WILLIAMS/MCALILEY

DONALD J. TRUMP, *et al.*,

      Plaintiffs,

v.

FACEBOOK, INC. and
MARK ZUCKERBERG,

      Defendants.

_____/

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION TO TRANSFER TO THE NORTHERN DISTRICT OF CALIFORNIA**

## INTRODUCTION

On October 6, 2021, another court in this District agreed to transfer a near-identical lawsuit brought by Mr. Trump and other plaintiffs against YouTube, LLC and Sundar Pichai to the Northern District of California, rejecting the exact arguments that Plaintiffs make here. *See* Order on Mot. to Transfer, *Trump, et al. v. YouTube, LLC, et al.*, Case No. 21-22445-CIV-MOORE (D.E. 70) (attached as Ex. A). This Court should reach the same result because nothing in Plaintiffs' opposition justifies disregarding the forum-selection clause to which Plaintiffs agreed when they registered for and used Facebook. Plaintiffs do not engage with the unbroken line of decisions from this District and others transferring claims against Facebook to the Northern District of California, *see* Defs.' Mot. (D.E. 75) at 6–7, and their arguments for disregarding the forum-selection clause fail when evaluated under the governing legal standards. Facebook's forum-selection clause is valid and enforceable, it is mandatory, and it covers all of Plaintiffs' claims. The clause "should be given controlling weight" because this is not among "the most exceptional cases" that justify departure from the parties' contractual agreement. *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62–64 (2013). The Court should grant Defendants' motion and transfer this case to the Northern District of California.

## ARGUMENT

**I.     Facebook's Forum-Selection Clause Applies To Mr. Trump.**

Plaintiffs tacitly concede that Facebook's forum-selection clause is valid and enforceable as to seven of the eight Plaintiffs, but they argue that Mr. Trump alone is exempt from that provision because he is a "government entit[y]." *See* Pls.' Opp'n to Defs.' Mot. (D.E. 77) ("Opp'n") at 1. According to Plaintiffs, "government entities using social media platforms do not have the authority to bind themselves to the standard choice of forum … terms," *id.* at 2, and Facebook's forum-selection clause is therefore unenforceable as to Mr. Trump because he was

1

President of the United States for part of the time he used Facebook, *see id.* at 3–7. As Judge Moore recently explained, that argument fails because "there is no federal agency or entity that is a party to this case." Ex. A at 9. Nor was Mr. Trump a "government entity" when he accepted Facebook's Terms. He accepted the Terms as a private individual and, like the other Plaintiffs, is bound by the forum-selection clause in those Terms.

Plaintiffs acknowledge that Mr. Trump is now "a private citizen," Pls.' Am. Compl. (D.E. 16) ("Am. Compl.") ¶¶ 7, 18, just as he was in 2009 when he joined Facebook and first agreed to the forum-selection clause, *see id.* ¶ 59; M. Duffey Decl. (D.E. 75-1) ("Duffey Decl.") ¶ 5. He also filed this lawsuit as a private citizen, seeking damages in his own name, along with an injunction ordering Defendants to restore access to his personal Facebook account. *See* Am. Compl., Prayer for Relief. And Mr. Trump's "status in this case as a private citizen is further confirmed by the fact that he is pursuing claims under FDUTPA—which provides no cause of action for the federal government or its officials." Ex. A at 9. Indeed, Mr. Trump does not purport to sue on behalf of any federal government entity, nor is he represented by the Department of Justice; to the contrary, he purports to represent "hundreds of thousands" of private individuals in this putative class action. Am. Compl. ¶ 249.

Rather than grapple with their own allegations, Plaintiffs assert *ipse dixit* that during his time as President, Mr. Trump "could not accept the controlling law, jurisdiction, or venue clauses contained in Facebook's TOS without input from other agencies, including the National Archives and Records Administration, in accordance with the requirements of the Federal Acquisition Regulation." Opp'n at 4. That misses the point: Mr. Trump accepted the forum-selection clause in Facebook's Terms when he registered for Facebook in 2009 as a private individual and when

2

he continued to use Facebook thereafter. Nothing Plaintiffs cite nullifies that contract simply because Mr. Trump was elected President.

