1  PATRICK J. CAROME (*pro hac vice*)
   patrick.carome@wilmerhale.com
2  ARI HOLTZBLATT (*pro hac vice*)
   ari.holtzblatt@wilmerhale.com
3  WILMER CUTLER PICKERING
4     HALE AND DORR LLP
   1875 Pennsylvania Avenue, NW
5  Washington, D.C. 20006
   Telephone:  (202) 663-6000
6  Facsimile:  (202) 663-6363

FELICIA H. ELLSWORTH (*pro hac vice*)
felicia.ellsworth@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile:  (617) 526-5000

7  THOMAS G. SPRANKLING
8  CA Bar No. 294831
   thomas.sprankling@wilmerhale.com
9  WILMER CUTLER PICKERING
      HALE AND DORR LLP
10 2600 El Camino Real, Suite 400
   Palo Alto, CA 94306
11 Telephone: (650) 858-6062
12 Facsimile:  (650) 858-6100

13 *Attorneys for Defendants Twitter, Inc.
     and Jack Dorsey*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DONALD J. TRUMP, et al., | Case No. 21-cv-08378-JD |
| Plaintiffs, | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** |
| v. | Hearing Date: February 24, 2022 |
| TWITTER, INC., et al., | Courtroom: 11, 19th Floor |
| Defendants. | Time: 10:00 a.m. |
| | Judge: Hon. James Donato |

# **TABLE OF CONTENTS**

Page(s)

I. Plaintiffs' First Amendment Claim Fails Because They Have Not Plausibly Pleaded That Twitter's Editorial Decisions Constituted State Action ................................................................. 1

    A. Plaintiffs Have Not Plausibly Alleged That The Government Coerced Twitter To Make The Challenged Editorial Decisions ........................................................................ 1

    B. Section 230 Did Not Transform Defendants' Private Conduct Into State Action ................... 4

    C. The Complaint Fails To Plausibly Allege State Action Based On Supposed Joint Action ................................................................................................................................. 5

II. Plaintiffs Cannot Obtain A Declaration That Section 230 Is Unconstitutional .............................. 6

    A. Plaintiffs' Challenge To Section 230 Is Procedurally Barred ........................................ 6

    B. Plaintiffs' Section 230 Challenge Is Meritless ............................................................... 7

III. The Complaint Fails To State A FDUTPA Claim ........................................................................ 7

IV. Plaintiffs' Claim Under Florida SB 7072 Fails Because That Law Was Not In Effect When The Challenged Content Moderation Occurred (Count IV) .................................................. 9

V. All Of Plaintiffs' Claims Are Barred By The First Amendment ..................................................... 9

CONCLUSION ................................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Ahern v. Apple Inc.*, 411 F. Supp. 3d 541 (N.D. Cal. 2019)..................................................................8

*American Family Ass'n, Inc. v. City of San Francisco*, 277 F.3d 1114 (9th Cir. 2002).......................2

*American Orient Express Railway v. STB*, 484 F.3d 554 (D.C. Cir. 2007) .......................................10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).............................................................................................. 1, 9

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963)......................................................................... 1, 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................................1

*Blum v. Yaretsky*, 457 U.S. 991 (1982)................................................................................................3

*California v. FCC*, 905 F.2d 1217 (9th Cir. 1990).............................................................................10

*Caribbean Cruise Line, Inc. v. Better Business Bureau of Palm Beach County, Inc.*, 169 So. 3d 164
   (Fla. Dist. Ct. App. 2015) ................................................................................................................9

*Carlin Communications, Inc. v. Mountain States Telephone & Telegraph Co.*, 827 F.2d 1291 (9th
   Cir. 1987) .........................................................................................................................................1

*Children's Health Defense v. Facebook Inc.*, 2021 WL 2662064 (N.D. Cal. June 29, 2021) ............... 1, 3, 5, 6

*Daniels v. Alphabet Inc.*, 2021 WL 1222166 (N.D. Cal. Mar. 31, 2021) .......................................... 1, 3

*Divino Group LLC v. Google LLC*, 2021 WL 51715 (N.D. Cal. Jan. 6, 2021)....................................5

*Doe v. Google LLC*, 2021 WL 4864418 (N.D. Cal. Oct. 19, 2021) ................................................. 1, 3

