# EXHIBIT 1

| | |
|---|---|
| JOHN P. COALE (pro hac vice)<br>2901 Fessenden Street, NW<br>Washington, D.C. 20008<br>Telephone: (202) 255-2096<br>Email: johnpcoale@aol.com<br><br>JOHN Q. KELLY (pro hac vice)<br>MICHAEL J. JONES (pro hac vice)<br>RYAN TOUGIAS (pro hac vice)<br>IVEY, BARNUM & O'MARA, LLC<br>170 Mason Street<br>Greenwich, CT 06830<br>Telephone: (203) 661-6000<br>Email: jqkelly@ibolaw.com<br><br>FRANK C. DUDENHEFER, JR.<br> (pro hac vice)<br>THE DUDENHEFER LAW FIRM L.L.C.<br>2721 Saint Charles Avenue, Suite 2A<br>New Orleans, LA 70130<br>Telephone: (504) 616-5226<br>Email: fcdlaw@aol.com | ANDREI POPOVICI (234820)<br>MARIE FIALA (79676)<br>LAW OFFICE OF ANDREI D. POPOVICI, P.C.<br>2121 North California Blvd. #290<br>Walnut Creek, CA 94596<br>Telephone: (650) 530-9989<br>Facsimile: (650) 530-9990<br>Email: andrei@apatent.com<br>Email: marie@apatent.com<br><br>RICHARD POLK LAWSON (pro hac vice)<br>GARDNER BREWER HUDSON, P.A.<br>400 North Ashley Drive<br>Suite 1100<br>Tampa, FL 33602<br>Telephone: (813) 221-9600<br>Facsimile: (813) 221-9611<br>Email: rlawson@gbmmlaw.com |

Counsel for Plaintiffs

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| DONALD J. TRUMP, *et al.*<br><br>            Plaintiffs,<br><br>     v.<br><br>TWITTER., *et al.*<br><br>            Defendants. | Case No: 3:21-cv-8378-JD<br><br>**PLAINTIFF DONALD J. TRUMP'S RESPONSE IN OPPOSITION TO THE MOTION AND MEMORANDUM OF LAW BY INTERVENOR UNITED STATES OF AMERICA IN SUPPORT OF THE CONSTITUTIONALITY OF 47 U.S.C. § 230(c)**<br><br>Hon. James Donato |

**TABLE OF CONTENTS**

1. INTRODUCTION ........................................................................................................................ 1

2. ARGUMENT ............................................................................................................................... 1

   A. Section 230 Does Not Immunize Unfair Discrimination. ................................................. 1

   B. The Canon of Constitutional Avoidance Applies Under Plaintiff's Construction of Section 230, or the Statute Is Unconstitutional As Applied. ................................................................ 3

      1. Section 230's Policy and Purpose Subsections Suggest That Section 230 Does Not Apply to Political Speech. ............................................................................................................. 3

      2. Section 230's Constitutional Intent Is Ambiguous, Unlike Ordinary Statutes That Follow Their Textual Mandate. ..................................................................................................... 4

   C. Section 230(c) Violates the First Amendment As Applied to This Matter. ........................ 4

3. CONCLUSION ............................................................................................................................ 5

# TABLE OF AUTHORITIES

**Cases**

*Conservation Force v. Delta Air Lines, Inc.* 190 F.Supp.3d 606, 10 (N.D. Tex. 2016) .................. 3

*Denver Area Educ. Telecomms. Consortium, Inc. v. F.C.C.*, 518 U.S. 727 (1996) ..................... 1, 5

*FTC v. AT&T Mobility, LLC*, 883 F.3d 848 (9th Cir. 2017) ............................................................ 2

*Malwarebytes, Inc. v. Enigma Software Grp.,* 141 S. Ct. 13 (2020) .............................................. 4

*Packingham v. North Carolina*, 137 S. Ct. 1730 (2017) ................................................................. 2

*U.S. Telecom Ass'n v. FCC* 825 F.3d 674 (D.C. Cir. 2016) ............................................................ 2

**Statutes**

47 U.S.C. § 230 ........................................................................................................................ passim

47 U.S.C. § 414 ................................................................................................................................ 1

47 U.S.C. § 531 note ........................................................................................................................ 1

47 U.S.C. §§ 151 *et seq.* .................................................................................................................. 1

**Treatises**

*Bargaining for Free Speech: Common Carriage, Network Neutrality, and Section 230*, 22 Yale J. L. & Tech. 391, 398-403 (2020) ............................................................................................... 2

Burdick, The Origin of the Peculiar Duties of Public Service Companies, Pt. 1, 11 Colum. L. Rev. 514 (1911) ................................................................................................................................... 2

Plaintiff Donald J. Trump herewith respectfully submits his Response in Opposition to the United States' Motion to Intervene under FRCP Rule 5.1 ("U.S. Mot.").

