# EXHIBIT B

26 F.4th 1119
United States Court of Appeals, Ninth Circuit.

TWITTER, INC., Plaintiff-Appellant,
v.
Ken PAXTON, in his official capacity as Attorney General of Texas, Defendant-Appellee.

No. 21-15869
|
Argued and Submitted January 10, 2022 San Francisco, California
|
Filed March 2, 2022

**Synopsis**
**Background:** Microblog operator brought § 1983 action against Texas Attorney General, alleging violation of operator's First Amendment rights stemming from Attorney General's civil investigative demand, which was served on operator after it banned United States President from its platform. The United States District Court for the Northern District of California, Maxine M. Chesney, J., 2021 WL 1893140, dismissed action. Operator appealed.

**Holdings:** The Court of Appeals, R. Nelson, Circuit Judge, held that:

[1] issues posed by action were not fit for judicial decision, supporting dismissal on ground of prudential ripeness, and

[2] any hardship to operator from dismissal of action was insufficient to overcome the uncertainty of legal issues presented by case.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Dismiss.

West Headnotes (17)

| [1] | **Federal Courts** — Jurisdiction |
|---|---|
| | The district court's decision to dismiss a case for lack of ripeness is reviewed de novo. |

| [2] | **Federal Courts** — Theory and Grounds of Decision of Lower Court |
|---|---|

| | |
|---|---|
| | The district court's decision to dismiss for lack of ripeness may be affirmed on any ground supported by the record, even if not relied on by the district court. |

| | |
|---|---|
| [3] | **Federal Courts**Ripeness; Prematurity<br>**Federal Courts**Prudential concerns |
| | Along with standing and mootness, ripeness is one of three justiciability requirements; ripeness is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction. U.S. Const. art. 3, § 2, cl. 1. |

| | |
|---|---|
| [4] | **Federal Civil Procedure**In general; injury or interest<br>**Federal Courts**Ripeness; Prematurity |
| | Constitutional component of ripeness is synonymous with injury-in-fact prong of standing inquiry. U.S. Const. art. 3, § 2, cl. 1. |

| | |
|---|---|
| [5] | **Federal Courts**Nature of dispute; concreteness |
| | In determining ripeness under Article III, question is whether the issues presented are definite and concrete, not hypothetical or abstract. U.S. Const. art. 3, § 2, cl. 1. |

| | |
|---|---|
| [6] | **Federal Courts**Fitness and hardship |
| | The prudential part of ripeness requires the court to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. |

| [7] | **Federal Courts**Fitness and hardship |
|---|---|
| | A claim is fit for decision, under prudential part of ripeness doctrine, if the issues raised are primarily legal and do not require further factual development, and the challenged action is final. |

| [8] | **Federal Courts**Fitness and hardship |
|---|---|
| | On the "hardship" prong of prudential-ripeness inquiry, the court considers whether the action requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance. |

| [9] | **Federal Courts**Fitness and hardship |
|---|---|
| | In prudential-ripeness analysis, even if there is some hardship to the plaintiff from withholding consideration, that hardship may still be insufficient to overcome the uncertainty of the legal issue presented in the case in its current posture and thus fail to outweigh court's and the government's interest in delaying review. |

| [10] | **Federal Courts**Ripeness;  Prematurity<br>**Federal Courts**Personal Jurisdiction |
|---|---|
| | Personal jurisdiction and constitutional ripeness are jurisdictional prerequisites. U.S. Const. art. 3, § 2, cl. 1. |

| [11] | **Federal Courts**Necessity of Objection;  Power and Duty of Court |
|---|---|

|  | Court generally may not rule on the merits of a case without first determining that it has jurisdiction. |
|---|---|

| [12] | **Federal Courts**Appellate Jurisdiction and Procedure in General |
|---|---|
|  | There is no mandatory sequencing of nonmerits issues in Court of Appeals' review, and Court thus has leeway to choose among threshold grounds for denying audience to a case on the merits. |

