PATRICK J. CAROME (*pro hac vice*)
patrick.carome@wilmerhale.com
ARI HOLTZBLATT (*pro hac vice*)
ari.holtzblatt@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile:  (202) 663-6363

FELICIA H. ELLSWORTH (*pro hac vice*)
felicia.ellsworth@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-5000

THOMAS G. SPRANKLING
CA Bar No. 294831
thomas.sprankling@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6062
Facsimile: (650) 858-6100

*Attorneys for Defendants Twitter, Inc.
  and Jack Dorsey*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DONALD J. TRUMP, et al.,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>TWITTER, INC., et al.,<br><br>　　　　　　Defendants. | Case No. 21-cv-08378-JD<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF WOLF'S MOTION FOR INDICATIVE RULING UNDER FED. R. CIV. P. 60** |

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................................ ii

INTRODUCTION ............................................................................................................................... 1

BACKGROUND ................................................................................................................................. 2

ARGUMENT ....................................................................................................................................... 5

THE NEWLY SUBMITTED MATERIAL DOES NOT SUPPORT WOLF'S FIRST AMENDMENT CLAIM ................. 5

    A.    The New Material Does Not Show Any Rule Of Decision Imposed By The State ........... 6

    B.    The New Material Does Not Show That Twitter's Suspension Of Wolf's Account Can Be Deemed State Action ............................................................................................ 10

CONCLUSION ................................................................................................................................. 13

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Abu-Jamal v. National Public Radio*, 1997 WL 527349 (D.D.C. Aug. 21, 1997) ............................................. 11

*Alabama Association of Realtors v. United States Department of Health & Human Services*,
    539 F. Supp. 3d 29 (D.D.C. 2021) ........................................................................................................... 7

*American Family Ass'n v. City & County of San Francisco*, 177 F.3d 1114
    (9th Cir. 2002) ....................................................................................................................................... 11

*Arch Insurance Co. v. FTR International Inc.*, 2013 WL 12173916
    (C.D. Cal. May 31, 2013) ........................................................................................................................ 5

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) .......................................................................................... 7

*Collins v. Womancare*, 878 F.2d 1145 (9th Cir. 1989) .................................................................................... 12

*Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082 (9th Cir. 2003) ........................................................... 5

*Franklin v. Fox*, 312 F.3d 423 (9th Cir. 2002) ................................................................................................. 12

*Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268 (2d Cir. 1999) ................................................ 12

*Goldstein v. Treasury Inspector General for Tax Administration*, 278 F. Supp. 3d 131
    (D.D.C. 2017) .......................................................................................................................................... 5

*Hammerhead Enterprises, Inc. v. Brezenoff*, 707 F.2d 33 (2d Cir. 1983) ....................................................... 11

*Lockhead v. Weinstein*, 24 F. App'x 805 (9th Cir. 2001) ................................................................................ 12

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) .................................................................................. 5, 6, 7

*Mathis v. Pacific Gas & Electric Co.*, 75 F.3d 498 (9th Cir. 1996) ................................................................. 12

*Mathis v. Pacific Gas & Electric Co.*, 891 F.2d 1429 (9th Cir. 1989) ............................................................... 9

*Moldowan v. City of Warren*, 578 F.3d 351 (6th Cir. 2009) ........................................................................... 12

*O'Handley v. Padilla*, 579 F. Supp. 3d 1163 (N.D. Cal. 2022) ................................................................... 9, 12

*Radcliffe v. Rainbow Contruction Co.*, 254 F.3d 772 (9th Cir. 2001) ....................................................... 12, 13

*S.H.A.R.K. v. Metro Parks Serving Summit County*, 499 F.3d 553
    (6th Cir. 2007) ....................................................................................................................................... 11

*Stanley v. Georgia*, 394 U.S. 557 (1969) ........................................................................................................... 9

*State v. Becerra*, 544 F. Supp. 3d 1241 (M.D. Fla. 2021) ................................................................................. 7

*Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989) .................................................................................. 12

*Tiger Lily, LLC v. United States Department of Housing & Urban Development*,
   992 F.3d 518 (6th Cir. 2021) ...................................................................................................7

*United States v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of American ACL-CIO*, 941 F.2d 1292 (2d Cir. 1991) ..................................................................................8

