JOHN W. HOWARD (SBN 80200)
MICHELLE D. VOLK (SBN 217151)
JW Howard/ Attorneys, Ltd.
701 B Street Suite 1725
San Diego, CA 92101
Tel (619) 234-2842; Fax (619) 234-1716
Email: johnh@jwhowardattorneys.com
          michelle@jwhowardattorneys.com

Scott J. Street (SBN 258962)
JW HOWARD/ATTORNEYS, LTD.
201 South Lake Avenue, Suite 303
Pasadena, CA 91101
Tel.: (213) 205-2800
Email: sstreet@jwhowardattorneys.com

Attorneys for Plaintiff
DR. NAOMI WOLF

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD J. TRUMP, et al., | Case No. 3:21-cv-08378-JD |
| Plaintiffs, | Hon. James Donato |
| vs. | |
| TWITTER, INC., et al., | **REPLY BRIEF IN SUPPORT OF PLAINTIFF DR. NAOMI WOLF'S MOTION FOR INDICATIVE RULING UNDER FED. R. CIV. P. 60 BASED ON NEWLY DISCOVERED EVIDENCE** |
| Defendants. | |
| | Action Filed: July 7, 2021 |

///

///

///

Dr. Naomi Wolf submits the following reply brief in support of her motion for an indicative ruling under Rule 60 of the Federal Rules of Civil Procedure.

## I. INTRODUCTION

When they moved to dismiss the amended complaint, Twitter and its founder, Jack Dorsey (collectively "Twitter"), focused on the complaint's allegations that Twitter should be held liable as a state actor because Democratic Party legislators encouraged Twitter to ban certain viewpoints, even threatening to take adverse regulatory action if it did not do so. That made sense, as that was the focus of the amended complaint.

The newly discovered evidence supports a different theory: that executive branch officials worked directly with Twitter as part of a joint project to censor certain information that the executive branch did not want people discussing. Twitter did not say much about this theory before because the amended complaint did not say much about it; and for good reason, as other courts in this District have said that such allegations are, as a general matter, implausible.

Not anymore. The emails released last month show the "detailed interdependence" and "meeting of the minds" between state and private actors that courts have found sufficient to state a constitutional claim against a private party. With this evidence in hand, Dr. Wolf would file another complaint that alleges exactly what is necessary to survive a motion to dismiss under the state action doctrine.

Twitter knows that. Thus, it argues that the newly discovered emails merely show it consulting with executive branch officials as part of its independent editorial decision-making process about who and what to censor. But that is a factual argument that is not appropriate at this stage. And it may not be true. Indeed, it appears that executive branch officials were the ones who flagged Dr. Wolf for Twitter. Her account was disabled shortly after that, raising an inference that Twitter censored her because that is what the executive branch wanted and expected Twitter to do.

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

## II. ARGUMENT

The Court should indicate that it would consider granting Dr. Wolf relief from the judgment of dismissal as Twitter's brief shows that there are numerous factual issues that require further discovery and a decision on the merits.

**A. The Newly Discovered Emails Show Direct Coordination Between Executive Branch Officials and Twitter That Was Not Alleged Below.**

The primary basis for Dr. Wolf's motion is that the newly released emails show evidence of direct coordination between the executive branch and Twitter that, construed liberally in Dr. Wolf's favor, state a claim for joint state action.

This argument has merit. The close nexus and joint action tests are two of the four general tests that courts use to identify state action. *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 747 (9th Cir. 2020). They "may be satisfied where the court finds a sufficiently close nexus between the state and the private actor so that the action of the latter may be fairly treated as that of State itself, or where the State has so far insinuated itself into a position of interdependence with the private party that it was a joint participant in the enterprise." *Id.* at 748 (cleaned up). For example, in *Jensen v. Lane County*, 222 F.3d 570, 575 (9th Cir. 2000), the Ninth Circuit concluded that state action existed because a private doctor "and the County through its employees have undertaken a complex and deeply intertwined process of evaluating and detaining individuals who are believed to be mentally ill and a danger to themselves." Thus, the private doctor could potentially be a state actor under the close nexus or joint action theories. *Id.* at 575-76.