Plaintiffs cite instances where Facebook and two government agencies made different agreements that took them outside of Facebook's standard Terms. *See id.*, Ex. 1 (agreement with National Archive and Records Administration) ("Government entity wishes to create a page on Facebook's service pursuant to the Terms of Use as amended by the Amendment, and Facebook is willing to allow such use as set forth herein."); *id.*, Ex. 2 (agreement with Federal Trade Commission).[1] But those agreements are irrelevant because Facebook did not contract with Mr. Trump as a government entity when he agreed to the Terms in 2009, and Facebook is not seeking to enforce its forum-selection clause against Mr. Trump as a government entity now. Plaintiffs' citation to outdated guidelines regarding how federal agencies should negotiate online terms of service, *id.*, Ex. 3, is similarly misplaced because, again, Mr. Trump was not acting on behalf of any government entity when he first agreed to the Terms, and he is not acting on behalf of one now. "Plaintiffs have not cited to … any legal authority standing for the proposition that a former federal official is exempt from a forum-selection clause to which he agreed to in his individual capacity." Ex. A at 10–11.

It makes no difference whether Mr. Trump's account was a "public forum" during his presidency or whether his posts at that time were considered "official responses." *See* Opp'n at 4–5. He was a private citizen when he created his account and is one now. Nor does the Second Circuit's decision in *Knight First Amend, Inst. at Columbia Univ. v. Trump*, 928 F.3d 226 (2d Cir. 2019), have any bearing on whether this case should be transferred. *See* Opp'n at 5. For one thing,

---

[1] Plaintiffs' cited exhibits are not attached to their opposition or otherwise available on the docket. Defendants requested and received them from Plaintiffs in advance of this filing. Defendants will file Plaintiffs' exhibits if the Court so directs.

the Supreme Court vacated that decision as moot because Mr. Trump no longer is in office. *See* 141 S. Ct. 1220 (2021). But regardless, *Knight* did not address the applicability of a forum-selection clause to Mr. Trump's social media usage and, if anything, confirmed that Mr. Trump's accounts have no special government status before or after he was in office, including when he agreed to Facebook's Terms. As the Second Circuit explained: "No one disputes that before he became President the Account was a purely private one or that once he leaves office the Account will presumably revert to its private status." *Knight*, 928 F.3d 226 at 231. That conclusion only undermines Mr. Trump's efforts to claim an exemption from the Terms.

## II. Facebook's Forum-Selection Clause Is Unambiguous and Mandatory.

Plaintiffs next argue that "Facebook's forum selection clause is ambiguously drafted" and that "when a court cannot determine if a forum selection clause is permissive or mandatory, the clause is deemed ambiguous, and construed against the drafter." Opp'n at 7–8. That argument is squarely at odds with the plain text of the parties' agreement, which provides that all covered disputes "*will be* resolved *exclusively* in the U.S. District Court for the Northern District of California or a state court located in San Mateo County." Duffey Decl., Ex. A at § 4(4) (emphases added). This language is unambiguous and "dictates an exclusive forum for litigation under the contract." *Coffee Bean Trading-Roasting, LLC v. Coffee Holding, Inc.*, 510 F. Supp. 2d 1075, 1077 (S.D. Fla. 2007); *see also Emerald Grande, Inc. v. Junkin*, 334 F. App'x 973, 976 (11th Cir. 2009) (language declaring that specific court "will be" the venue for any dispute is mandatory); *Trafalgar Cap. Specialized Inv. Fund v. Hartman*, 878 F. Supp. 2d 1274, 1283–84 (S.D. Fla. 2012) (nondiscretionary terms such as "*exclusively*" are "the hallmark of a mandatory forum selection clause"); *E.K.D. ex rel. Dawes v. Facebook, Inc.*, 885 F. Supp. 2d 894, 901 (S.D. Ill. 2012) (finding Facebook's forum-selection clause to be mandatory).

4

To try and manufacture ambiguity, Plaintiffs point to other language stating that users "also agree to submit to the personal jurisdiction" of the specified California courts. Opp'n at 8–9. According to Plaintiffs, this provision makes the overall clause ambiguous because it "contains contradictory mandatory and permissive language," such that it should be construed against Facebook and deemed permissive. *Id.* at 9. That is wrong. Plaintiffs' highlighted language "must be read in the context of the rest of the provision," which makes clear that California is the exclusive forum for resolving covered disputes. *Coffee Holding, Inc.*, 510 F. Supp. 2d at 1077. The reference to personal jurisdiction does not change the clause's mandatory nature; it simply confirms the parties "also" submit to personal jurisdiction in the specified courts.