*Erotic Service Provider Legal Education & Research Project v. Gascon*, 880 F.3d 450 (9th Cir.),
   *amended*, 881 F.3d 792 (9th Cir. 2018).........................................................................................7

*FCC v. Midwest Video Corp.*, 440 U.S. 689 (1979) ..........................................................................10

*Hammerhead Enterprises, Inc. v. Brezenoff*, 707 F.2d 33 (2d Cir. 1983) ............................................2

*Heineke v. Santa Clara University*, 965 F.3d 1009 (9th Cir. 2020) .....................................................3

*Lombard v. Louisiana*, 373 U.S. 267 (1963)................................................................................... 1, 4

*Mathis v. Pacific Gas & Electric Co.*, 891 F.2d 1429 (9th Cir. 1989) ..................................................3

*NetChoice, LLC v. Paxton*, 2021 WL 5755120 (W.D. Tex. Dec. 1, 2021)........................................10

*O'Handley v. Padilla*, 2022 WL 93625 (N.D. Cal. Jan. 10, 2022)............................................... 6, 10

*Palomino v. Facebook, Inc.*, 2017 WL 76901 (N.D. Cal. Jan. 9, 2017) ......................................................... 8

*Peterson v. City of Greenville*, 373 U.S. 244 (1963) ............................................................................. 4

*Railway Employees' Dep't v. Hanson*, 351 U.S. 225 (1956) .................................................................. 5

*Reitman v. Mulkey*, 387 U.S. 369 (1967) ............................................................................................. 5

*Roberts v. AT&T Mobility LLC*, 877 F.3d 833 (9th Cir. 2017) ............................................................. 5

*Robinson v. Florida*, 378 U.S. 153 (1964) ....................................................................................... 3, 4

*Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101 (N.D. Cal. 2016) ................................................. 8

*Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602 (1989) ...................................................... 5

*Sutton v. Providence St. Joseph Medical Center*, 192 F.3d 826 (9th Cir. 1999) .................................... 4

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021) ......................................................................... 9

*United States v. Ross*, 32 F.3d 1411 (9th Cir. 1994) .......................................................................... 3

*Washington Mutual Bank, FA v. Superior Court*, 24 Cal. 4th 906 (2001) ............................................ 8

*Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043 (N.D. Cal. 2018) .................................................... 8

*Zhou v. Breed*, 2022 WL 135815 (9th Cir. Jan. 14, 2022) ................................................................... 2

*Zieper v. Metzinger*, 474 F.3d 60 (2d Cir. 2007) ................................................................................. 2

**RULES**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 1, 7

I. **PLAINTIFFS' FIRST AMENDMENT CLAIM FAILS BECAUSE THEY HAVE NOT PLAUSIBLY PLEADED THAT TWITTER'S EDITORIAL DECISIONS CONSTITUTED STATE ACTION**

    **A. Plaintiffs Have Not Plausibly Alleged That The Government Coerced Twitter To Make The Challenged Editorial Decisions**

Plaintiffs' theory of coercion rests on isolated statements by individual congressmembers supporting Section 230 reform or criticizing social media platforms' moderation practices. As Twitter explained, these statements were not threats. They did not tie any real prospect of amending Section 230 to the challenged content moderation decisions and certainly do not establish the "something more" required to sue a private party for a constitutional violation. *See* Mot. to Dismiss 7-9 ("Mot."); Opp. to Prelim. Inj. Mot. 15-19 ("PI Opp."). Plaintiffs cannot overcome those fundamental defects. Indeed, the precedents on which Plaintiffs primarily rely—three Jim Crow-era cases overturning criminal convictions carried out by the state—are so off-base that they only highlight the weakness of Plaintiffs' claims.[1]

**Coercion**. Statements by individual legislators are not coercive, as multiple courts here and elsewhere have held. *See* Mot. 7-8; PI Opp. 15-16. Plaintiffs do not argue those holdings were wrong or offer any reason for this Court to depart from them. That alone dooms Plaintiffs' claims. "Informal conduct" by "[i]ndividual [o]fficials" (Opp. 8-9, 16-17) can be coercive only where the official had power to impose consequences. The cases Plaintiffs cite only confirm this uncontroversial proposition. In *Lombard*, the mayor announced he had "directed the superintendent of police that no additional sit-in demonstrations … will be permitted" and the superintendent of police declared the "police department is prepared to take prompt and effective action." *Lombard v. Louisiana*, 373 U.S. 267, 270-271 & n.2 (1963). Likewise, in *Carlin*, a prosecutor with the power to bring criminal charges against a utility company advised it to terminate an adult-message service. *See Carlin Commc'ns, Inc. v. Mountain States Tel. & Tel. Co.*, 827 F.2d 1291, 1295 (9th Cir. 1987). So too in *Bantam Books*: a public commission with power to recommend prosecution threatened that "[t]he Attorney General will act for [the Commission] in case of non-compliance." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 63 (1963). In contrast, individual legislators,