### 1. INTRODUCTION

Defendants engaged in conduct that amounted to violations of the First Amendment; therefore, they cannot claim immunity under Section 230. If Section 230 were applied to Plaintiff in this case, then its application would be unconstitutional due to Plaintiff's rights under common law. The Federal Communications Act, 47 U.S.C. §§ 151 *et seq.*, states that nothing within its provisions alters common law rights. 47 U.S.C. § 414. Defendants may also be viewed as common carriers when they solicit and host third-party content. Therefore, any application of Section 230 to protect acts of arbitrary discrimination by Defendants would be unconstitutional as applied.

Addressing the U.S.'s first argument, referred to as the "doctrine of constitutional avoidance," the Court should decide the statutory construction and application arguments presented by the parties. As the U.S. states, this Court could avoid the constitutional issue by ruling that "Section 230(c) does not apply to the claims alleged by Plaintiff here." (U.S. Mot. at 1).

The U.S.'s second argument is that Section 230 is merely permissive and "establishes a content- and viewpoint-neutral rule," concluding that "the immunity provided by Section 230(c) to Twitter does not violate the First Amendment." (U.S. Mot. at 2, 11). The U.S.'s analysis here is manifestly incorrect as to how the law would be applied, especially because Defendants are bound by common law prohibitions against unfair discrimination.

In *Denver Area Educ. Telecomms. Consortium, Inc. v. F.C.C.*, 518 U.S. 727, 737, 747, 761-67 (1996), the Supreme Court established First Amendment principles to hold *unconstitutional* Section 10(c) of the Cable Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 531 note, a *permissive* federal law that allowed but did not require, private cable companies to block content on public access channels they considered "indecent" or "offensive." *Id.*, at 766-67. As explained in *Denver Area*, just because a statute is purportedly content neutral, and is permissive rather than mandatory, does not mean that it does not violate the First Amendment.

### 2. ARGUMENT

#### A. Section 230 Does Not Immunize Unfair Discrimination.

PLAINTIFFS' RESPONSE IN OPPOSITION TO THE MOTION … - 1          3:21-cv-8378-JD
AND MEMORANDUM OF LAW BY INTERVENOR UNITED STATES

Because Congress intended with the passage of Section 230 that social media platforms benefit all American citizens, Defendants cannot engage in the arbitrary discrimination it has directed at Plaintiffs. *Accord, Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017) ("A fundamental principle of the First Amendment is that *all persons have access to places* where they can speak and listen, and then, after reflection, speak and listen once more. The Court has sought to protect the right to speak in this spatial context.") (emphasis added). Section 230(a) (3), (4) (expressly), and (b) (generally), state that the Internet is for "the benefit of *all Americans*" to "offer a forum for a true diversity of political discourse" with more, not less, political speech and "intellectual activity." (emphasis added.)

In the context of hosting Plaintiff's content, Defendant Twitter more closely resembles a common carrier. Unlike newspapers, the general public posts speech and other content onto the Defendants' platform, which merely carries it—the inverse is true with newspapers. Also, Defendants do not engage in individualized decisions whether and on what terms to deal. *U.S. Telecom Ass'n v. FCC,* 825 F.3d 674, 740 (D.C. Cir. 2016). Moreover, whether a party is conveying speech or physical goods is immaterial when employing a common carrier analysis. *U.S. Telecom,* 825 F.3d at 742; *accord*, *FTC v. AT&T Mobility, LLC*, 883 F.3d 848, 860 (9th Cir. 2017). Defendant's platform provides a global platform to all comers to post/upload content, and Justice Thomas has recently highlighted the connection between Defendants and their being common carriers by looking either to their size or the activity in which they are engaged:

> "Our legal system and its British predecessor have long subjected certain businesses, known as common carriers, to special regulations, including a general requirement to serve all comers. Candeub, *Bargaining for Free Speech: Common Carriage, Network Neutrality, and Section 230*, 22 Yale J. L. & Tech. 391, 398-403 (2020) (Candeub); *see also* Burdick, The Origin of the Peculiar Duties of Public Service Companies, Pt. 1, 11 Colum. L. Rev. 514 (1911).