| [13] | **Federal Courts**Subject-matter jurisdiction in general<br>**Federal Courts**Dismissal or other disposition |
|---|---|
|  | Jurisdiction is vital only if the court proposes to issue a judgment on the merits; thus, when jurisdictional issues would be difficult to determine, court may instead dismiss a case on a non-merits threshold ground, if doing so is the less burdensome course. |

| [14] | **Federal Courts**Civil rights and discrimination in general |
|---|---|

|  | Issues posed by microblog operator's § 1983 action against Texas Attorney General were not fit for judicial decision, supporting dismissal on ground of prudential ripeness, in case in which operator alleged First Amendment retaliation stemming from Attorney General's civil investigative demand, which was served on operator after it banned United States President from its platform; resolution of retaliation claim would require court to determine whether operator's speech was misleading commercial speech and thus unprotected, and whether or not speech was misleading was the exact issue that Attorney General was attempting to investigate and would require further factual development. U.S. Const. Amend. 1; 42 U.S.C.A. § 1983. |
|---|---|
| **[15]** | **Constitutional Law**Retaliation in general |
|  | The elements of a First Amendment retaliation claim are (1) that the plaintiff was engaged in a constitutionally protected activity, (2) that the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) that the protected activity was a substantial or motivating factor in defendant's conduct. U.S. Const. Amend. 1. |
| **[16]** | **Federal Courts**Civil rights and discrimination in general |

| | |
|---|---|
| | Any hardship to microblog operator from dismissal of its § 1983 action against Texas Attorney General was insufficient to overcome the uncertainty of legal issue presented by case, supporting dismissal on ground of prudential ripeness, in case in which operator alleged First Amendment retaliation stemming from Attorney General's civil investigative demand, which was served on operator after it banned United States President from its platform; operator could challenge demand in Texas state court, and finding the case ripe would force Attorney General to litigate issue it was attempting to investigate, namely whether operator engaged in misleading commercial speech, making such types of investigations impossible. U.S. Const. Amend. 1; 42 U.S.C.A. § 1983. |
| [17] | **Declaratory Judgment**Right to declaratory relief in general |
| | In analysis of ripeness, declaratory relief may be appropriate even when injunctive relief is not. |

**\*1121** Appeal from the United States District Court for the Northern District of California, Maxine M. Chesney, District Judge, Presiding, D.C. No. 3:21-cv-01644-MMC

**Attorneys and Law Firms**

Peter G. Neiman (argued), Alex W. Miller, and Rishita Apsani, Wilmer Cutler Pickering Hale and Dorr LLP, New York, New York; Mark D. Flanagan, Wilmer Cutler Pickering Hale and Dorr LLP, Palo Alto, California; Patrick J. Carome, Ari Holtzblatt, Anuradha Sivaram, and Susan Pelletier, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, D.C.; for Plaintiff-Appellant.

Michael Kenneth Johnson, Lewis Brisbois Bisgaard & Smith LLP, Walnut Creek, California

Lanora C. Pettit (argued), Principal Deputy Solicitor General; Benjamin D. Wilson, Deputy Solicitor General; Judd E. Stone II, Solicitor General; William T. Thompson, Deputy Chief, Special Litigation Unit; Patrick Sweeten, Chief, Special Litigation Unit; Brent Webster, First Assistant Attorney General; Ken Paxton, Attorney General; Office of the Attorney General, Austin, Texas; for Defendant-Appellee.

Katie Townsend, Bruce D. Brown, Gabe Rottman, and Mailyn Fidler, Reporters Committee for Freedom of the Press, Washington, D.C., for Amici Curiae Reporters Committee for Freedom of the Press and Media Law Resource Center.

Caitlin Vogus, Samir Jain, and Emma Llansó, Center for Democracy & Technology, Washington, D.C., for Amici Curiae Center for Democracy & Technology, Electronic Frontier Foundation, Media Coalition Foundation Inc., National Coalition Against Censorship, Pen America, and R Street Institute.