**STATUTES AND RULES**

42 U.S.C. § 264 ....................................................................................................................................7

Fed. R. Civ. Rule 60 ............................................................................................................1, 2, 3, 5

**INTRODUCTION**

Plaintiff Naomi Wolf seeks the extraordinary remedy of relief from final judgment on her First Amendment claim against Defendants Twitter and Jack Dorsey (collectively, "Twitter") based solely on newly submitted documents that reflect facts that are materially indistinguishable from allegations this Court has already held to be insufficient to state a claim. These documents would not likely change this Court's resolution of the case because they add nothing new to the pleadings and support only the flawed theories of liability that this Court already rejected. In particular, the documents either (1) factually support allegations that this Court's decision necessarily assumed were true in dismissing Plaintiffs' claims (e.g., that the Centers for Disease Control and Twitter communicated about COVID-19 misinformation) or (2) indicate that an allegation the amended complaint made with respect to another Plaintiff (i.e., that government officials had specifically flagged Plaintiff Donald Trump's Tweets) was also true as to a Tweet from Wolf. This is the epitome of what does *not* qualify for relief under Rule 60(b), because this Court has already held, as a matter of law and assuming all such allegations are true, that none of the Plaintiffs had stated any actionable claims, including under the First Amendment.

To be entitled to relief under Rule 60(b), Wolf would have to show that her supposedly new material is of such significance that its availability before entry of judgment likely would have changed this Court's decision. That always is a high bar, but it is especially so here given the nature of Wolf's First Amendment claim. As this Court held, that claim "is not an easy claim to make, for good reason," given Twitter's status as a private actor with its own constitutional rights. Order on Mot. to Dismiss ("MTD Order") (Dkt. 165) at 4. This Court dismissed Plaintiffs' First Amendment claims because the amended complaint did "not plausibly allege that Twitter acted as a government entity when it closed plaintiffs' accounts." *Id.* at 13. In particular, it held that the amended complaint failed to plausibly allege either element of the stringent, two-part test for deeming the conduct of a private party to be state action: that "plaintiffs' ostensible First Amendment injury was caused by 'a rule of conduct imposed by the government'" *and* that "Twitter could fairly be deemed to be a state actor" because of coercion or encouragement by, or joint action with, the government. *Id.* at 6, 7.

Nothing in the material Wolf proffers shows any "state dictate to Twitter," MTD Order 7, or any government compulsion of or participation in Twitter's decisions with respect to Wolf (or anyone else). She relies primarily on emails from the CDC identifying several categories of what it identified as COVID-19 misinformation, along with examples of Tweets within those categories and the accounts from which they had emanated. None of those emails, which followed a request from a Twitter employee to a CDC employee for examples of problematic COVID-19 content, commanded Twitter to take any specific action—with respect to Wolf or otherwise. And, in any event, none of the CDC emails mentions any "concrete and specific government action, or threatened action" that the CDC would take if Twitter acted inconsistently with the CDC's views. *Id.* at 11. Indeed, Wolf has not even plausibly alleged that the CDC *could* make any credible threat of government action against Twitter, given that she has pointed to no regulatory authority that the CDC exercises over social media platforms.

In sum, the material on which Wolf's motion relies—just like the materially identical allegations in the amended complaint that this Court accepted as true and held were insufficient—shows at most only that the CDC expressed a preference that certain categories of content should not be available on Twitter's platform, but did not direct, command, or participate in any specific content-moderation decision. That is insufficient to plausibly allege state action, as this Court already found. The purportedly new material thus does not warrant relief under Rule 60(b).