Similarly, in *Rawson*, the Ninth Circuit found that private health care workers could potentially be held liable as state actors because a "county prosecutor played an outsized role in the duration of [the plaintiff's] detention, particularly during the pendency of [his] jury trial …." 975 F.3d at 754. It reversed a grant of summary judgment for the private parties. *Id.* at 757. In *Howerton v. Gabica*, 708 F.2d 380, 385

(9th Cir. 1983), the Ninth Circuit found joint action between a landlord and police officers based on their joint and repeated efforts to evict one of the landlord's tenants. And in *Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320, 1322 (9th Cir. 1982), the Ninth Circuit found a private towing company to be a state actor when it acts "at the behest of a police officer …."

The newly discovered emails show this type of coordinated action performed by a private party (Twitter) for government officials (the executive branch of the United States government) to support the government's preferred message. For example, one of the earliest emails that has been released—from April 16, 2021—was sent between White House officials and Twitter executives and stated that "White House Staff will be briefed by Twitter on vaccine misinfo … and ways the White House (and our COVID experts) can partner in product work." ECF 180, at p. 37. A *partnership* between Twitter and the executive branch about identifying and censoring certain information is the type of explicit coordination that the Ninth Circuit said could satisfy the state action doctrine in *Rawson*, *Jensen*, *Howerton* and *Goichman*, among other cases.

The Facebook cases that Twitter relied on before do not change that possibility. In *Children's Health Defense v. Facebook, Inc.*, 546 F. Supp. 3d 909, 930 (N.D. Cal. 2021), the court dismissed the complaint in part because it had not "alleged that the government was actually involved in the decisions to label CHD's posts as 'false' or 'misleading,' the decision to put the warning label on CHD's Facebook page, or the decisions to 'demonetize' or 'shadow-ban." By contrast, the newly discovered emails show that executive branch officials were involved in Twitter's decision to censor and ban Dr. Wolf; indeed, executive branch officials appear to have been the ones who flagged Dr. Wolf's account for Twitter, in response to Twitter's request that the government officials identify "problematic content" for it to remove. Dkt. 177, at p. 6; *see also* Dkt. 180, at p. 34 (showing that it was CDC and Census officials who

JW HOWARD/ ATTORNEYS, LTD.
701 B STREET, SUITE 1725
SAN DIEGO, CALIFORNIA 92101

identified vaccine shedding as something Twitter should censor).

Similarly, in *Federal Agency of News, LLC v. Facebook, Inc.*, 432 F. Supp. 3d 1107, 1126 (N.D. Cal. 2020), the court focused on allegations that Facebook provided information about the plaintiffs' account to the government and dismissed the complaint because "case law is unequivocal that supplying information to the government alone does not amount to joint action." The situation here is far different. Twitter did not simply supply information to the government. And it did not merely consult public health officials for advice, like a student would consult an encyclopedia. Twitter appears to have participated in a project with the executive branch of the federal government to identify and censor alleged misinformation about the COVID-19 vaccines. The government determined what topics this partnership would focus on. Dkt. 180, at p. 34. The government suggested people, including Dr. Wolf, to censor for saying the wrong things. Dkt. 177, at p. 6.

In another case involving Twitter, the plaintiff (O'Handley) alleged that the company engaged in a conspiracy with California government officials to censor conservative viewpoints about the 2020 election. *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1172 (N.D. Cal. 2022). Twitter argued that it suspended O'Handley's account for violating its "Civic Integrity Policy, which prohibits the posting of 'false or misleading information intended to undermine public confidence in an election or other civic process.'" *Id.* Mr. O'Handley argued that Twitter should be held liable as a state actor under the joint action test, but his complaint identified only "a single [government] message to Twitter, flagging a single O'Handley tweet." *Id.* The single message was sent in November 2020 and the complaint did "not allege that there was any further communication between Twitter and the government about the tweet, or about any other O'Handley tweets—including the February 2021 tweet that prompted Twitter to permanent suspend O'Handley's account for violating its Civic Integrity Policy." *Id.* at 1180-81.