Plaintiffs rely principally on two inapposite cases to support their position. In *Wai v. Rainbow Holdings*, 315 F. Supp. 2d 1261 (S.D. Fla. 2004), the court identified a number of permissive forum-selection clauses that included *only* a consent to jurisdiction, without the mandatory and exclusive language found in Facebook's clause. *See id.* at 1272 & n.7 ("There is no exclusive language in the clause precluding the parties from bringing covered claims in other courts."). And Plaintiffs' reliance on *Travelcross, S.A. v. Learjet, Inc.*, 2011 WL 13214118 (S.D. Fla. Mar. 28, 2011), is similarly flawed because the forum-selection clause there spoke in mandatory terms only with respect to jurisdiction, not venue. *See id.* at *2. Facebook's clause is different because it expressly states that covered disputes "will be" resolved "exclusively" in California. That language is unambiguous and mandatory.

## III. Facebook's Forum-Selection Clause Covers Plaintiffs' Claims.

Plaintiffs tacitly concede that their two federal claims fall within the scope of the forum-selection clause, but they argue their FDUTPA claims do not because they "do not relate to the Plaintiffs' own use of the Facebook Products." Opp'n at 11. That argument misconstrues the contract language and ignores the substance of Plaintiffs' state-law claims.

5

As an initial matter, Plaintiffs' reading of the forum-selection clause is too narrow. The clause applies to "*any* claim, cause of action, or dispute [Plaintiffs] have against [Facebook] that *arises out of or relates to* the[] Terms *or* the Facebook Products." Duffey Decl., Ex. A § 4(4) (emphases added). The test is not, as Plaintiffs assert, whether "the relief sought is of benefit to [] parties outside of this lawsuit" or whether the claim arises "independent of any agreement that may exist between Plaintiffs and Defendants." Opp'n at 13. Rather, to fall within the scope of the clause, "Plaintiff's claims merely have to 'relate' to the Terms" or the Facebook Products; they "do not have to be about a breach of the parties' agreement." *Loomer v. Facebook, Inc.*, 2020 WL 2926357, at *3 (S.D. Fla. Apr. 13, 2020) (enforcing Facebook's forum-selection clause).

Here, Plaintiffs' claims "relate to" both Facebook's Terms and its Products. The Terms limit what users "can share and do on Facebook" and provide that Facebook "can remove or restrict access to content that is in violation of" the Terms and "may suspend or permanently disable access to" a user's account. Duffey Decl., Ex. A, § 3(2), § 4(2). Plaintiffs' state-law claims both rely on the assertion that Facebook did not apply the Terms accurately or consistently. Indeed, Plaintiffs assert that Facebook "repeatedly failed to act in good faith and accordance with [its] stated policies" and has "engaged in a subjective pattern of discriminating against disfavored parties" despite having "policies [that] ostensibly proclaim objective, uniform standards." Am. Compl. ¶¶ 220–21; *see also id.* ¶¶ 236–37, 239–41. The claims plainly "relate to" the Terms.

They also "relate to" the "Facebook Products." The crux of Plaintiffs' FDUTPA claims is that "content posted by the Plaintiff and the Putative Class Members have been removed from the platform, while other content, which by any reasonable standard must be viewed as more clearly in violation of the Defendants' standards is allowed to remain on the platform." Am. Compl. ¶ 237. Each Plaintiff also alleges that they were removed or suspended from Facebook, or that

6

their Facebook pages are "monitored" or "fact-checked." *See, e.g.*, *id.* ¶¶ 146, 151, 156, 158, 168–170, 172, 177–180, 184–186. These allegations "relate to" Plaintiffs' use of the Facebook service.

Plaintiffs nevertheless argue their FDUTPA claims fall outside the clause in light of "the larger public benefit of FDUTPA actions." Opp'n at 12. That position finds no support in the law. To the contrary, "numerous cases containing FDUTPA claims have been transferred outside of Florida in their entirety where the parties to the dispute entered into an agreement containing a forum selection clause." *Pronto Cash of Fla., Inc. v. Digit. Currency Sys., Inc.*, 2006 WL 8432522, at *6 (S.D. Fla. Nov. 28, 2006); *see also, e.g.*, Ex. A at 15–20, 23 ("[M]any Florida courts hold that FDUTPA claims are governed by forum-selection clauses."); *Diabetic Care Rx, LLC v. Express Scripts, Inc.*, 2018 WL 4537203, at *4 (S.D. Fla. July 2, 2018) ("[C]ourts routinely order the transfer of [FDUTPA] claims in recognition of the parties' bargained-for contractual terms.").