---

[1] Plaintiffs' assertion that the *Iqbal-Twombly* plausibility standard does not apply here, Opp. 6 n.7, 13 n.12, 21, is patently frivolous, and does not excuse their obligation to plausibly plead state action, *id.* at 2, 13-14. Under the law of this Circuit, that standard applies to every Rule 12(b)(6) motion. And several courts in this District have dismissed, under that Rule and standard, complaints with allegations of supposed state action nearly identical to those asserted in Plaintiffs' Complaint. *See, e.g.*, *CHD v. Facebook Inc.*, 2021 WL 2662064; *Doe v. Google LLC*, 2021 WL 4864418; *Daniels v. Alphabet Inc.*, 2021 WL 1222166.

however powerful, cannot single-handedly amend or repeal Section 230, *see* Mot. 7-8—and that is the only potential adverse consequence to Twitter that Plaintiffs' Opposition even mentions, *see* Opp. 4.[2]

Nor can Plaintiffs overcome their failure to allege any statement threatening government sanction unless Twitter changed its moderation practices. The statements cited in the Complaint merely called for Twitter (and other platforms) to remove more misinformation and Mr. Trump's account. Such statements are insufficient to establish coercion because they did not threaten government sanction. *See Zhou v. Breed*, 2022 WL 135815, at *1 (9th Cir. Jan. 14, 2022) ("The mere fact that … public officials criticized a billboard or called for its removal, without coercion or threat of government sanction, does not make that billboard's subsequent removal by a private party state action."); *see also* Mot. 8; PI Opp. 16. In response, Plaintiffs argue that *implied* threats can establish state action. Opp. 13-15 (citing *Bantam Books*, 372 U.S. 58; *Hammerhead Enters., Inc. v. Brezenoff*, 707 F.2d 33 (2d Cir. 1983); *Zieper v. Metzinger*, 474 F.3d 60 (2d Cir. 2007)). They are wrong. Their cases all involved private parties asserting claims against only *government actors*—and thus have no bearing on the issue here: when can private actors allegedly threatened by government officials be sued under the state action doctrine. *See infra* 4. Moreover, *Bantam Books* and *Zieper* involved threats tied to particular demands, which are absent here. *Bantam Books*, 372 U.S. at 61-62 (notifications urging distributor to stop distributing specific books included reminder of commission's duty to recommend cases to Attorney General); *Zieper*, 474 F.3d at 66-67 (FBI agent and police officers asked plaintiff to remove particular video from the Internet). This case is more like *Hammerhead*, where the court held that "simply urging [plaintiffs] not to carry [a] controversial product" and "refer[ring] to no adverse consequences" did *not* give rise to a First Amendment claim. 707 F.2d at 35, 39; *Am. Fam. Ass'n, Inc. v. City of S.F.*, 277 F.3d 1114, 1125 (9th Cir. 2002) (no First Amendment claim where official's letters "encouraged but did not threaten or intimidate landowner to terminate lease with billboard owner").[3]

Plaintiffs also point to a few statements by Executive officials. *See* Opp. 5, 15. But, like the alleged

---

[2] For the same reason, it is irrelevant whether members of Congress spoke "under color of law" (Opp. 15-16); their statements were not capable of threatening any legal consequence.

[3] Plaintiffs improperly submitted supplemental materials with their Opposition to attempt to resuscitate their claims, but those materials do not help Plaintiffs. These are mainly statements by individual lawmakers indicating that they may pursue unspecific legislation at some undefined time if social media companies do not address "misinformation" and "extremism." Opp. 4. These statements do not raise a plausible inference of coercion for the same reason Plaintiffs' Complaint does not.

| DEFENDANTS' REPLY ISO MOTION TO DISMISS | 2 | Case No. 21-cv-08378-JD |

statements by legislators, none included a threat. And virtually all the statements post-date the content-moderation decisions at issue and so definitionally could not have played any role in Defendants' decisions, *see* Mot. 11; PI Opp. 23-24, an inconvenient fact Plaintiffs do not even attempt to address.