*Biden v. Knight First Amendment Inst. at Columbia Univ*., 141 S. Ct. 1220, 1222 (2021) ("a person who holds himself out to carry goods for everyone as a business…is a common carrier." at 1223).

Defendants' Terms of Service ("TOS") are similar to a common carrier's prohibitions on

PLAINTIFFS' RESPONSE IN OPPOSITION TO THE MOTION … - 2      3:21-cv-8378-JD
AND MEMORANDUM OF LAW BY INTERVENOR UNITED STATES

certain types of cargo. *Conservation Force v. Delta Air Lines, Inc.* 190 F.Supp.3d 606, 610 (N.D. Tex. 2016). Therefore, under most circumstances, Defendant must carry content, irrespective of any desire or external compulsion to discriminate against Plaintiff.

### B. The Canon of Constitutional Avoidance Applies Under Plaintiff's Construction of Section 230, or the Statute Is Unconstitutional As Applied.

#### 1. Section 230's Policy and Purpose Subsections Suggest That Section 230 Does Not Apply to Political Speech.

As to the U.S.'s assertion of the doctrine of constitutional avoidance, this Court could simply hold that Defendants cannot assert Section 230 as a defense to its prior restraint of Plaintiff. Moreover, the facts of this case run counter to the policy and purpose of Section 230, and therefore Section 230(c) should not apply here.

Section 230(a) states as follows:

> "(a) Findings. The Congress finds the following: […] (3) The Internet and other interactive computer services offer a forum for a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity [; and] (5) Increasingly Americans are relying on interactive media for a variety of political, educational, cultural, and entertainment services."

In addition, the Policy of the statute, as stated in Section 230(b), is controlling under a textual analysis:

> "(b) Policy. It is the policy of the United States—[…] (3) to encourage the development of technologies which maximize user control over what information is received by individuals, families, and schools who use the Internet and other interactive computer services; (4) to remove disincentives for the development and utilization of blocking and filtering technologies that empower parents to restrict their children's access to objectionable or inappropriate online material; and (5) to ensure vigorous enforcement of Federal criminal laws to deter and punish trafficking in obscenity, stalking, and harassment by means of computer."

Given its clear purpose, Section 230(a) and (b) should not be applicable where censorship of

1  political speech is at issue.  Section 230 was not intended to censor political speech; instead, it is
2  expressly designed to encourage *more*, not less, political speech: "The Internet and other interactive
3  computer services offer a forum for a true diversity of political discourse, unique opportunities for
4  cultural development, and myriad avenues for intellectual activity."  § 230 (a)(3).

### 2. Section 230's Constitutional Intent Is Ambiguous, Unlike Ordinary Statutes That Follow Their Textual Mandate.

To the extent that the U.S. argues that the doctrine of constitutional avoidance creates a presumption of constitutionality, its assertions would be incorrect.  "When Congress enacted the statute, most of today's major Internet platforms did not exist. And in the 24 years since, we have never interpreted this provision."  *Malwarebytes, Inc. v. Enigma Software Grp.,* 141 S. Ct. 13 (2020).  The Internet was in its infancy, and the Defendants' platform was non-existent in 1996 when the statute was passed.   Additionally, Justice Clarence Thomas made it clear that this statute has been abused, with courts "[a]dopting the too-common practice of reading extra immunity into statutes where it does not belong[.]."  *Id.* at 15.  Justice Thomas noted the limited effect of narrowing the Section 230 immunity: "Paring back the sweeping immunity courts have read into §230 would not necessarily render defendants liable for online misconduct.  It simply would give plaintiffs a chance to *raise their claims in the first place*." *Id*. at 18. (emphasis added).

Plaintiff agrees with the U.S. that the Court need not decide the constitutionality of Section 230 in the case at bar.  Yet if the statute is later asserted by Defendants, the Court should invalidate it.  Section 230 is designed to foster "a true diversity of political discourse, unique opportunities for cultural development, and myriad avenues for intellectual activity." § 230(a)(3).  Section 230(c) is not meant to provide immunity for First Amendment violations.