Before: Mark J. Bennett, Ryan D. Nelson, and Patrick J. Bumatay, Circuit Judges.

**OPINION**

R. NELSON, Circuit Judge:

After the events at the U.S. Capitol on January 6, 2021, Twitter banned President Donald Trump for life. Soon after Twitter announced the ban, the Texas Office of the Attorney General (OAG) served Twitter with a Civil Investigative Demand (CID) asking it to produce various documents relating to its content moderation decisions. Twitter sued Ken Paxton, the Attorney General of Texas, in his official capacity, arguing that the CID was government retaliation for speech protected by the First Amendment. The district court dismissed the case as not ripe. We affirm.

I

A

OAG says that it has been investigating Twitter's content-moderation decisions in **\*1122** response to citizen complaints since 2018. Twitter executives have said publicly that Twitter does not moderate content based on political viewpoint. After Twitter banned President Trump for life, Paxton tweeted that Twitter (along with Facebook) was "closing conservative accounts," and that it and other companies stood "ready/willing to be the left's Chinese-style thought police." He vowed that "[a]s AG, I will fight them with all I've got."

A few days later OAG served Twitter with a CID, requiring it to produce various documents related to its content moderation decisions. Paxton says that OAG "does not seek to investigate the content-moderation decisions that Twitter makes—and could not do so under [Texas's unfair and deceptive trade practices law]—but rather is conducting an investigation into whether Twitter truthfully represents its moderation policies to Texas consumers." But Twitter paints this rationale as a pretext for Paxton's unlawful retaliation.

B

After some negotiation, rather than respond to the CID or wait for OAG to move to enforce it in Texas state court, Twitter instead sued Paxton in the Northern District of California. It alleged that both the act of sending the CID and the entire investigation were unlawful retaliation for its protected speech. Claiming under 42 U.S.C. § 1983 that Paxton violated its First Amendment rights, Twitter asked the district court to enjoin Paxton from enforcing the CID and from continuing his investigation, and to declare the investigation unconstitutional. In Twitter's view, its content moderation decisions are protected speech because it is a publisher, and it has a First Amendment right to choose what content to publish. Pointing to Paxton's public comments, Twitter argues that the CID was served in retaliation for its protected speech and that it chills Twitter's exercise of its First Amendment rights.

In response, Paxton contested personal jurisdiction, venue, ripeness, and whether Twitter had stated a claim. On ripeness, he argued that under *Reisman v. Caplin*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), pre-enforcement challenges to non-self-executing document requests are not ripe. Twitter countered that the case was ripe because it had already suffered a real First Amendment injury—its speech was already being chilled. The district court held that it had personal jurisdiction and that venue was proper, and then dismissed the case as not ripe, relying on *Reisman*. It did not reach whether Twitter stated a claim.

After the district court dismissed the case, Twitter moved for an injunction pending appeal, arguing again that the case was ripe. The district court declined to issue one, relying on the same reasoning as before. Twitter then appealed that order to this Court, and a divided motions panel affirmed. Twitter now appeals the district court's original order dismissing the case.

II

**[1] [2]**The district court's decision to dismiss a case for lack of ripeness is reviewed de novo. *Wolfson v. Brammer*, 616 F.3d 1045, 1053 (9th Cir. 2010). The district court's decision may be affirmed on any ground supported by the record, even if not relied on by the district court. *Cassirer v. Thyssen-Bornemisza Collection Found.*, 862 F.3d 951, 974 (9th Cir. 2017).

III

A

1

**[3]**Along with standing and mootness, ripeness is one of three justiciability requirements. ***1123** Ripeness "is 'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.' " *Ass'n of Irritated Residents v. EPA*, 10 F.4th 937, 944 (9th Cir. 2021) (citing *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808, 123 S.Ct. 2026, 155 L.Ed.2d 1017 (2003)). The "basic rationale" of the ripeness requirement is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993) (citing *Abbott Lab'ys. v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)).