## BACKGROUND

This Court dismissed Plaintiffs' amended complaint, with leave to further amend, on May 6, 2022. *See* MTD Order 17. As the Court explained, the amended complaint alleged that Twitter suspended Plaintiffs' Twitter accounts in response to "coercion by members of Congress affiliated with the Democratic Party." *Id.* at 2. To support that theory, Plaintiffs pointed to various statements indicating that "some Democratic members of Congress wanted Mr. Trump and 'the views he espoused' to be banned from Twitter," *id.* at 6, and claimed that these legislators had induced Twitter to act by threatening greater regulation of Twitter or the social media sector generally, *id.* at 7-11. The amended complaint also alleged that Twitter's removal of certain misinformation about COVID-19 was coordinated with the CDC, citing public statements by the CDC "that it works with 'social media partners,' including Twitter, to 'curb

the spread of vaccine misinformation.'" Am. Compl. (Dkt. 21) ¶ 78; *see also id.* ¶¶ 77, 79-80, 87, 90, 96-103, 109. As relevant here, Plaintiff Wolf alleged that this supposed government pressure or coordination led Twitter to suspend her account for "vaccine misinformation." MTD Order 6.

Accepting all such allegations as true and affording all reasonable inferences in favor of Plaintiffs, as required by Rule 12(b)(6), MTD Order 1, this Court rejected Plaintiffs' claim that such allegations were sufficient to plausibly show that Twitter's decision to suspend Plaintiffs' accounts—including Wolf's—could be deemed state action, *id.* at 3-13. As the Court explained, cases finding state action based on purported government coercion have required both a "rule of conduct imposed by the government" and "a concrete and specific government action, or threatened action" that would result if the private party resisted. *Id.* at 6, 11. By contrast, Plaintiffs' allegations were "strikingly different" because they lacked any comparable "state dictate" and consisted "only" of "ambiguous and open-ended statements to the effect that 'we may legislate' something unfavorable to Twitter or the social media sector." *Id.* at 7, 11. That was true even as to Plaintiffs' allegations concerning Plaintiff Trump, which included specific allegations that "some Democratic members of Congress wanted Mr. Trump … to be banned from Twitter." *Id.* at 6. After disposing of Plaintiffs' coercion theory, the Court held that "Plaintiffs' cursory mention of state 'encouragement' (through Section 230(c)) and 'joint action' [we]re minor variations on the state action theme, and [we]re unavailing for the same reasons." *Id.* at 13.

This Court gave all Plaintiffs, including Wolf, leave to further amend their complaint. MTD Order 17. Rather than attempt to address these fatal pleading deficiencies, Wolf and the other Plaintiffs "advised the Court that they … elected not to file an amended complaint," and the Court therefore entered judgment against all Plaintiffs. Judgment (Dkt. 168). Wolf and the other Plaintiffs noticed an appeal on June 27, 2022 (Dkt. 169), which remains pending.

Now Wolf, unilaterally and without joinder of her co-Plaintiffs, has moved for an indicative ruling under Federal Rule of Civil Procedure 60(b), arguing she is entitled to relief from judgment on one of her claims—i.e., her claim that Twitter violated her First Amendment rights by permanently suspending her Twitter account. *See* Mot. for Indicative Ruling ("Mot.") (Dkt. 176) at 3 (arguing that new material "justifies setting aside the dismissal order as to Dr. Wolf so that she can pursue her First Amendment

claim against Twitter"). The "new evidence" on which Wolf's motion primarily relies is a handful of emails, from April and June 2021, between employees at the CDC and a Twitter employee, which the CDC recently produced in response to a Freedom of Information Act request submitted by an unrelated third party or in litigation initiated by other unrelated third parties. *See* Declaration of Scott Street ("Street Decl.") (Dkt. 177) ¶ 6 & Exs. A-C; *see also* Suppl. Declaration of Scott Street ("Suppl. Street Decl.") (Dkt. 180) ¶¶ 3-5 & Exs. A, B, E.