The district court concluded that "the one-off, one-way communication here does not reflect 'substantial cooperation'" or the "exercise of coercive power" that can satisfy the joint action test. *Id.* at 1181. The complaint that Dr. Wolf would file, based on the newly discovered evidence released in August, does show these things.

Twitter contends that, although executive branch officials flagged the issue Dr. Wolf was discussing (and Dr. Wolf herself) for Twitter, it must have made an independent editorial decision to censor her, something it contends it had the right to do. But the Ninth Circuit rejected a similar argument in *Jensen*. 222 F.3d at 575-76. And the Fifth Circuit Court of Appeals just rejected the argument that social media companies have a First Amendment right to censor people on their platforms. *NetChoice, L.L.C. v. Paxton*, ___ F.4th ___, 2022 WL 4285917, at *16 (5th Cir. Sept. 16, 2022). Moreover, unlike in *O'Handley*, nobody knows if Twitter made an independent editorial decision to censor and then ban Dr. Wolf because no discovery has been done yet.

Indeed, the newly discovered emails suggest otherwise. For instance, on April 8, 2021, a Twitter employee sent an email to a CDC employee asking for examples of "problematic content" to address. Dkt. 180, at p. 35. The CDC official responded that the government would "get that to you early next week." *Id.* Then, on April 14, the CDC official sent the Twitter employee four topics that the Census Bureau had identified in response to Twitter's inquiry. *Id.* at p. 34. The Twitter employee responded less than two days later to say thanks and to tell the executive branch official that Twitter had "actioned (by labeling or removing) the Tweets in violation of our Rules …." *Id.*

This sequence of events—Twitter asks the executive branch to tell it what to censor, it waits and does nothing, the government responds with categories of information, then Twitter censors that information—strongly suggests that Twitter did not exercise its independent judgment but relied on the executive branch when it

censored alleged vaccine misinformation, including Dr. Wolf's tweets.

There is another important distinction between this case and *O'Handley* that affects this analysis. The district court there found "ample evidence" that Twitter, not the government, decided what content to remove. For example, a Twitter "spreadsheet reflects that when Twitter responded to [the government] about its reports, it described its decision of whether to remove a post, or take no action on it, by referencing its own interpretation of its own Rules. *O'Handley*, 579 F. Supp. 3d at 1183. And, critically, the Twitter spreadsheet did "not show, and the Complaint does not allege, that Twitter consulted or conferred with the government on content decisions." *Id.* That is exactly what the newly discovered evidence shows. The district court also made much of the fact "that Twitter took no action on [government]-reported content in about one-third of the instances of alleged misinformation listed." *Id.* The newly discovered evidence shows that Twitter took down every tweet about certain vaccine-related topics that the executive branch officials said they should take down. Dkt. 180, at p. 34.

Furthermore, unlike Trump and O'Handley, Twitter has not identified an *independent* company policy that Dr. Wolf violated. The only policy it contends she violated was Twitter's prohibition on vaccine "misinformation." That is the problem. The emails released last month show that, unlike the Civic Integrity Project, Twitter relied entirely on the executive branch of the federal government to decide what was, or was not, vaccine "misinformation" during 2021. That shows the consultation and reliance that was missing in *O'Handley*. As in *Jensen* and *Rawson*, Dr. Wolf deserves the chance to gather more evidence and prove that executive branch officials played an outsized, if not dispositive, role in Twitter's decision to censor and then ban her from its platform.

**B. The Emails Also Demonstrate the Type of Encouragement that Courts Have Found to Turn Private Action into State Action.**

The newly discovered emails also show evidence sufficient to state a claim

under the governmental compulsion or coercion doctrine.