Plaintiffs' "leading case," *Management Computer Controls, Inc. v. Charles Perry Construction, Inc.*, 743 So.2d 628 (Fla. Dist. Ct. App. 1999), is not to the contrary. The clause there was much narrower, covering only claims "arising out of" (but not "related to") the parties' contract. *Id.* at 629. And courts subsequently have confirmed that *Management Computer* does not stand for some "per se rule against enforcing a forum selection clause" with respect to FDUTPA claims. *SAI Ins. Agency, Inc. v. Applied Sys., Inc.*, 858 So.2d 401, 404 (Fla. Dist. Ct. App. 2003); *see also Farmers Grp., Inc. v. Madio & Co., Inc.*, 869 So.2d 581, 582 (Fla. Dist. Ct. App. 2004) ("[T]he mere fact that [defendant]'s remaining claims allege statutory violations of the FDUTPA does not mean that they are not subject to the forum selection clause."). Here, Plaintiffs' state-law claims "relate to" Facebook's Terms and Products. They therefore fall within the scope of the forum-selection clause.

## IV. The Public-Interest Factors Do Not "Overwhelmingly Disfavor A Transfer."

Plaintiffs do not and cannot show that the "public-interest factors overwhelmingly disfavor a transfer," as required to overcome the valid forum-selection clause. *Atl. Marine*, 571 U.S. at 67. To try and meet that heavy burden, Plaintiffs contend that the inclusion of two Florida state-law claims transforms this dispute into a "localized controversy." Opp'n at 14. They also rely on a number of "[m]ore generalized policy interests" unanchored from the Supreme Court's directives in *Atlantic Marine*, including irrelevant allegations that "participating in social media absolutely is a requirement of being an active, engaged and informed American citizen in the twenty-first century." Opp'n at 16–18. To the extent they are relevant to transfer at all, these arguments do not turn this dispute into the type of "most exceptional" case in which the public-interest factors can defeat a valid forum-selection clause. *Atl. Marine*, 571 U.S. at 64.

To begin, this case does not present "a localized controversy." Opp'n at 14. Plaintiffs assert federal constitutional claims and purport to act on behalf of a nationwide class in suing two California defendants. Focusing on Plaintiffs' FDUTPA claims (which were not part of their initial complaint) does not transform this purported nationwide class action into a localized case. *E.g.*, *Best Beach Getaways LLC v. TSYS Merch. Sols. LLC*, 2020 WL 9264809, at *2–3 (N.D. Fla. July 2, 2020) (transferring FDUTPA claim to Colorado). Although Plaintiffs assert that "[t]he relief sought here will primarily affect the way Defendants engage in business in Florida," Opp'n at 14, they fail to acknowledge that they also are challenging the constitutionality of a federal statute.

Plaintiffs' reliance on *Seaman v. Private Placement Capital Notes II, LLC* has no bearing on the public-interest analysis here and only confirms this case is not a "localized controversy." *See* Opp'n at 15 (citing 2017 WL 1166336, at *7 (S.D. Cal. Mar. 29, 2017)). In *Seaman*, the court declined to enforce a forum-selection clause because the case involved the appointment of a local federal receiver to oversee the local assets of a local defendant for the benefit of primarily local

8

investors.  The court found that transferring the case "would run counter to the core purpose of a federal receivership—to preserve assets for the benefit of creditors"—and that keeping the case in California furthered this "important public function."  *Id.*  Plaintiffs here offer no basis for stretching *Seaman* to include these inapposite facts.

Nor do Plaintiffs' "more generalized policy interests" allow them to make an end-run around the forum-selection clause.  *See* Opp'n at 16–18.  To start, none of those "more generalized policy interests" are part of the *Atlantic Marine* analysis, and they fail for that reason alone.  But even on their own terms, Plaintiffs' arguments are unpersuasive.  For instance, Plaintiffs attack the disparate "bargaining power between social media companies and their Users," and the allegedly "addictive" nature of social media, Opp'n at 17, claiming those factors counsel against transfer.  But those arguments "have nothing to do with a public interest that favors keeping this case in the Southern District of Florida, in particular."  Ex. A at 22.  And, in all events, Plaintiffs' baseless assertions run headlong into the unbroken line of cases enforcing Facebook's forum-selection clause.  *See, e.g.*, *Thomas v. Facebook, Inc.*, 2018 WL 3915585, at *4 (E.D. Cal. Aug. 15, 2018) ("Numerous courts have affirmed the validity and enforceability of Facebook's [Terms] and the forum selection clause contained therein. … Indeed, the Court is not aware of any case concluding that the forum selection clause is Facebook's [Terms] is invalid.") (collecting cases).