**Specificity.** Plaintiffs' coercion theory for Plaintiffs other than Mr. Trump fails for the additional reason that none of the alleged statements—which called on social media platforms to moderate amorphous categories of information—can be construed as demanding the removal of *their* content. *See* Mot. 8-9; PI Opp. 16-17. Plaintiffs try to circumvent this problem by mischaracterizing *Blum* and *Heineke*. But contrary to what Plaintiffs contend (Opp. 10), those cases did not hold that any government demand more specific than a law of general applicability transforms private conduct into state action. Rather, they held that the government must have "commanded a particular result in, or otherwise participated in, [a] specific case." *Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1014 (9th Cir. 2020); *see also Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (requiring a "sufficiently close nexus between the State and the challenged action"). Thus, regardless of whether the government has "target[ed] … specific individuals by name," Opp. 10, the government must have at least mandated the particular challenged conduct. That is the rule other courts in this District have applied in dismissing similar claims. *See CHD*, 2021 WL 2662064; *Doe*, 2021 WL 4864418; *Daniels*, 2021 WL 1222166. And it requires dismissal here too.[4]

Plaintiffs erroneously analogize this case to a trio of Jim Crow-era cases in which the Supreme Court overturned criminal trespass convictions of protesters who conducted "sit-ins" at, and refused to leave, segregated restaurants. *See* Opp. 9-11. Plaintiffs theorize that those cases show that private conduct can become state action—with private actors subjected to liability for violating the U.S. Constitution—when government coercion calls for adverse treatment of a large group of people rather than particular individuals. *Id.* But those cases bear no resemblance to this one, both because the core conduct that was challenged—"arrest[s], prosecution[s], and conviction[s] by the State" under state or local laws, *Robinson v. Florida*, 378 U.S. 153, 154 (1964)—was obviously state action, and because the question of holding a private actor liable for government action never even came up, as no private actor was sued, *see id.*;

---

[4] Likewise, in *Mathis*, the Ninth Circuit held that there could be state action only if the government's rule left "no deference … to decisionmaking by qualified professionals." *Mathis v. Pac. Gas & Elec. Co.*, 891 F.2d 1429, 1434 (9th Cir. 1989); *see also United States v. Ross*, 32 F.3d 1411, 1413-14 (9th Cir. 1994) (searches conducted by airlines under government guidelines that left airlines no discretion were state action).

*Lombard*, 373 U.S. 267; *Peterson v. City of Greenville*, 373 U.S. 244 (1963). And, in any event, the government coercion in those cases mandated the arrests of the particular individuals whose constitutional rights were violated, just as *Blum* and *Heineke* require. In *Peterson*, the arrests resulted from a law prohibiting desegregated restaurants, *id.* at 247-248, and in *Robinson* from regulations imposing uniquely onerous requirements on desegregated restaurants, 378 U.S. at 156. In *Lombard*, the arrests resulted from top city officials' announced policy that all sit-in participants would be arrested. 373 U.S. at 270-271. Thus, in each case, the government had made clear that if a restaurant served any African American patron, legal penalty would follow. In contrast, because the group that was allegedly targeted in the present case is so ill-defined—variously described as a group "defined by political viewpoint," "those who echoed [Mr. Trump's] views," and "speakers who publicly supported President Trump's views on election fraud or the COVID-19 pandemic," Opp. 9-11—Plaintiffs have not plausibly alleged any threat that Defendants would be penalized for failing to remove their particular content.

**Private Defendant.** Finally, Plaintiffs have not alleged the "'something more' than state compulsion" that a plaintiff must show "to hold a private defendant liable" on a coercion theory. *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 838 (9th Cir. 1999); *see* Mot. 9. They argue (Opp. 17) that government compulsion itself can be that "something more," but that is directly contrary to *Sutton*, which clearly held that "in a case involving a private defendant, the mere fact that the government compelled a result does not" establish state action. 192 F.3d at 838. And for good reason. When the government compels a private party to act, that party generally "is 'left with no choice of [its] own' and consequently should not be deemed liable." *Id.*

**B. Section 230 Did Not Transform Defendants' Private Conduct Into State Action**

Numerous courts in this District have squarely rejected Plaintiffs' theory that Section 230 converts a private platform's content-moderation decisions into the official action of the state, explaining that Section 230 does not require private parties to do anything and so is not coercive. *See* Mot. 9-10, 13-14.