### C. Section 230(c) Violates the First Amendment as Applied to This Matter.

The U.S. contends that Section 230(c) does not implicate the First Amendment because "it "does not regulate Plaintiff's speech," but only "establishes a content- and viewpoint-neutral rule prohibiting liability" for certain companies that ban others' speech. (U.S. Mot. at 2).  Defendants' egregious conduct in restraining Plaintiff's political speech belies its claims of a neutral standard.  The U.S.'s position minimizes *Denver Area*., *supra*., *Skinner v. Railway Labor Executives' Ass'n*,

PLAINTIFFS' RESPONSE IN OPPOSITION TO THE MOTION … - 4          3:21-cv-8378-JD
AND MEMORANDUM OF LAW BY INTERVENOR UNITED STATES

489 U.S. 602 (1989), and *In Railway Employees' Dept. v. Hanson*, 351 U.S. 225, 232 (1956). In those cases, the Supreme Court held statutes that permit but do not require a private party to regulate speech could lead to a First Amendment violation. *Denver Area*, 518 U.S. at 733. Section 230(c)'s permissive nature supplies the infrastructure for Defendants to conduct an unconstitutional regime of prior restraint against specific groups or people. Extending Section 230(c)'s language to suppress protected political speech does nothing to further and is wholly unrelated to protecting persons from "offensive…lewd…or otherwise objectionable" internet speech. *Denver Area*, 518 U.S. at 737, 74l, 765-67. See Plaintiff's Opposition to Defendants' Motion to Dismiss and Reply in Support of Plaintiff Trump's Motion for Preliminary Injunction for responses to the U.S.'s arguments regarding *Skinner* and *Hanson*.

### 3. CONCLUSION

Contrary to the argument put forth by the U.S., Section 230 is unconstitutional as applied to this case. Plaintiff Trump's request for a preliminary injunction should be granted.

Dated: February 11, 2022                    Respectfully submitted,

/s/ John P. Coale
John P. Coale


JOHN P. COALE (*pro hac vice*)
2901 Fessenden Street NW
Washington, D.C. 20008
Telephone: (202) 255-2096
Email: johnpcoale@aol.com

JOHN Q. KELLY (pro hac vice)
MICHAEL J. JONES (pro hac vice)
RYAN TOUGIAS (pro hac vice)
IVEY, BARNUM & O'MARA, LLC
170 Mason Street
Greenwich, CT 06830
Telephone: (203) 661-6000
Email: jqkelly@ibolaw.com
Email: mjones@ibolaw.com

|   |   |
|---|---|
| 1 | FRANK C. DUDENHEFER, JR. (*pro hac vice*) |
|   | THE DUDENHEFER LAW FIRM L.L.C. |
| 2 | 2721 Saint Charles Avenue, Suite 2A |
|   | New Orleans, LA 70130 |
| 3 | Telephone: (504) 616-5226 |
|   | Email: fcdlaw@aol.com |
| 4 |   |
| 5 | ANDREI POPOVICI (234820) |
|   | MARIE FIALA (79676) |
| 6 | LAW OFFICE OF ANDREI D. POPOVICI, P.C. |
|   | 2121 North California Blvd. #290 |
| 7 | Walnut Creek, CA 94596 |
|   | Telephone: (650) 530-9989 |
| 8 | Facsimile: (650) 530-9990 |
|   | Email: andrei@apatent.com |
| 9 | Email: marie@apatent.com |
| 10 |   |
| 11 | RICHARD POLK LAWSON (pro hac vice) |
|   | GARDNER BREWER HUDSON, P.A. |
| 12 | 400 North Ashley Drive |
|   | Suite 1100 |
| 13 | Tampa, FL 33602 |
|   | Telephone: (813) 221-9600 |
| 14 | Facsimile: (813) 221-9611 |
|   | Email: rlawson@gbmmlaw.com |
| 15 |   |
| 16 | Attorneys for Plaintiffs |

PLAINTIFFS' RESPONSE IN OPPOSITION TO THE MOTION … - 6        3:21-cv-8378-JD
AND MEMORANDUM OF LAW BY INTERVENOR UNITED STATES