**[4] [5]**We have separated out the constitutional and prudential components of ripeness. "[T]he constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry." *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003) (citing *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc)). The question is thus "whether the issues presented are definite and concrete, not hypothetical or abstract." *Id.* (cleaned up).

**[6] [7] [8] [9]**The prudential part of ripeness, on the other hand, requires us to "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Ass'n of Irritated Residents*, 10 F.4th at 944 (citing *Abbott Lab'ys*, 387 U.S. at 149, 87 S.Ct. 1507).[1] "A claim is fit for decision if the issues raised are primarily legal, do not require further factual development, and the challenged action is final." *Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 752 (9th Cir. 2020) (cleaned up). On the hardship prong, we consider whether the action "requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009) (cleaned up). As part of this prong, we have also considered the hardship to the government from moving forward with the case. *See Thomas*, 220 F.3d at 1142 ("the State and the City would suffer hardship were we to adjudicate this case now."). Even if there is some hardship to the plaintiff from withholding consideration, that hardship may still be "insufficient to overcome the uncertainty of the legal issue presented in the case in its current posture" and thus "fail[ ] ... [to] outweigh[ ] our and the [government's] interest in delaying review." *Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1129 (9th Cir. 2009) (citation omitted).

We have noted that we "appl[y] the requirements of ripeness and standing less stringently in the context of First Amendment claims." *Wolfson*, 616 F.3d at 1058 (citing *Getman*, 328 F.3d at 1094). But that observation relied on a standing case, *Getman*, and thus relates mainly to the constitutional ripeness of a pre-enforcement suit, not to prudential ripeness. And we have also held that "[t]he prudential considerations of ripeness are amplified where constitutional issues are concerned." *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002) (citing ***1124** *United Pub. Workers v. Mitchell*, 330 U.S. 75, 90–91, 67 S.Ct. 556, 91 L.Ed. 754 (1947)).

[10] [11] [12] [13]Personal jurisdiction and constitutional ripeness are jurisdictional prerequisites. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999); *In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009). We "generally may not rule on the merits of a case without first determining that [we] ha[ve] jurisdiction." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). But "there is no mandatory sequencing of nonmerits issues," and we thus "ha[ve] leeway 'to choose among threshold grounds for denying audience to a case on the merits.'" *Id.* (citing *Ruhrgas*, 526 U.S. at 584–85, 119 S.Ct. 1563). The rationale for this rule is that "jurisdiction is vital only if the court proposes to issue a judgment on the merits." *Snoqualmie Indian Tribe v. Washington*, 8 F.4th 853, 861 (9th Cir. 2021) (cleaned up). Thus when jurisdictional issues would be "difficult to determine," we may instead dismiss a case on a non-merits threshold ground, if doing so is "the less burdensome course." *Id.* (quoting *Sinochem*, 549 U.S. at 436, 127 S.Ct. 1184).

B

Prudential ripeness is a non-merits threshold issue, and personal jurisdiction and constitutional ripeness would be difficult to determine here. We thus instead dismiss the case on prudential ripeness, the "less burdensome course." *See id.*

This case is not prudentially ripe. The issues are not yet fit for judicial decision because OAG has not yet made an allegation against Twitter, because the facts are not yet developed, and because Twitter need not comply with the CID, can challenge it if it is enforced, and could have challenged the CID in Texas state court, Tex. Bus. & Com. Code § 17.61(g). While Twitter could suffer hardship from withholding consideration, adjudicating this case now would require determining whether Twitter has violated Texas's unfair trade practices law before OAG has a chance to complete its investigation. Any hardship to Twitter from the alleged chill of its First Amendment rights is "insufficient to overcome the uncertainty of the legal issue presented in the case in its current posture." *Colwell*, 558 F.3d at 1129.

1

[14]On the first prong, whether the issues are fit for judicial decision, Twitter argues that its claim "is based entirely on acts that have already occurred," and thus that prudential ripeness is satisfied. We disagree. As Twitter argues, the case turns on whether Paxton caused OAG to issue the CID with a retaliatory motive. But it turns on other questions too, and it's as to those other questions that the issues are not yet fit for judicial decision.