The material Wolf proffers at most provides documentary support for allegations in the amended complaint that this Court already rejected as insufficient to state a First Amendment claim against Twitter. The material shows that Twitter sometimes interacts with persons and organizations it considers to be experts, including experts in the government, to help identify content that violates its rules and policies. And the amended complaint had alleged exactly that. *See, e.g.*, Am. Compl. ¶¶ 78, 98 (alleging that the CDC works with social media platforms to "'contain the spread of vaccine misinformation'" and "better understand enforcement of social media platform policies"). In the earliest email accompanying Wolf's motion, Twitter asked the CDC for "examples of problematic content." Suppl. Street Decl. Ex. E. In subsequent emails, CDC employees "point[ed] out" broad categories of COVID-19-related misinformation that the CDC is "seeing a great deal of" and cited examples of such misinformation, one of which was a Tweet from Wolf's account. Street Decl. Ex. A; *see also id.* Ex. C; Suppl. Street Decl. Exs. A, B, E. The CDC's emails contained no command to Twitter to remove the content identified as misinformation or suspend those who posted such information nor any threat to impose any penalty on Twitter if it did not remove or take other action with respect to such content. *See* Street Decl. Exs. A, C; Suppl. Street Decl. Exs. A, B, E. And the emails reflect that Twitter in some cases had already "reviewed and actioned" the particular Tweets identified by CDC employees under its own rules and in others "actioned (by labeling or removing) the Tweets in violation of [its] rules." Suppl. Street Decl. Exs. A, E. The interrogatory responses and single calendar invitation on which Wolf also relies likewise show that several Twitter employees met with governmental actors and that COVID-19 misinformation, among other things, was discussed at those meetings. *See Id.* Exs. C, D. Internal Twitter communications on

which Wolf's motion relies again show that Twitter's response to such meetings was to determine whether, in its view, any content flagged by the government violated its own private rules. *See* Street Decl. Ex. D.

## ARGUMENT

The bar to obtain relief from a final judgment under Rule 60(b)(2) is high, and Wolf has not met it. Relief from judgment on the basis of newly discovered evidence is warranted only if the movant shows that (1) "the evidence relied on in fact constitutes newly discovered evidence within the meaning of Rule 60(b); (2) the moving party exercised due diligence to discover the evidence; and (3) the newly discovered evidence [is] of such magnitude that production of it earlier would have been likely to change the disposition of the case." *Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003) (quotation marks omitted). Wolf's motion should be denied because she has failed to establish at least the third requirement. The newly submitted material is not "of such magnitude" that it would likely have changed this Court's decision to dismiss Wolf's First Amendment claim. The material suffers the same dispositive defects as the already dismissed allegations.[1]

**THE NEWLY SUBMITTED MATERIAL DOES NOT SUPPORT WOLF'S FIRST AMENDMENT CLAIM**

Relief from judgment is not warranted because none of the newly submitted material would likely change the Court's decision to dismiss Wolf's First Amendment claim against Twitter. As this Court has already held, private actors can be held liable for alleged constitutional violations only where the specific "'conduct allegedly causing the deprivation of a federal right' is 'fairly attributable to the State.'" MTD Order 5 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). This is determined through a two-pronged test, requiring both that: (a) "'the deprivation [is] caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person from whom the State is responsible'" and (b) "'the party charged with the deprivation [is] a person who may fairly be said to be a

---

[1] Wolf has not even attempted to establish that her motion satisfies the second requirement of Rule 60(b)(2). She offers no reason why the Court should conclude that she exercised "reasonable diligence" to discover the newly submitted material, most of which a third party obtained through a FOIA request submitted nearly a year before judgment was entered in this case. *See Goldstein v. Treasury Inspector Gen. for Tax Admin.*, 278 F. Supp. 3d 131, 139 (D.D.C. 2017) (describing FOIA request as an "exercise[] [of] reasonable diligence"); *Arch Ins. Co. v. FTR Int'l Inc.*, 2013 WL 12173916, at *4 (C.D. Cal. May 31, 2013) (denying Rule 60(b) motion where plaintiff could have but did not make California Public Records Act requests until after judgment).

state actor.'" *Id.* (quoting *Lugar*, 457 U.S. at 937). Like the allegations in the amended complaint, Wolf's purported new evidence fails at each step.

### A. The New Material Does Not Show Any Rule Of Decision Imposed By The State

The newly submitted material fails to satisfy the first prong as it does not show that the federal government imposed any rule of conduct that caused Twitter to suspend Wolf's account. The newly submitted material shows only that CDC staffers informed Twitter about certain broad categories of misinformation about COVID-19 that they had seen on Twitter's platform without either demanding that Twitter take any particular action or threatening any penalty if Twitter did not remove, or otherwise act with respect to, such content. This is not enough to plausibly allege that Twitter became a state actor because, as this Court has already held, to satisfy the first prong of the state-action test, a controlling "rule of conduct" must both be clearly articulated and come from a state actor "empowered to compel" its enforcement. MTD Order 6-7.