"Governmental compulsion or coercion may exist where the State 'has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'" *Rawson*, 975 F.3d at 748 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). The Ninth Circuit discussed this state action test in *Mathis v. Pacific Gas & Electric Company*, 891 F.2d 1429 (9th Cir. 1989) ("*Mathis I*"). It stated that "there is no state, or federal, action unless the transfer or discharge is made on the basis of some rule of decision for which the State is responsible." *Id.* at 1432 (quotations omitted). But the court acknowledged that this is not an easy question to answer. "Determining whether a private party is a governmental actor … is a 'necessarily fact-bound inquiry.'" *Id.* (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 939 (1982)). Mr. Mathis provided some evidence of government coercion, leading the Ninth Circuit to conclude that "we cannot agree with the conclusion that Mathis' allegations of governmental coercion or encouragement are frivolous or wholly without merit." *Id.* at 1433-34. Thus, the court reversed the trial court's dismissal of the claim. *Id.* at 1434.[1]

The newly discovered emails provide at least as much support for a state action argument under the government compulsion doctrine here as in *Mathis I*. Indeed, the evidence that Dr. Wolf has now marshalled, construed liberally in her favor, shows the type of direct and significant encouragement that Judge Illston said might satisfy the government compulsion test. *Children's Health Defense*, 546 F. Supp. 3d at 932-33. They suggest that Twitter censored and banned Dr. Wolf because the executive branch

---

[1] Mr. Mathis did get the chance to do discovery, but the Ninth Circuit ruled that the evidence he presented was insufficient under the state action doctrine and that PG&E should have been granted judgment as a matter of law during the trial. *Mathis v. Pac. Gas & Elec. Co.*, 75 F.3d 498, 502-03 (9th Cir, 1996) ("*Mathis II*").

told it to. That is the "rule of decision" supplied by the government that satisfies the government compulsion test, at least at the pleading stage.

Furthermore, while the Court wisely recognized the slippery slope that would come from finding that private companies are state actors when they allegedly act in response to statements from individual legislators, the newly discovered emails involve the executive branch. Unlike legislators, executive branch officials have direct regulatory authority over companies like Twitter. Without further discovery, nobody can say to what extent the executive branch officials used that authority, or the threat of that authority, here.

**C. Dr. Wolf Acted Diligently in Raising These Important Issues.**

Finally, there is no merit to Twitter's argument—made in a footnote—that Dr. Wolf did not exercise reasonable diligence in bringing the newly discovered emails to the Court's attention.

A party may obtain relief from judgment based on "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b) …." Fed. R. Civ. P. 60(b)(2). A motion for a new trial must be brought within 28 days of the entry of judgment. Fed. R. Civ. P. 59(b). The Court entered judgment in this case on June 7, 2022. ECF 168. The evidence that Dr. Wolf would base her Rule 60 motion on was not released until August 2022. ECF 177, 180. Thus, Dr. Wolf could not have brought it to the Court's attention in June, the relevant period for deciding whether she acted with reasonable diligence.

The "public records" cases that Twitter cited do not show otherwise. *Goldstein v. Treasury Inspector General for Tax Administration*, 278 F. Supp. 3d 131, 135 (D.D.C. 2017), discussed requests that the plaintiff made under the Freedom of Information Act (FOIA) primarily because the entire case was based on the government's "response to [the plaintiff's] request for records collected and created during a [government] investigation of certain Internal Revenue Service employees."

The court did not establish a rule that every litigant in civil litigation must seek documents through parallel FOIA requests in case they find something important to use in a lawsuit, nor did it state that a litigant must do that to exercise reasonable diligence under Rule 60(b). Moreover, the plaintiff in *Goldstein* knew generally about the newly discovered evidence before the entry of judgment but did not do anything about it until after the period for requesting a new trial. *Id.* at 139. The court still found that he acted with reasonable diligence and that the evidence could satisfy Rule 60(b)(2) (though it denied the motion for other reasons). That reasoning supports Dr. Wolf's position.

Similarly, in *Arch Insurance Company v. FTR International Inc.*, No. 12-cv-2544 JFW-RNB, 2013 WL 12173916, at *4 (C.D. Cal. May 31, 2013), the court concluded "that substantially all of the alleged 'new' evidence was either available to Defendants prior to the Court's ruling on the motion for summary judgment, or could have been obtained by Defendants prior to the Court's ruling on the motion for summary judgment if Defendants had exercised reasonable diligence." But that case was filed in March 2012 and had been pending for more than a year when the court granted summary judgment. Dr. Wolf did not join this case until December 2021, just a few months before the Court dismissed it and before any discovery had been done. Dkt. 177.