Plaintiffs' argument that this case necessarily belongs in the Eleventh Circuit because their FDUTPA claims purportedly "reflect localized issues" regarding "how Section 230 applies, particularly in view of Justice Thomas's interpretation of Section 230," also is irrelevant under *Atlantic Marine*.  Opp'n at 18.  And that argument also fails on its own terms because Section 230 of the Communications Decency Act is a federal statute, which a federal court in California is equally competent to apply.  *See* Defs.' Mot. at 11.

9

## V. Transfer Also Is Proper Under The Section 1404(a) Analysis.

The parties' agreement to litigate in California controls for all of the reasons above and in Defendants' motion. But even if it did not, California still would be an appropriate forum for this litigation under the typical 28 U.S.C. § 1404(a) transfer analysis.

Plaintiffs try to brush aside most of the private-interest factors—"witness convenience, location of evidence, convenience of parties, locus of facts, and availability of process"—arguing those factors are "essentially neutral." Opp'n at 19. But this is a case brought on behalf of a nationwide class against two California defendants about decisions made in California. As between Florida and California, the private-interest factors favor California, where Facebook is headquartered, where Mr. Zuckerberg resides, and where most of the relevant witnesses and evidence are located. Plaintiffs claim the relative means of the parties nevertheless counsel against transfer, but they do not explain why litigating in California is a problem for them. *See* Opp'n at 19. Plaintiffs also invoke "this forum's familiarity with the law," *id.*, but Plaintiffs allege primarily federal law claims, which a federal court in California is equally able to resolve. *Hight v. U.S. Dep't of Homeland Sec.*, 391 F. Supp. 3d 1178, 1186 (S.D. Fla. 2019). Plaintiffs' FDUTPA claims do not change the analysis because it is well-settled that a court in another jurisdiction is equally competent to decide those state-law claims. *See, e.g.*, *Stokes v. Markel Am. Ins. Co.*, 2019 WL 8017457, at *5 (S.D. Fla. June 28, 2019); *Pronto Cash of Fla.*, 2006 WL 8432522, at *6.

## CONCLUSION

For all of the foregoing reasons and those set forth in their motion, Defendants Facebook, Inc. and Mark Zuckerberg respectfully request that the Court grant their motion and transfer this case to the Northern District of California.

| | |
|---|---|
| Dated: October 8, 2021 | *s/ Maria J. Beguiristain* |
| | Maria J. Beguiristain |
| | Florida Bar No. 69851 |
| | W. Dylan Fay |
| | Florida Bar No. 125673 |
| | WHITE & CASE, LLP |
| | 200 South Biscayne Boulevard |
| | Suite 4900 |
| | Miami, Florida 33131 |
| | Telephone: (305) 371-2700 |
| | Facsimile: (305) 358-5744 |
| | Email: mbeguiristain@whitecase.com |
| | Email: wfay@whitecase.com |
| | |
| | Craig S. Primis, P.C. (admitted *pro hac vice*) |
| | K. Winn Allen, P.C. (admitted *pro hac vice*) |
| | Ronald K. Anguas, Jr. (admitted *pro hac vice*) |
| | Kate H. Epstein (admitted *pro hac vice*) |
| | James Y. Xi (admitted *pro hac vice*) |
| | KIRKLAND & ELLIS, LLP |
| | 1301 Pennsylvania Avenue, N.W. |
| | Washington, D.C. 20004 |
| | Telephone: (202) 389-5000 |
| | Facsimile: (202) 389-5200 |
| | craig.primis@kirkland.com |
| | winn.allen@kirkland.com |
| | ronald.anguas@kirkland.com |
| | kate.epstein@kirkland.com |
| | james.xi@kirkland.com |
| | |
| | *Attorneys for Defendants Facebook, Inc.* |
| | *and Mark Zuckerberg* |

## CERTIFICATE OF SERVICE

I CERTIFY that, on October 8, 2021, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system and that the foregoing document will be served on all counsel of record via transmission of a notice of electronic filing generated by the CM/ECF system.

*s/ Maria J. Beguiristain*
Maria J. Beguiristain