Plaintiffs argue those courts were wrong because Section 230 creates state action by "enabling" discriminatory conduct. *See* Opp. 17, 18-19, 20. That is triply wrong. *First*, Plaintiffs have not shown that Twitter would be liable under any state law for removing their particular content if not for Section 230. Plaintiffs' state law claims fail of their own accord. *Second*, preemption alone does not suffice to transform

private action into state action, as the Ninth Circuit explained in *Roberts v. AT&T Mobility LLC*, which rejected a similar argument about the Federal Arbitration Act. *See* 877 F.3d 833, 844-845 (9th Cir. 2017) ("mere approval of private action" is not enough); *see also* PI Opp. 19-21.  Plaintiffs fail even to cite *Roberts*—let alone explain how to reconcile its holding with their position.  And the cases they do cite do not suggest private action becomes state action whenever federal law preempts a state law that would have required a private actor to behave differently.  *Reitman v. Mulkey* invalidated a state law repealing a prohibition of private discrimination because the law's "design and intent" was to promote unconstitutional discrimination.  387 U.S. 369, 374 (1967).  Similarly, as explained (PI Opp. 19-21), *Skinner v. Railway Labor Executives' Ass'n* held the government "did more than adopt a passive position toward the underlying private conduct" because it had expressed a "strong preference" for the conduct and arranged to benefit from it.  489 U.S. 602, 615 (1989); *see also CHD*, 2021 WL 2662064, at *13-14 (distinguishing *Skinner*); *Divino Grp. LLC v. Google LLC*, 2021 WL 51715, at *6 (N.D. Cal.) (same).[5]  In contrast, Section 230 expresses no preference either way, providing protection to platforms whether they host or block content.  *Third*, Twitter's right to exercise editorial judgment free from government interference derives foremost from the First Amendment, and thus exists regardless of Section 230.  *See* Mot. 20; *infra* 9-10.

Plaintiffs' assertion that state action is always "present" when the state allocates property rights (Opp. 19-20) only confuses the issue.   Of course the enactment of a federal statute is "state action," but that does not transform into state action the actions of private parties who are subject to the statute. Moreover, Section 230 does not "reallocate" rights "as to allow" Twitter to moderate its platform "without fear of legal repercussions," Opp. 20, because Twitter's Terms of Service and the First Amendment independently give it the right to remove content based on its own judgments, *see infra* 8-10.

**C.  The Complaint Fails To Plausibly Allege State Action Based On Supposed Joint Action**

Plaintiffs' opposition appears to concede, by its silence, that they do not and cannot allege joint state action based on a theory of "substantial coordination."  *See* Mot. 10-11.  Instead, they argue only that the Complaint establishes joint action through conspiracy.  Opp. 21.  They erroneously contend that the

---

[5] In *Railway Employees' Dep't v. Hanson*, the Court did not hold that private action taken pursuant to a statute preempting state law was state conduct.  The plaintiffs in *Hanson* argued that the statute *itself* was unconstitutional, and the Court upheld the statute.  *See* 351 U.S. 225, 238 (1956); PI Opp. 21.

test for this is satisfied by an agreement or understanding "to accomplish a common objective" (Opp. 20), but do not cite any case supporting that proposition. In fact, the governing test requires a shared motive to violate the plaintiff's constitutional rights, as Defendants explained. *See* PI Opp. 24.

Also a failure is Plaintiffs' effort to establish conspiracy with belatedly filed material. *See* Opp. 15 (quoting Request for Judicial Notice). Plaintiffs get no traction from the testimony in which Mr. Dorsey said that Twitter had "'partnered' with [the] federal government to 'share information' and 'gather input' to 'inform [Twitter's] policy and enforcement decisions.'" Opp. 15. *First*, they selectively quote the testimony, omitting Mr. Dorsey's statement that "Twitter *does not coordinate* with other entities when making content moderation decisions." Ex. A, Dkt. 145-3 (emphasis added). Read in its entirety, the testimony confirms that Plaintiffs' conspiracy theory is entirely implausible.[6] *Second*, even selectively quoted, Mr. Dorsey's statement simply shows that there was sharing of information between Twitter and other external actors, and that such sharing included (but was not limited to) federal government officials. Neither information sharing nor relying on government information is sufficient to demonstrate conspiracy. *See O'Handley v. Padilla*, 2022 WL 93625, at *9 (N.D. Cal. Jan. 10, 2022); *CHD*, 2021 WL 2662064, at *12.