[15]If this lawsuit is allowed to go forward, it will force OAG to litigate its entire case on deceptive trade practices in California without even being able to investigate it and figure out if it wants to pursue it or not. Here's how: The elements of a First Amendment retaliation claim are (1) that the plaintiff was "engaged in a constitutionally protected activity," (2) that the "Defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected activity," and (3) that "the protected activity was a substantial or motivating factor in Defendants' conduct." *Sampson v. Cnty. of Los Angeles*, 974 F.3d 1012, 1019 (9th Cir. 2020) (citation omitted). Even if content moderation is protected speech, making **\*1125** misrepresentations about content moderation policies is not. *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 772, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976) (misleading commercial speech is not protected). If Twitter's statements are protected commercial speech, then OAG's investigation would be unlawful if it would chill a person of ordinary firmness from speaking, and if it was caused in substantial or motivating part by Twitter's content moderation decisions. *Sampson*, 974 F.3d at 1019 (citation omitted). But if Twitter's statements are misleading commercial speech, and thus unprotected, then Twitter's content moderation decisions would be a proper cause for the investigation, because they would be the very acts that make its speech misleading.

In this way, addressing Twitter's claim would require the district court to determine whether Twitter had made misrepresentations. But misrepresentations are exactly what are prohibited by Texas's unfair and deceptive trade practices law; this is the very thing that Paxton claims OAG is trying to investigate. And at this stage, OAG hasn't even alleged that there is a violation; OAG is just trying to look into it. Whether Twitter's statements were misrepresentations is not solely a legal issue because it depends on "further factual amplification." *United States v. Lazarenko*, 476 F.3d 642, 652 (9th Cir. 2007). Allowing this case to go forward would force OAG to litigate the merits in a defensive posture in a different jurisdiction, without being able to investigate its own potential claims.

Indeed, allowing this case to go forward would limit many legitimate investigations, because they could chill First Amendment rights. Consider a civil antitrust investigation. Are the business executives legitimate targets? Or are their First Amendment rights to speak freely among themselves being chilled? If this case were ripe, then the target of an antitrust investigation could sue the government and force it to try its entire case before it even decides whether it wants to allege a violation.

In addressing a related but separate issue, the Supreme Court avoided this very outcome, observing that it "would require federal courts to determine the constitutionality of state laws in hypothetical situations where it is not even clear the State itself would consider its law applicable." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 382, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). Finding this case ripe would require federal courts in California to determine the constitutionality of Texas's unfair trade practices law in a hypothetical situation, before Texas has even decided whether its law applies.

2

[16]Withholding consideration could lead to some hardship for Twitter: the alleged chill of its First Amendment rights. But on the hardship prong, we also consider "whether the [state] action requires immediate compliance with its terms." *Skyline*, 968 F.3d at 752. Twitter has alleged a chill on its First Amendment rights. But because Twitter need not comply with the CID, OAG has taken no action that requires immediate compliance.

Moreover, any hardship to Twitter is minimized because Twitter may still raise its First Amendment claims before OAG brings an unfair trade practices suit. If OAG moves to enforce the CID, Twitter can raise its First Amendment claims at that time, before any duty to comply applies, and without facing any charges under the underlying Texas unfair business practices statute. Twitter also could have challenged the CID in Texas state court. Tex. Bus. & Com. Code § 17.61(g).

**\*1126** And we can also consider the hardship to OAG. *See Thomas*, 220 F.3d at 1141–42 (assessing hardship to the government from finding case ripe). Allowing this case to go forward would force OAG to litigate its case in federal court in California, without being able to first investigate its own potential claims. That would undermine Texas's state sovereignty. States can investigate whether businesses make misrepresentations. Finding this case ripe would make some of those investigations impossible.