First, the newly submitted material does not show any discernible "rule of conduct" traceable to the government. Though Wolf conclusorily asserts that the newly submitted material shows a "'rule of decision' that links Twitter's actions to the government," Mot. 6, she identifies no rule emanating from the state. Nor does the material on which she relies reflect any government-created rule. As this Court already held, statements to the effect that certain "content and views [a]re contrary to [government actors'] preferred points of view'" do not amount to a clearly discernible "state rule." MTD Order 6 (quotation marks omitted). Here, the CDC emails simply "point out" general topics about which the CDC has identified to be misinformation on social media along with exemplary posts on several social media platforms, including Twitter. *See* Street Decl. Exs. A, B; Suppl. Street Decl. Exs. A, B. For example, in one email, a CDC staffer identifies "vaccine shedding and microchips" as an "issue[]" that the CDC has been "seeing a great deal of misinfo about." Street Decl. Ex. A. That email quotes a Tweet by Wolf as an example of such misinformation. *See id.* And in a PowerPoint slide, the CDC advises broadly that "Potential Misinformation has been identified about the Vaccine Adverse Event Reporting System (VAERS)." *Id.* Ex. C. These materials thus show the CDC communicating its "preferred point[] of view" that certain general categories of content about COVID-19 are misinformation and potentially harmful to

public health. MTD Order 6. But the materials do not show any clearly articulated rule and thus are just as deficient as the "allegations to the effect that some Democratic members of Congress wanted Mr. Trump, and 'the views he espoused,' to be banned from Twitter." *Id.*

Second, even if any concrete, actionable "rule" were discernible, the new material also is not likely to change the Court's conclusion that Wolf failed to plausibly allege that Twitter was acting pursuant to a rule "*imposed* by the state." *Lugar*, 457 U.S. at 937 (emphasis added). This Court has explained that a rule is "imposed by the state" only when a state actor "empowered to compel" a private actor to act issues a "state dictate." MTD Order 7. Here, Wolf argues that the new material "links" Twitter's conduct to the CDC. But she does not, and cannot, argue that it plausibly shows the CDC "imposing" any rule on Twitter because she does not plausibly allege that the CDC is "empowered to compel" Twitter to remove content from its platform. Though Wolf asserts that the CDC employees are "executive branch officials" who had the "power to directly influence Twitter's actions," Mot. 6, she fails to explain what authority the CDC might have to "impose[]" any "state dictate" on Twitter regarding what content it hosts on its private platform. MTD Order 6-7. She has not pointed to any statute or regulation granting the CDC regulatory authority over online communications platforms such as Twitter.[2] And nothing in the newly submitted material indicates that anyone at the CDC understood that that agency had any power to compel Twitter to take any action with respect to the types of misinformation identified in those emails. None of the emails directed Twitter to take any action with respect to the identified categories of misinformation or purported to impose any rule that would require any such action. Therefore, as this Court already explained, "[t]hese circumstances are not at all comparable to those in *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963)," where "a state commission was empowered to compel a private book distributor from selling or supply certain books." *Id.* at 7.

---

[2] Numerous courts have recently construed the CDC's regulatory powers narrowly, in situations that were far closer to the CDC's public-health charter than regulating private-sector social media platforms. *See, e.g.*, *Tiger Lily, LLC v. United States Dep't of Hous. & Urban Dev.*, 992 F.3d 518, 522-523 (6th Cir. 2021) (holding that regulatory authority at issue was limited to the "'inspection, fumigation, disinfection, sanitation, pest extermination, [and] destruction'" of "infected animals or articles" found "'to be sources of dangerous infection to human beings.'" (quoting 42 U.S.C. § 264)); *accord Alabama Ass'n of Realtors v. United States Dep't of Health & Human Servs.*, 539 F. Supp. 3d 29, 38-39 (D.D.C. 2021); *State v. Becerra*, 544 F. Supp. 3d 1241, 1268 (M.D. Fla. 2021).