Finally, although Twitter did not address this point, the newly discovered evidence is of such magnitude that it likely would have changed the Court's decision to dismiss the First Amendment claims, at least as to Dr. Wolf. After all, the Court focused on the amended complaint's allegations about statements made by legislators. It described the complaint's "cursory mention of state 'encouragement' (through Section 230(c)) and 'joint action'" as "minor variations on the state action theme" that were not alleged with any detail. Dkt. 165, at p. 13. They can be alleged in detail now, based on Twitter's own emails and other evidence.

**D. Dr. Wolf Should Be Allowed to File Her Own Complaint.**

There are good reasons for courts to exercise caution when deciding whether a private party should be held liable as a state actor. But that caution should be checked when in the First Amendment setting. "The right to think is the beginning of freedom, and speech must be protected from the government because speech is the beginning of thought." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002). Nobody contends that executive branch officials could have ordered Twitter to censor and ban Dr. Wolf for talking about things they did not want discussed. But that should not, and under the Supreme Court's state action tests does not, end the inquiry.

Dr. Wolf's situation may seem trivial to Twitter. It isn't. She is a writer. She is a reporter. She runs a civic tech company. Her ability to communicate with people, and to run her business, depends on her access to platforms like Twitter. All she asks, at this stage, is for the chance to file her own complaint, based on the newly discovered evidence that was released last month, and for a fair opportunity to litigate her claims on their merits.

**IV. CONCLUSION**

For the foregoing reasons, Dr. Wolf respectfully requests that the Court indicate that it would consider granting relief to Dr. Wolf under Rule 60(b)(2).

DATED: September 23, 2022            JW HOWARD/ATTORNEYS, LTD.

By: _____/s/ Scott J. Street_____
Scott J. Street
Attorneys for Plaintiff
DR. NAOMI WOLF

**Certificate of Service**

I, the undersigned, do declare that I am employed in the county aforesaid, that I am over the age of [18] years and not a party to the within entitled action; and that I am executing this proof at the direction of the member of the bar of the above entitled Court. The business address is:

JW Howard Attorneys LTD
701 B Street, Ste. 1725
San Diego, California 92101

☐   MAIL. I am readily familiar with the business' practice for collection and processing of correspondence for mailing via the United States Postal Service and that the correspondence would be deposited with the United States Postal Service for collections that same day.

■   ELECTRONIC. I am readily familiar with the business' practice for collection and processing of documents via electronic system and said documents were successfully transmitted via Court's transmission that same day.

On the date indicated below, I served the within:

**REPLY BRIEF IN SUPPORT OF PLAINTIFF DR. NAOMI WOLF'S MOTION FOR INDICATIVE RULING UNDER FED. R. CIV. P. 60 BASED ON NEWLY DISCOVERED EVIDENCE**

TO:

| | |
|---|---|
| John P. Coale: johnpcoale@aol.com | Peter W. Homer: PHomer@homerbonner.com |
| Andrei Dan Popovici: andrei@apatent.com | Ari Holtzblatt: ari.holtzblatt@wilmerhale.com |
| Frank C. Dudenhefer, Jr.: fedlaw@aol.com | Felicia Ellsworth: felicia.ellsworth@wilmerhale.com |
| John Q. Kelly: jqkelly@ibolaw.com | Patrick J. Carome: Patrick.carome@wilmerhale.com |
| Marie L. Fiala: marie@apatent.com | Thomas G. Sprankling: Thomas.sprankling@wilmerhale.com |
| Michael J. Jones: mjones@ibolaw.com | Joshua Kolsky: Joshua.kolsky@usdoj.gov |
| Richard Polk Lawson: rlawson@gardnerbrewer.com | Indraneel Sur: indraneel.sur@usdoj.gov |
| Rowland A. Paul: rpaul@ibolaw.com | |

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct and was *EXECUTED* on September 23, 2022, at San Diego, CA.

_____/s/ Dayna Dang_____
Dayna Dang, Paralegal
dayna@jwhowardattorneys.com

1

REPLY BRIEF                                                         CASE NO. 20-CV-09300-AGT