Similarly unavailing is Plaintiffs' attempt to establish conspiracy based on a memo—apparently written by Congressional staffers—that Plaintiffs falsely portray as having stated that "platforms often ramp up their efforts against [conservative] content in response to social and political pressure." Opp. 4-5 (bracketed alteration by Plaintiffs). In fact, the memo refers not to "conservative" content, but to "misinformation and extremist content." Ex. E, Dkt. 145-7. But even if Plaintiffs' portrayal were accurate, the memo gets them nowhere. This kind of statement evinces, at most, a shared goal (here, to prevent the spread of misinformation), and that is not enough to establish state action. *See* PI Opp. 24.

## II. PLAINTIFFS CANNOT OBTAIN A DECLARATION THAT SECTION 230 IS UNCONSTITUTIONAL

### A. Plaintiffs' Challenge To Section 230 Is Procedurally Barred

Plaintiffs do not respond to Twitter's arguments that they have no right to challenge a federal statute in a case against private individuals where that statute has not been invoked, *see* Mot. 12; PI Opp. 26, and that the Declaratory Judgment Act does not confer jurisdiction over anticipatory claims purporting

---

[6] Even the chronology Plaintiffs paint is inaccurate. They imply that the information exchanges mentioned in Mr. Dorsey's testimony were prompted by certain statements from legislators (Opp. 4), but their own exhibits reveal that most of those statements were made *after* his testimony. Exs. C-F, Dkt. 145-5 to -8.

1   to challenge an affirmative defense, *see* Mot. 13.

2   The arguments they do advance regarding their supposed standing to attack Section 230 are
3   meritless. Plaintiffs argue that Section 230 harms them because the government "wield[ed]" the possibility
4   of repeal as a "cudgel" to compel Twitter to remove their speech from its platform. Opp. 21, 22. Even
5   if plausibly alleged, such a theory would posit harm from the government actors' threats, not Section 230,
6   and so would, at most, establish standing to challenge only the former. Plaintiffs also suggest that Section
7   230's *existence* harms them because it somehow "enabled" the content moderation decisions that Plaintiffs
8   challenge. Opp. 21, 22. But as explained (Mot. 12-13; *infra* 8-9), Twitter acted here pursuant to its explicit
9   reservation of discretion to remove content for any or no reason. No state law required Twitter to act
10  differently. *See supra* 4-5; *infra* 7-9. And Twitter's right to act free from state interference derives first and
11  foremost from the First Amendment, not Section 230. *See infra* 9-10. Plaintiffs thus cannot establish that
12  Section 230 (rather than Twitter's independent editorial decisions) caused their alleged injury or that a
13  court order invalidating it would redress it. Last, as a fallback, Plaintiffs ask the Court to hold this claim
14  in abeyance. *See* Opp. 22 & n.17. But because the Court lacks Article III jurisdiction to hear this claim,
15  it has no authority to do that. The cases Plaintiffs cite on this point (*see id.*) held motions in abeyance
16  solely to allow immediate development of jurisdictional facts. No such procedure is warranted here.

17  **B.   Plaintiffs' Section 230 Challenge Is Meritless**

18  Plaintiffs' sole response to Defendants' argument that their constitutional attack on Section 230
19  fails on the merits is to assert that it "should not be adjudicated on this record." Opp. 21. They do not
20  and cannot cite any case holding that the legal question of whether a statute is constitutional is not subject
21  to a Rule 12(b)(6) motion to dismiss. Constitutional challenges to statutes—including purported "as
22  applied" challenges—can be dismissed under Rule 12(b)(6), like all other claims. *See, e.g., Erotic Serv. Provider*
23  *Legal Educ. & Research Project v. Gascon*, 880 F.3d 450, 454 (9th Cir.), *amended*, 881 F.3d 792 (9th Cir. 2018).