Thus any "hardship [to Twitter] is insufficient to overcome the uncertainty of the legal issue presented in the case in its current posture," and "fail[s] ... [to] outweigh[ ] our and the [Attorney General's] interest in delaying review." *Colwell*, 558 F.3d at 1129 (citation omitted).

C

1

Twitter argues that OAG's investigation is illegitimate because matters of "editorial judgment" can never be investigated. In doing so, it analogizes its statements about content moderation (that it moderates content without considering viewpoint) to the slogans like "all the news that's fit to print" and "fair and balanced." Twitter and amici also rely on cases highlighting the dangers in "government editorial oversight." *See Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974); *Bullfrog Films, Inc. v. Wick*, 847 F.2d 502, 510 (9th Cir. 1988).

We reject these arguments. First, *Bullfrog Films* and *Miami Herald* addressed government regulations or statutes which themselves required balance. 847 F.2d at 505 (federal regulations); 418 U.S. at 244, 94 S.Ct. 2831 (state statute). Here, by contrast, Twitter has made statements about balance, and so the danger from *Bullfrog Films* and *Miami Herald* is absent. Twitter's statements can be investigated as misleading just like the statements of any other business.

Second, Twitter's analogy to "all the news that's fit to print" is a puffery argument, the essence of which is that no one would understand its statements about content moderation to be literally true. We disagree. No one believes that the New York Times literally prints "all the news that's fit to print," but a reasonable person could think that Twitter's statements about content moderation were true. *Cf. Knievel v. ESPN*, 393 F.3d 1068, 1073–74 (9th Cir. 2005) (deciding whether allegedly

defamatory statement could be believed by a reasonable person).

2

Twitter also relies on a series of First Amendment cases to argue that "even informal threats of legal sanction, when used as a means to punish or restrict a person's exercise of First Amendment rights, create an immediate First Amendment injury that courts may remedy." *See, e.g.*, *Bantam Books v. Sullivan*, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963). Paxton responds that those cases are "generalized First Amendment principles" that don't apply here and largely don't discuss ripeness at all. It's true that some of these cases don't discuss ripeness. And regardless, a closer look at them shows that they don't support finding ripeness here. We first discuss Twitter's foundational case, *Bantam Books*, and then address our precedents.

a

*Bantam Books* was different from this case in three ways: it dealt with obscenity, it addressed a state regulatory scheme that "provide[d] no safeguards whatever against the suppression of nonobscene, and therefore constitutionally protected, matter," **\*1127** 372 U.S. at 70, 83 S.Ct. 631, and it did not address ripeness.

The threat to speech in *Bantam Books* came from the "Rhode Island Commission to Encourage Morality in Youth," a state regulatory body whose mission was to "educate the public concerning any book, picture, pamphlet, ballad, printed paper or other thing containing obscene, indecent or impure language, or manifestly tending to the corruption of the youth." *Id.* at 59, 83 S.Ct. 631. The Commission contacted distributors of these books, told them that the books were objectionable, thanked them in advance for their cooperation, reminded them that the Commission recommended "purveyors of obscenity" for prosecution, and told them that copies had been forwarded to local police departments. *Id.* at 61–63, 83 S.Ct. 631. Several publishers sued, and the Supreme Court held that the Commission's acts violated the First Amendment.

The Court's holding was rooted in the complexity of its obscenity jurisprudence. It first pointed out that although obscenity is not protected speech, state regulation of obscenity also is subject to "an important qualification," which is that the test for obscenity is complex and requires safeguards in its application. *Id.* at 65, 83 S.Ct. 631 (citing *Roth v. United States*, 354 U.S. 476, 488, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957)). The problem with the Commission was that it had no safeguards at all: There was no judicial review of the notices, no notice and hearing, and it levied vague and uninformative allegations. *Id.* at 70–71, 83 S.Ct. 631. It was these faults that led the Supreme Court to say that "[t]he procedures of the Commission are radically deficient" and to call them a "system of informal censorship." *Id.* at 71, 83 S.Ct. 631.