Indeed, far from supporting any inference that Twitter's editorial actions with respect to Wolf constituted rote implementation of a rule imposed by the federal government, the emails further confirm that Twitter's actions were governed by its own independent assessments in light of its own, *preexisting* editorial policies prohibiting misinformation about COVID-19. *See* MTD Order 6 ("The weakness of the state action theory in the amended complaint is further demonstrated by plaintiffs' own explanation of why their accounts were closed."); Twitter, *COVID-19 Misleading Information Policy*, Sprankling Decl. Ex. E (Dkt. 138-6). Where an alleged harm follows implementation of a private actor's own rule or policy, rather than a rule of decision imposed by the state, it is not caused by a rule imposed by the government. *See United States v. International Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. ACL-CIO*, 941 F.2d 1292, 1296 (2d Cir. 1991) (action pursuant to private agreement not state action). The emails on which Wolf relies show that Twitter independently "review[ed]" any Tweets the CDC identified pursuant to Twitter's own Rules. *See* Suppl. Street Decl. Exs. A, B, E. For example, in several instances, Twitter had already independently taken action against Tweets *before* they were identified by the CDC. *Id.* Exs. A, B. And to the extent the CDC employees' own emails expressly mentioned any prospective remedial action, it was only the posting, including by the CDC itself, of additional "contextual information" to "educat[e] the public." Street Decl. Ex. C at 9; *see also id.* Ex. A. The emails thus do not show that any of Twitter's challenged decisions, let alone its decision to suspend Wolf's account, was taken pursuant to a rule imposed by the government.

Wolf's other newly submitted material regarding meetings between Twitter and the federal government likewise fails to satisfy her pleading burden. Again, the material merely factually supports allegations in the amended complaint that the Court's decision necessarily deemed to be true and yet held did not plausibly indicate that Twitter's suspension of her account could be deemed state action. For example, the amended complaint alleged that "[t]he CDC has publicly stated that it works with 'social media partners,' including Twitter, to 'curb the spread of vaccine misinformation,'" and that the White House Press Secretary stated that "we are in regular touch with these social media platforms" about COVID-19. Am. Compl. ¶¶ 78, 96. The material Wolf proffers adds nothing of substance, as it too

simply reflects that Twitter employees and various governmental actors met to discuss issues of misinformation. *See* Suppl. Street Decl. Exs. C, D, F.

And none of this is legally significant:  Private actors are free to exercise their own "'*independent professional judgments*'" when determining what sources of information to credit, *Mathis v. Pacific Gas & Elec. Co.*, 891 F.2d 1429, 1432 (9th Cir. 1989); indeed, the First Amendment protects Twitter's "right to receive information and ideas," *Stanley v. Georgia*, 394 U.S. 557, 564 (1969), and to decide for itself what weight to give that information.  Evidence of meetings between Twitter and agency staff shows Twitter's exercise of its own right to decide for itself what information to receive and consider in connection with its editorial choices.  Therefore, as this Court already concluded, the occurrence of such meetings does nothing to support Wolf's failed state-action theory.

Moreover, the newly submitted material about such meetings shows only "high-level" discussions regarding advisories issued by the Surgeon General or general categories of information to "Be on the Lookout" for, *see* Suppl. Street Decl. Ex. C at 27-29,[3] and reports from Twitter to CDC staffers regarding its own independent policy changes and interventions, *id.* Ex. F.  They therefore show no "state dictate to Twitter" compelling any action whatsoever, let alone action with respect to Wolf in particular.  MTD Order 7.  And being asked about a different Twitter accountholder (not Wolf), Street Decl. Ex. D, at most shows governmental interest in Twitter's enforcement of its policies, not control over them.  That is precisely what this Court already held in holding that Plaintiff Trump's allegations that legislators' calls for the removal of his account in particular were not enough to state a First Amendment claim against Twitter.  *See* MTD Order 6-7; *see also O'Handley v. Padilla*, 579 F. Supp. 3d 1163 (N.D. Cal. 2022) (rejecting claim that Twitter's removal or labeling of plaintiff's Tweets and permanent suspension of plaintiff's account could be deemed state action even though, before all of those enforcement actions, a government official had sent Twitter a message specifically flagging one of the plaintiff's Tweets as containing what the official said was misinformation).  The newly submitted material thus fails to support a First Amendment claim against Twitter for the same reasons that the allegations in the amended complaint fell short: it "does not

---

[3] The CDC's slide decks from the "Be on the Lookout" meetings identify categories of misinformation without demanding any particular response.  *See* Street Decl. Ex. C.

plausibly show that [Wolf's] ostensible First Amendment injury was caused by a rule of conduct imposed by the government." MTD Order 6 (quotation marks omitted).