24  **III.   THE COMPLAINT FAILS TO STATE A FDUTPA CLAIM**

25  Plaintiffs ACU, Root, and Wolf do not dispute that they cannot state a FDUTPA claim because
26  they are not Florida residents. *See* Mot. 15. As for the other Plaintiffs, their contention (Opp. 22-23) that
27  the choice-of-law clause in Twitter's Terms of Service does not bar their FDUTPA claim is baseless.
28  Plaintiffs do not dispute that this claim falls within the scope of the clause, but instead—despite previously

conceding that California law must govern this dispute, *see* Mot. 14—argue that the clause should not be enforced because California law is at odds with Florida policy, Opp. 23. It is Plaintiffs' burden to "establish both that [California] law is contrary to a fundamental policy of [Florida] and that [Florida] has a materially greater interest in the determination of the particular case." *Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 917 (2001). Plaintiffs make no effort to establish the latter point. On the former, they offer no basis to conclude that the single purported divergence between Florida and California law they identify—that only California law requires plaintiffs to establish financial injury (Opp. 22-23)—offends "a fundamental policy" of Florida. Indeed, courts in this District have held that "[d]ifferences in the particulars of the consumer statutes are not enough" because they "do not represent a fundamentally different policy." *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1056 (N.D. Cal. 2018). "Courts should not 'refrain from applying the chosen law merely because this would lead to a different result than would be obtained under'" the other state's law. *Palomino v. Facebook, Inc.*, 2017 WL 76901, at *4 (N.D. Cal. Jan. 9, 2017). Thus, courts have enforced choice-of-law provisions to apply California consumer protection laws in cases like this one, where California's law offered fewer protections than another state's law. *See Williams*, 384 F. Supp. 3d at 1056 (New York law had "unique remedy" "which California consumer law lacks"); *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1112 (N.D. Cal. 2016) (Massachusetts law, unlike California law, did not require a consumer to show reliance).[7]

On the merits, Plaintiffs stand only on their theory that Twitter failed to disclose that it removes content based on "political favoritism." Opp. 23 & n.19. To the extent Plaintiffs are contending that Twitter removes content based on Twitter's political views, this theory fails because the Complaint pleads no facts to support it. If Plaintiffs instead are arguing that Twitter did not disclose that it removes content at the government's request, they have failed to allege any deception because the Complaint does not plausibly allege that Twitter ever acted in that manner. *See* Mot. 7-11; *supra* 1-6. But even if Plaintiffs had plausibly alleged that Twitter blocks politically disfavored views, their theory would still fail. As Plaintiffs

---

[7] Another nonstarter is Plaintiffs' suggestion (Opp. 23 n.18) that their FDUTPA claim should be treated as if it were asserted under the California UCL. They cite no published authority permitting such transformation and err in saying that Defendants have "concede[d] that Plaintiffs have standing under the UCL." *Id.* In any event, Plaintiffs' claim would fail as a UCL claim because they have not plausibly alleged any deceptive omission "contrary to a representation actually made" by Twitter or that Twitter had a duty to disclose. *See Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 567 (N.D. Cal. 2019); *infra* 8-9.

do not dispute, Twitter publicly states, clearly and directly, that it may take enforcement action against accounts or content for any reason or no reason at all. *See* Mot. 15-16. As a result, no reasonable consumer would think that Twitter mechanically applies its stated standards and Plaintiffs cannot establish a FDUTPA claim based on any expectation to the contrary. *See* Mot. 15; Opp. 23. Plaintiffs' sole case did not hold otherwise. It involved an allegation that the defendant publicly claimed to grade businesses based exclusively on sixteen objective criteria, but actually issued grades based on whether a business had paid a fee to be "accredited" by the defendant. *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cnty., Inc.*, 169 So. 3d 164, 167 (Fla. Dist. Ct. App. 2015). And that court did not even address whether a FDUTPA claim had been stated because it resolved the appeal on other grounds. *See id.* at 167-170.

### IV.   PLAINTIFFS' CLAIM UNDER FLORIDA SB 7072 FAILS BECAUSE THAT LAW WAS NOT IN EFFECT WHEN THE CHALLENGED CONTENT MODERATION OCCURRED (COUNT IV)