*Bantam Books* differs from this case. First, unlike obscenity, the test for misleading or untruthful commercial speech contains no analogous complexities or qualifications. *See Va. State Bd. of Pharmacy*, 425 U.S. at 772, 96 S.Ct. 1817.

Second, unlike the Commission, OAG has not alleged that the law has been broken; it has started an investigation and requested documents. Even a statement like "I'll fight them with all I've got" is not an allegation that Texas's law has been violated.

Third, unlike the Commission's, OAG's actions come with procedural safeguards: If OAG moves to enforce the CID, Twitter can raise its First Amendment defense then, before there are any underlying charges. Twitter also could have challenged the CID in Texas state court. Tex. Bus. & Com. Code § 17.61(g). In *Bantam Books*, there were no such opportunities.

Ultimately, in *Bantam Books*, the Supreme Court "look[ed] through forms to the substance" and found that the Commission was just a "system of informal censorship." *Id.* at 67, 71, 83 S.Ct. 631. OAG's investigation is not a system of informal censorship. *Bantam Books* does not support finding ripeness here.

b

Along with *Bantam Books*, Twitter relies on several of our cases from the last few decades. Some of these cases don't address ripeness at all, and others involve facts that are very different from this case.

Twitter cites *White v. Lee* to argue that "retaliatory investigations can inflict First Amendment injuries by chilling speech." 227 F.3d 1214, 1228 (9th Cir. 2000). And it's true that *White* held that a retaliatory investigation violated the targets' First Amendment rights. 227 F.3d at 1228. But the case doesn't address ripeness at all. And even more to the point, in *White*, the entire investigation had already taken place: The government investigated for several months and "ultimately concluded **\*1128** that no violation had occurred and that the [plaintiffs] had engaged solely in activity protected by the First Amendment." *Id.* at 1220. Only at that point did the plaintiffs file a § 1983 suit. *White* thus says little about this case, in which the investigation is still ongoing.

There is another difference: In *White*, the plaintiffs would have had no opportunity to challenge any aspect of the investigation until formal charges were brought, at which point they could have faced a large fine. *Id.* at 1222. But here, as the district court pointed out, "Twitter faces no such consequence" because it can raise its First Amendment defense if Paxton moves to enforce the CID.[2]

*Wolfson* also doesn't apply. 616 F.3d at 1058. One claim in *Wolfson* was prudentially ripe because it was "primarily legal and d[id] not require substantial further factual development." *Id.* at 1060. Here, by contrast, Twitter's claim involves determining whether it has misrepresented its content moderation policies. That question requires more factual development; indeed, developing those facts is the very subject of OAG's investigation. In *Wolfson*, there was no investigation.[3]

Finally, *Brodheim v. Cry*, 584 F.3d 1262 (9th Cir. 2009), doesn't apply because it arose in a very different context. *Brodheim* addressed neither standing nor ripeness. And it concerned a state prison official's alleged retaliatory threat against a state prisoner. *Id.* The case does not apply because its rule was rooted in the disparity in power and control between prison officials and inmates, and such a disparity is not present here.

In *Brodheim*, in response to an inmate's administrative complaint, a prison official told the inmate, "I'd also like to warn you to be careful what you write, req[u]est on this form." *Id.* at 1266 (alteration in original). A non-self-executing CID that can be challenged when enforced (and could have been challenged before enforcement) does not create the same threat of further sanctions as this prison official's alleged threat.

3

For his part, Paxton asks us to find this case unripe by relying on *Reisman*, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459. We decline to do so. *Reisman* doesn't apply for a simple reason: It's not about the First Amendment and it's not about ripeness.