### B. The New Material Does Not Show That Twitter's Suspension Of Wolf's Account Can Be Deemed State Action

The newly submitted material fails to support Wolf's claim at the second prong as well. Though her motion does not clearly articulate her theory of state action, she appears to contend that the material supports her theory that Twitter is a state actor under the coercion and joint-action theories. *See* Mot. 6. The material supports neither.

1. The material does not show coercion. Though it reflects communications between Twitter and various executive-branch employees instead of Members of Congress, the communications are not coercive for the same reasons that this this Court already held the amended complaint insufficient to state a First Amendment claim against Twitter. As an initial matter, they include no coercive statements. *See* MTD Order 7 (noting that "any threatening remark directed to Twitter" was "conspicuously missing" from the amended complaint's allegations). As this Court held, coercion requires "a concrete and specific government action, or threatened action" compelling the challenged private decision. *Id.* at 11. Here, the CDC staffers' emails neither threatened nor even contemplated any adverse government action if Twitter did not act to somehow address the identified misinformation. And communications to Twitter employees about misinformation trends, and even questions posed to them about why someone else's account was still operative, *see* Street Decl. Ex. D, evince no coercion. In this regard, the newly proffered material falls even shorter than the already rejected allegations in the amended complaint. Whereas the amended complaint included "ambiguous and open-ended statements to the effect that 'we may legislate' something unfavorable to Twitter or the social media sector"—which this Court found "strikingly different" from cases where courts have found a private party engaged in state action, MTD Order 11— the new materials do not include any statements at all to the effect that the CDC would (or could) impose any penalty on Twitter for failing to act consistent with its employees' stated views.

In addition, the "plausibility" of any "threat" is even "further attenuate[d]" by Wolf's failure to identify any legal authority CDC employees could actually wield to affect Twitter's content-moderation

decisions. MTD Order 12 (holding that, despite Congress's authority to enact legislation governing social media companies like Twitter, "[t]he fact that enacting a bill is rarely fast or easy" meant that Plaintiffs could not plausibly allege that "comments voiced by a handful of members of Congress" rose to the level of coercion). As discussed, Wolf points to no basis for asserting that the CDC's statutory authority extends to regulation of social media companies. *See supra* p. 7. Absent "legal control over [Twitter's] actions," even "pressure" to remove specific content (which is absent from the CDC staffers' emails) does not amount to coercion. *Abu-Jamal v. National Pub. Radio*, 1997 WL 527349, at *6 (D.D.C. Aug. 21, 1997). As this Court already held, governmental actors are free to "urg[e]" private actors to take specific actions so long as not accompanied by any actual or threatened punishment. *See* MTD Order 12 (citing *Hammerhead Enters., Inc. v. Brezenoff*, 707 F.2d 33 (2d Cir. 1983)); *American Family Ass'n v. City & Cnty. of San Francisco*, 177 F.3d 1114 (9th Cir. 2002)). Nothing in the newly submitted material contains, references, or even hints at any actual or threatened punishment. Thus, for the reasons already held by this Court, the material cannot support a coercion theory because it does not show any governmental actor threatening any "concrete or specific government action" if Twitter failed to act, let alone a governmental actor that was "empowered to compel" Twitter to take any action. MTD Order 7, 11; *see also id.* at 8 (holding that statements "untethered to any substance that might have conveyed any threat or punishment tied to any specific action by Twitter" were "not enough to satisfy plaintiffs' pleading obligation").

And, as discussed above, the newly submitted material also further undermines any possible inference of coercion by showing that Twitter's content-moderation decisions were made based on its own independent review of any reported content in accordance with its own Rules. *See* MTD Order 6. As explained above (at p. 8), Twitter independently reviewed any content reported to it, Suppl. Street Decl. Exs. A, B; and any subsequent action by Twitter was taken pursuant to its own Rules, not any governmental command, *see id.* Ex. E. Because the communications left to Twitter the "free-will choice" whether or how to respond, they do not support Wolf's regurgitation of the same coercion theory of state-action this Court has rejected. *S.H.A.R.K. v. Metro Parks Serving Summit Cnty.*, 499 F.3d 553, 565 (6th Cir. 2007).