While the Court need not reach the question, Plaintiffs' only response to Defendants' showing that SB 7072 violates the First Amendment (Mot. 18) is that the decision enjoining SB 7072 on that basis "is directed only to government actors." Opp. 24 n.20. But that fact is irrelevant to the decision's substantive holding that the statute is unconstitutional. And even if SB 7072 were constitutional, Plaintiffs do not dispute that it cannot be applied retroactively to Twitter's editorial decisions regarding their accounts. *See* Mot. 18-19. Instead, they seem to say that their SB 7072 claim challenges only actions Twitter has taken against *other* accountholders after the law took effect. Opp. 24. But that position is untenable for two reasons. *First*, Plaintiffs lack standing to bring a claim based on content-moderation decisions that did not injure them in any "concrete and particularized" way. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). *Second*, Plaintiffs have not plausibly alleged inconsistent application of Twitter's standards after SB 7072's enactment on July 1, 2021. The Complaint's sole allegations about application of Twitter's standards after enactment are that "Defendants have engaged in this activity since July 1, 2021" and that "Defendants have, since July 1, 2021, failed to apply their standards in a consistent manner." Compl. ¶¶ 226, 229. Such conclusory allegations are insufficient to survive a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### V.   ALL OF PLAINTIFFS' CLAIMS ARE BARRED BY THE FIRST AMENDMENT

Plaintiffs' assertion that the First Amendment does not protect Twitter's content-moderation

decisions defies both common sense and precedent. They baldly assert, without any authority, that Twitter can be compelled to publish speech against its will because the sheer "volume" of Tweets prevents it from "curat[ing] [an] institutional message" like a newspaper does. Opp. 25; *see* PI Reply 9-10. But as a court in this District recently held, "Twitter's decisions to include, exclude, or label a tweet on a site that is entirely a 'discussion of issues' are expressive." *O'Handley*, 2022 WL 93625, at *14. "This is because a platform's decision to publish or not publish particular tweets says something about what that platform represents." *Id.* at *15; *see also NetChoice, LLC v. Paxton*, 2021 WL 5755120, at *8 (W.D. Tex. 2021). For this reason, courts consistently recognize that Twitter and other online platforms' content-moderation decisions enjoy robust First Amendment protections. *See* Mot. 19 (collecting cases). These protections bar any order that would compel Twitter to publish Tweets from Plaintiffs or anyone else. *See* Mot. 20.

Plaintiffs erroneously suggest that a decision applying FDUTPA to mandate that Twitter enforce its *own* Terms of Service in a certain way would not violate the First Amendment. Opp. 25. But any order attempting to determine what content violates Twitter's moderation policies would impermissibly entangle the Court in viewpoint-based assessments of speech and interfere with Twitter's own editorial judgments and expression. *See* Mot. 19-20. In other words, "Twitter has important First Amendment rights that would be jeopardized by a Court order telling Twitter what content-moderation policies to adopt and how to enforce those policies." *O'Handley*, 2022 WL 93625, at *15.

Finally, Plaintiffs assert that Twitter lacks First Amendment protection based on the plainly erroneous proposition that Twitter is a common carrier. *See* PI Reply 11-13. To be a common carrier, a company must "serve the public indiscriminately.'" *Am. Orient Express Ry. v. STB*, 484 F.3d 554, 557 (D.C. Cir. 2007); *accord FCC v. Midwest Video Corp.*, 440 U.S. 689, 701 (1979). A company "'will not be a common carrier where its practice is to make individualized decisions, in particular cases, on whether and on what terms to deal.'" *California v. FCC*, 905 F.2d 1217, 1240 n.32 (9th Cir. 1990). That is exactly what Twitter does; it establishes standards that speakers must accept and follow as conditions of access and enforces them through individualized decisions about what content to host or remove. *See* Mot. 2-3. This is the opposite of a common carrier's indifferent provision of service to all comers.

## CONCLUSION

For the reasons stated, the Court should dismiss Plaintiffs' Amended Complaint with prejudice.

Dated: January 24, 2022

Respectfully submitted,

/s/ *Patrick J. Carome*

PATRICK J. CAROME (*pro hac vice*)
patrick.carome@wilmerhale.com
ARI HOLTZBLATT (*pro hac vice*)
ari.holtzblatt@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

FELICIA H. ELLSWORTH (*pro hac vice*)
felicia.ellsworth@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-6000

THOMAS G. SPRANKLING
CA Bar No. 294831
thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6062
Facsimile: (650) 858-6100

*Attorneys for Defendants Twitter, Inc.
  and Jack Dorsey*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2022, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of these filings to all registered counsel.

Dated:   January 24, 2022                    By:   /s/ *Patrick J. Carome*
                                                   PATRICK J. CAROME

DEFENDANTS' REPLY ISO
MOTION TO DISMISS

Case No. 21-cv-08378-JD