In *Reisman*, the IRS served a married couple's accountants with a document request. 375 U.S. at 443, 84 S.Ct. 508. The couple's lawyer sued, arguing that the accountants might comply and that their compliance would violate the attorney-client privilege. *Id.* at 442, 84 S.Ct. 508. He also argued that the request was an unreasonable seizure and that it violated his clients' rights against self-incrimination. *Id.* The Supreme Court dismissed the case, but not because it was unripe. Rather, the Court dismissed the case for "want of equity." *Id.* at 443, 84 S.Ct. 508. Because the petitioners could challenge the document **\*1129** request "on any appropriate ground," the Court held that they had "an adequate remedy at law" and thus dismissed the case. *Id.* at 443, 449, 84 S.Ct. 508.

This case is different from *Reisman* because it involves the First Amendment, under which a chilling effect on speech can itself be the harm. *Wolfson*, 616 F.3d at 1059 (citing *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988)). The key to the holding in *Reisman* was that there had not yet been an injury: The Court held that the remedy specified by Congress (to challenge the document request) "suffer[ed] no constitutional invalidity." *Reisman*, 375 U.S. at 450, 84 S.Ct. 508. In other words, the injury in *Reisman* would only occur if the document request were satisfied. The Court dismissed the case because there was a way for the petitioners to avoid any potential injury while following the statutory process. That's not the case here. Twitter has alleged that its injury has already occurred; there is no way for it to avoid its alleged injury by challenging the document request later. (Of course, whether that injury is sufficient for standing and constitutional ripeness is a separate issue, and one that we decline to address, as discussed above.) *Reisman* also isn't about ripeness: Indeed, it doesn't mention ripeness at all.[4]

D

[17]Because our analysis is rooted in prudential ripeness and not equitable principles, it is not affected by Twitter's declaratory judgment claim. It's true that "[d]eclaratory relief may be appropriate even when injunctive relief is not." *Olagues v. Russoniello*, 770 F.2d 791, 803 (9th Cir. 1985). But unlike the analysis of *Reisman*, our ripeness analysis does not rely on the lack of an adequate remedy at law, so it applies equally to Twitter's claims for equitable and declaratory relief.

IV

The issues here are not fit for judicial decision because the facts require further development, and the relative hardships to the parties support delaying review. The case thus is not prudentially ripe, and the district court's order dismissing the case is **AFFIRMED**.

**All Citations**

26 F.4th 1119, 22 Cal. Daily Op. Serv. 2272, 2022 Daily Journal D.A.R. 1994

| | **Footnotes** |
|---|---|
| 1 | The Supreme Court has questioned the continued validity of the prudential ripeness doctrine because it "is in some tension with [the Court's] recent reaffirmation of the principle that 'a federal court's obligation to hear and decide' cases within its jurisdiction 'is virtually unflagging.' " *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167, 134 S.Ct. 2334, 189 L.Ed.2d 246 (2014) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014)). But the parties do not ask us to revisit our precedents, and we continue to be bound by them. |
| 2 | As the district court pointed out, *Lacey v. Maricopa County*, 693 F.3d 896 (9th Cir. 2012), and *Sampson*, 974 F.3d at 1019, do not apply for the same reason. In *Lacey*, the prosecuting attorney had authorized the plaintiffs' arrest, 693 F.3d at 922–23, and in *Sampson*, the plaintiff was threatened with a loss of custody of a child, 974 F.3d at 1020–21. Because Twitter can raise its First Amendment challenge in an action by OAG to enforce the CID, it faces no such consequences. |
| 3 | *Ariz. Right to Life Political Action Committee v. Bayless*, 320 F.3d 1002, 1002 (9th Cir. 2003), similarly does not apply for this reason. In that case, there was no investigation, and the plaintiffs alleged a desire to engage in conduct likely prohibited. That case also only addressed standing, and thus did not address prudential ripeness at all. |
| 4 | *Zimmer v. Connett*, 640 F.2d 208 (9th Cir. 1981), does not apply for the same reason. That case also concerned a document request from the IRS to a taxpayer, and we dismissed the case "[b]ecause the taxpayer had an adequate remedy at law." *Id.* at 209. |

| **End of Document** | © 2022 Thomson Reuters. No claim to original U.S. Government Works. |
|---|---|