2. The newly submitted material also fails to support a joint-action theory of state action. That theory requires that "state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002) (quotation marks omitted). The governmental and private actors must have shared not just any common purpose or goal but specifically "the goal of violating a plaintiff's constitutional rights." *Id.* Joint action "requires a substantial degree of cooperative action," *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989), with respect to the "particular decision challenged," *Mathis v. Pacific Gas & Elec. Co.*, 75 F.3d 498, 503-504 n.4 (9th Cir. 1996), or a conspiracy between a private actor and the government specifically to violate the plaintiff's constitutional rights, *Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989).

Here, Wolf's newly submitted material shows neither. "[C]onsultation and information sharing" that might "facilitate" a subsequent private action does not make that action attributable to the government. *Mathis*, 75 F.3d at 504; *accord Lockhead v. Weinstein*, 24 F. App'x 805, 806 (9th Cir. 2001) ("mere furnishing of information" insufficient); *Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009); *Ginsberg v. Healey Car & Truck Leasing, Inc.*, 189 F.3d 268, 272 (2d Cir. 1999); *O'Handley*, 579 F. Supp. 3d at 1181-1182. As another judge in this district recently held, the government's "flagging" of particular content—even the plaintiff's content—constitutes the permissible "supplying [of] information" and does not support a joint action theory of state action. *O'Handley*, 579 F. Supp. 3d at 1180-1181.

Indeed, even if there were a basis to infer that a CDC employee asked Twitter remove Wolf's Tweet and that that request triggered Twitter's internal review and subsequent suspension of her account, that would still fail to give rise to a plausible inference of state action under binding precedent in this circuit. "A relationship of cause and effect between" the reporting of information between governmental and private actors and subsequent action "is not sufficient" to suggest state action. *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 783 (9th Cir. 2001). In *Radcliffe*, a business owner did not merely report information to the government but executed citizen-arrests of three union members for trespass in connection with the union members' activities at construction sites. *Id.* at 777-778. After the district attorneys' office declined to prosecute following the first two arrests, the business owner sought reconsideration directly with the district attorney, who said she would personally review the matter, and

the district attorney then prosecuted the arrested union members for criminal trespass. *Id.* at 778-779. Following their acquittal, the union members sued the business owner and state officials for false arrest and malicious prosecution. The Ninth Circuit held that the arrests and the district attorney's promise, at the business owner's request, to look into the matter were insufficient to show a "meeting of minds to violate [the plaintiffs'] constitutional rights," as required for there to be state action based on joint action. *Id.* at 783-784. The Ninth Circuit reasoned that if a report and subsequent action were enough, "every citizen who complained to a prosecutor would find himself in a conspiracy" to violate constitutional rights. *Id.* at 783. The same reasoning applies here. Mere information sharing regarding a matter of national significance is insufficient to convert private actions addressing that matter into state action.

## CONCLUSION

For the reasons stated, the Court should deny Plaintiff Wolf's Motion for an Indicative Ruling.

Dated:  September 19, 2022            Respectfully submitted,

/s/ *Patrick J. Carome*
PATRICK J. CAROME (*pro hac vice*)
patrick.carome@wilmerhale.com
ARI HOLTZBLATT (*pro hac vice*)
ari.holtzblatt@wilmerhale.com
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Telephone:  (202) 663-6000
Facsimile: (202) 663-6363

FELICIA H. ELLSWORTH (*pro hac vice*)
felicia.ellsworth@wilmerhale.com
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Facsimile: (617) 526-6000

THOMAS G. SPRANKLING
CA Bar No. 294831
thomas.sprankling@wilmerhale.com

WILMER CUTLER PICKERING
 HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6062
Facsimile: (650) 858-6100

*Attorneys for Defendants Twitter, Inc.
  and Jack Dorsey*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 19, 2022, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of these filings to all registered counsel.

Dated: September 19, 2022        By:    /s/*Patrick J. Carome*
                                        PATRICK J. CAROME