| | |
|---|---|
| JOHN P. COALE *(pro hac vice)*<br>2901 Fessenden Street NW<br>Washington, DC 20008<br>Telephone: (202) 255-2096<br>Email: johnpcoale@aol.com | ANDREI D. POPOVICI (SBN 234820)<br>MARIE L. FIALA (SBN 79676)<br>LAW OFFICE OF ANDREI D. POPOVICI, P.C.<br>2121 North California Blvd. Suite 290<br>Walnut Creek, CA 94596<br>Telephone: (650) 530-9989<br>Email: andrei@apatent.com<br>Email: marie@apatent.com |
| JOHN Q. KELLY *(pro hac vice)*<br>FERGUSON COHEN LLP<br>25 Field Point Road<br>Greenwich, CT 06830<br>Tel: (203) 661-1197<br>Email: jqkelly@fercolaw.com | FRANK C. DUDENHEFER, JR. *(pro hac vice)*<br>THE DUDENHEFER LAW FIRM, LLC<br>2721 Saint Charles Avenue, Suite 2A<br>New Orleans, LA 70130<br>Telephone: (504) 616-5226<br>Email: fcdlaw@aol.com |
| MICHAEL J. JONES *(pro hac vice)*<br>RYAN TOUGIAS *(pro hac vice)*<br>IVEY, BARNUM & O'MARA, LLC<br>170 Mason Street<br>Greenwich, CT 06830<br>Telephone: (203) 661-6000<br>Email: mjones@ibolaw.com<br>Email: rtougias@ibolaw.com | RICHARD POLK LAWSON *(pro hac vice)*<br>GARDNER BREWER HUDSON<br>400 North Ashley Drive<br>Suite 1100<br>Tampa, FL 33602<br>Telephone: (813) 221-9600<br>Email: rlawson@gardnerbrewer.com |

*Attorneys for Plaintiffs Donald J. Trump, American Conservative Union, Rafael Barbosa, Linda Cuadros, Dominick Latella, and Wayne Allyn Root*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| DONALD J. TRUMP, et al.,<br><br>          Plaintiffs,<br>   v.<br><br>TWITTER, INC. et al.,<br><br>          Defendants. | Case No: 21-cv-08378-JD<br><br>**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR INDICATIVE RULING**<br><br>Hon. James Donato |

# **TABLE OF CONTENTS**

I.	INTRODUCTION ........................................................................................................... 1

II.	ARGUMENT .................................................................................................................. 1

   A.	Assessed Against the Correct Legal Standard, the New Evidence Supports Granting This Motion. .......................................................................................................... 1

   B.	Plaintiffs' Motion Provides Sufficient Evidence to Justify Relief from the Judgment. ... 3

     1.	Defendants Invite This Court to Engage in Impermissible Fact-Finding. ..................... 3

     2.	The *Lugar* Test Is Not Dispositive. ............................................................................. 5

   C.	Defendants' Voluntary Cessation Does Not Moot This Case. ....................................... 6

     1.	Voluntary Cessation .................................................................................................... 6

     2.	Capable of Repetition Yet Evading Review ............................................................... 9

III.	CONCLUSION ............................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**

*Already, LLC v. Nike, Inc.,* 568 U.S. 85 (2013) .................................................................................. 7

*Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147 (9th Cir. 2019) ................ 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................................ 2, 3

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................ 2, 3

*Brach v. Newsom*, 6 F.4th 904 (9th Cir. 2021) ................................................................................ 6

*Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001) ....... 5, 6

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982) ..................................................... 6

*Costal Transfer Co. v. Toyota Motor Sales*, 833 F.2d 208 (9th Cir. 1987) ..................................... 2

*Daniel F v. California Physicians' Service*, No. C. 09-2037 PJH, 2009 WL 2581303 (N.D. Cal. Aug. 20 2009) ............................................................................................................................. 3

*Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082 (9th Cir. 2003) ......................................... 2

*Fikre v. FBI*, 904 F.3d 1033 (9th Cir. 2018) .................................................................................... 7

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167 (2000) .................... 6

*Housing Rights Ctr., Inc. v. Moskowitz*, No. CV 04-2266 PA, 2004 WL 3738293 (C.D. Cal. Sept. 20, 2004) .................................................................................................................................... 3

*In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104 (9th Cir. 2013) ......................................... 2

*Jackson v. Metropolitan Edison Co.*, 419 U.S. 345 (1991) ............................................................. 6

*Jones v. Aero/Chem Corp.*, 921 F.2d 875 (9th Cir. 1990) ............................................................... 2

*Keates v. Koile*, 883 F.3d 1228 (9th Cir. 2018) .............................................................................. 2

*Knox v. Serv. Emps. Int'l Union Local 1000*, 567 U.S. 298 (2012) ................................................ 6

*Lee v. Katz*, 276 F.3d 550 (9th Cir. 2002) ....................................................................................... 5

*Lugar v. Edmondson Oil Company, Inc.*, 457 U.S. 922 (1982) ................................................... 5, 6

*Maicel v. Cate*, 731 F.3d 928 (9th Cir. 2013) ................................................................................. 9

*McCormack v. Herzog*, 788 F.3d 1017 (9th Cir. 2015) .................................................................. 7

*Native Vill. of Nuiqsut v. BLM*, 9 F.4th 1201 (9th Cir. 2021) ......................................................... 9

*Pasadena Republican Club v. W. Justice Ctr.*, 985 F.3d 1161 (9th Cir. 2021) ............................... 5

*Prosterman, et al., v. Am. Airlines, Inc.,* No. 16-cv-02017-MMC, 2017 WL 6759412 (N.D. Cal. Oct. 5, 2017) ............................................................................................................................... 2

*Rok v. Indentiv, Inc.*, No. 15-cv-05775-CRB, 2018 WL 807147 (N.D. Cal. Feb. 9, 2018) ............. 2

*Rosebrock v. Mathis*, 745 F.3d 963 (9th Cir. 2014) ........................................................................ 6

*Rosen v. Amazon.com, Inc.,* No. CV 14-2115 ABC, 2014 WL 12597073 (C.D. Cal. May 28, 2014) ........................................................................................................................................... 3

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) .................................................................................... 2

*Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, 31 F.4th 1124 (9th Cir. 2022) ................................. 2

*Walker v. City of Fresno*, No. 1:09-cv-1667-OWW-SKO, 2010 WL 3341861 (E.D. Cal. Aug. 23, 2010) .................................................................................................................................... 3

*Wall v. Wade*, 741 F.3d 492 (4th Cir. 2014) ............................................................................. 6, 7

**Rules**

Fed. R. Civ. P. 12 ..................................................................................................................... 2, 3

Fed. R. Civ. P. 60 ..................................................................................................................... 1, 2

**Other Authorities**

Wilson R. Huhn, *The State Action Doctrine and the Principle of Democratic Choice*, 34 Hofstra L. Rev. 1379 (2006) .................................................................................................................. 5

Elon Musk (@elonmusk), Twitter (Dec. 15, 2022, 11:33 PM). https://twitter.com/elonmusk/status/1603609278664712192?lang=en ...................................... 8

Elon Musk (@elonmusk), Twitter (May 13, 2023, 12:27 PM) https://twitter.com/elonmusk/status/1657422401754259461 ..................................................... 9

Matt Novak, *Twitter Blocks Content In Turkey One Day Before National Election*, Forbes (May 13, 2023) https://tinyl.io/8ntC .................................................................................................. 7

Twitter Global Government Affairs (@GlobalAffairs), Twitter (May 12, 2023, 11:00 P.M.) https://twitter.com/GlobalAffairs/status/1657219168863756288 ............................................... 9

## I. INTRODUCTION

In dismissing Plaintiffs' First Amended Complaint ("FAC"), this Court held that the FAC did not plausibly allege a First Amendment claim against Twitter.  Order Re: Mot. to Dismiss, ECF 165 ("Order").  Plaintiffs' Motion for Indicative Ruling ("Motion"), ECF 191, provides this Court with overwhelming evidence, newly disclosed by Twitter, that if discovered and included in an amended complaint prior to this Court's Judgment, J. 1, ECF 168, would have required denying Defendants' Motion to Dismiss.  The new evidence, taken together with the facts alleged in the FAC, leave no doubt that:  (1) Twitter closely partnered with federal officials to identify and censor disfavored content; (2) federal officials pressured, harangued, cajoled, and incented Twitter to comply with these officials' preferred content moderation outcomes; and (3) the content moderation decision for each particular Plaintiff was made pursuant to the government's pervasive influence over Twitter's content moderation decisions.

In Defendants' Opposition to this Motion, ECF 195 ("Def. Opp."), Defendants contest the significance of the newly disclosed evidence and argue that Plaintiffs have failed to prove state action.  While this argument might be raised by a motion for summary judgment or at trial, it is entirely inappropriate here.  Plaintiffs need not prove state action at this stage, only sufficiently allege facts from which a reasonable fact finder could find that Twitter's content moderation decisions should be treated as involving government coercion, encouragement, or joint action with Twitter.

Twitter further argues that the case is moot as to Plaintiffs Trump, Cuadros, and Root, and buttress this assertion with a perplexing assertion that Plaintiffs failed to preserve counterarguments to mootness before Defendants raised the mootness issue.  Of course, the counterarguments to mootness have not been waived, nor forfeited, and they apply here.

## II. ARGUMENT

### A. Assessed Against the Correct Legal Standard, the New Evidence Supports Granting This Motion.

Relief from judgment based on newly discovered evidence is warranted whenever:  (1) the evidence relied upon is newly discovered within the meaning in Fed. R. Civ. P. 60(b)(2); (2) the

moving party exercised due diligence; and (3) the evidence is of "such magnitude that production of it earlier would have been likely to change **the disposition of the case**." *Feature Realty, Inc. v. City of Spokane*, 331 F.3d 1082, 1093 (9th Cir. 2003) (emphasis added); *Costal Transfer Co. v. Toyota Motor Sales*, 833 F.2d 208, 211 (9th Cir. 1987). Defendants only dispute the third factor. Def. Opp. at 1, 4.[1]

Where a Rule 60(b) motion is brought following a dismissal, a plaintiff must show "that the newly discovered evidence would 'cure the deficiencies identified by the Court in its order dismissing [the complaint].'" *Rok v. Indentiv, Inc.*, No. 15-cv-05775-CRB, 2018 WL 807147, at *2 (N.D. Cal. Feb. 9, 2018) (quoting *Prosterman, et al., v. Am. Airlines, Inc.,* No. 16-cv-02017-MMC, 2017 WL 6759412, at *2 (N.D. Cal. Oct. 5, 2017)) (alterations in original). Put another way "the newly discovered evidence, if alleged in a Second Amended Complaint, [must] be sufficient to defeat a motion to dismiss." *Prosterman*, 2017 WL 6759412, at *3.

Properly framed, the new evidence offered in support of Rule 60(b) motion for relief from a dismissal must merely survive an *Iqbal* and *Twombly* analysis. Taken together with the facts alleged in the FAC, the newly discovered evidence must merely "state a claim to relief that is plausible on its face," provided the court "accept[s] as true all of the allegations contained" therein. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *See also In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1107 (9th Cir. 2013) ("[T]he complaint's allegations must now suggest that the claim has at least a plausible chance of success."). A plausible claim is one that "raise[s] the right to relief . . . above the speculative level," even if "it appears 'that recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555-56 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Furthermore, on a Rule 12(b)(6) motion, all well-pleaded allegations of material fact are construed most favorably to the plaintiff. *See Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018).

---

[1] Notably, neither of the cases Defendants cite for their proposed legal standard contemplate a dismissal. Def. Opp. at 1, 4. *See Trendsettah USA, Inc. v. Swisher Int'l, Inc.*, 31 F.4th 1124, 1136 (9th Cir. 2022); *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 878 (9th Cir. 1990).

PLAINTIFFS' REPLY ISO
MOTION FOR INDICATIVE RULING— 2                                              Case No: 21-cv-08378-JD

**B.      Plaintiffs' Motion Provides Sufficient Evidence to Justify Relief from the Judgment.**

Defendants argue that this Court should deny this Motion because Plaintiffs failed to satisfy both prongs of the *Lugar* test. Def. Opp. 4-13. This assertion is misguided for two reasons: (1) it invites the Court to engage in impermissible fact-finding on the merits; and (3) the *Lugar* test is not dispositive.

**1.      Defendants Invite This Court to Engage in Impermissible Fact-Finding.**

Defendants urge this Court to engage in impermissible fact-finding. As stated above, the newly discovered evidence, taken together with the facts asserted in the FAC, need only survive an *Iqbal* and *Twombly* analysis. It is well settled that merits arguments are not appropriate at the motion to dismiss stage. *See, e.g., Daniel F v. California Physicians' Service*, No. C. 09-2037 PJH, 2009 WL 2581303, at *6 (N.D. Cal. Aug. 20 2009) ("[A] motion under Rule 12(b)(6) is not the proper vehicle for seeking a ruling on the merits of the claims."); *Walker v. City of Fresno*, No. 1:09-cv-1667-OWW-SKO, 2010 WL 3341861, at *4 (E.D. Cal. Aug. 23, 2010) ("The substantive merit of the complaint or cause of action is not a relevant inquiry in the context of a Rule 12(b)(6) motion to dismiss."); *Housing Rights Ctr., Inc. v. Moskowitz*, No. CV 04-2266 PA, 2004 WL 3738293, at *6 (C.D. Cal. Sept. 20, 2004) (motion to dismiss is not the vehicle by which "defendants can attack the truth of plaintiffs' allegations and point to the lack of evidentiary support for such allegations"); *Rosen v. Amazon.com, Inc.,* No. CV 14-2115 ABC, 2014 WL 12597073, at *1 (C.D. Cal. May 28, 2014).

Moreover, Defendants cite additional testimony from the Elvis Chan deposition that was not raised in Motion, Def. Opp. at 5:8, 5:21, 7:15, 10:6, and 10:19; and make merit-based arguments as to the interpretation of Plaintiffs' newly discovered evidence, Def. Opp. at 7:6-7, 7:10-13, 9:19-22, 10:4-8, 10:17-19, 10:21-27.

Rather than burdening the Court with a point-by-point refutation of Defendants' merits arguments, Plaintiffs simply observe that the Motion contains an abundance of evidence from which a trier of fact could find state action, to wit:

- Twitter and Government officials developed a formal system for coordinating and

PLAINTIFFS' REPLY ISO
MOTION FOR INDICATIVE RULING— 3                                         Case No: 21-cv-08378-JD

processing censorship requests, including weekly meetings between Twitter executives and federal law enforcement and intelligence agents. (Declaration of Richard P. Lawson ("Lawson Decl.") (Dkt. 191-2) ¶¶ 28, 51).

- Twitter itself described its interactions with the FBI and DHS as "partnerships." (*Id.* ¶ 31).
- Designated FBI teams performed keyword searches for users' "violations" of Twitter's policies and fed those results to Twitter. (*Id.* ¶ 45).
- Government agencies identified hundreds of accounts that "warrant further action"; Twitter regularly deleted these accounts and reported its compliance to its government overseers. (*Id.* ¶¶ 44, 51).
- The White House also regularly provided Twitter its censorship requests; at one such meeting, "[t]he Biden team was not satisfied with Twitter's enforcement approach as they wanted Twitter to do more and to deplatform several accounts. . . . They were very angry in nature." (*Id.* ¶ 61).
- Twitter's General Counsel's office was "happy to report" that the FBI paid the company $3.4 million for its cooperation in a single 16-month period. (*Id.* ¶ 48).
- These censorship efforts were targeted specifically at Plaintiff Trump's account, among others. (*Id.* ¶¶ 26, 63, 69).
- The U.S. Government demanded the suspension of a quarter million accounts. (*Id.* ¶ 19).

This Court held that Plaintiffs failed to show state action, in large part because, in the Court's view, threatening statements by legislators were insufficient to show action in the absence of similar pressure from executive branch law enforcement agencies. Order at 6:9-18; 7:14-8:19,11:18-12:10. The newly disclosed evidence clearly shows that Twitter's content moderation decisions were made jointly with, and at times under the command of, numerous executive agencies, including law enforcement and intelligence agencies like the FBI, NSA, and Department of Homeland Security. Taken together with the enumerated allegations of censorship

to each Plaintiff and unnamed putative class members throughout Plaintiffs' FAC,[2] a reasonable fact finder could easily find that Twitter was a state actor when it suspended plaintiffs' accounts.

## 2. The *Lugar* Test Is Not Dispositive.

Within 20 years of issuing its opinion in *Lugar v. Edmondson Oil Company, Inc.*, 457 U.S. 922 (1982), the Supreme Court distanced itself from the holding, issuing a new multi-factor state action test in *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288 (2001). Under *Brentwood* a private party's conduct becomes state action when it "[1] results from the state's exercise of 'coercive power,' [2] when the state provides 'significant encouragement, either overt or covert,' **or** [3] when a private actor operates as a 'willful participant in joint activity'" with the Government. 531 U.S. at 296 (citations omitted) (emphasis added). These three factors are disjunctive – each sufficient to satisfy a finding of state action by a private party. *Id.* at 302 (explaining that a finding of state action under the "entwinement" theory was "in no sense unsettled merely because other criteria of state action may not be satisfied by the same facts."). *See also* Wilson R. Huhn, *The State Action Doctrine and the Principle of Democratic Choice*, 34 Hofstra L. Rev. 1379, 1391-92 (2006). No longer must a plaintiff allege that the challenged conduct was taken pursuant to a government policy or rule of conduct; the state's impermissible entanglement can consist solely of "winks and nods." *Brentwood*, 531 U.S. at 301. The Ninth Circuit has affirmatively acknowledged that each test under *Brentwood* is disjunctive, and that the failure to meet any one test is not dispositive of state action. *Lee v. Katz*, 276 F.3d 550, 554 (9th Cir. 2002); *see also Pasadena Republican Club v. W. Justice Ctr.*, 985 F.3d 1161, 1167 (9th Cir. 2021) ("[s]atisfaction of any one [*Brentwood*] test is sufficient to find state action.") (citations omitted).

The core of the *Brentwood* analysis asks whether "there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" 531 U.S. at 295 (quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1991). *Brentwood* made no mention of *Lugar's* "rule of conduct" requirement and the

---

[2] *See* FAC ¶¶ 6, 9-10, 12, 18, 51-55, 60-61, 74-79, 87-92, 94, 96-98, 100, 110-11, 113-17, 121-124, 128-29, 135-37, 142, 145-46, 150, 152-155, 175-76, 178-183, 185, 189, 204.

1  Supreme Court has never applied that test since *Brentwood*. Plaintiffs' claim must survive
2  dismissal if a reasonable person could conclude, based on the newly proffered evidence, that
3  Defendants' actions are fairly attributable to the state. Defendants' suggestion that Plaintiffs
4  failed to satisfy the two prongs of the *Lugar* test is neither dispositive nor material.

### C.  Defendants' Voluntary Cessation Does Not Moot This Case.

Defendants' arguments regarding mootness strain credulity. First, Defendants have failed to meet their heavy burden of showing that the voluntary cessation doctrine does not apply. Second, Defendants mischaracterize Plaintiffs' obligation to raise a *capable-of-repetition-yet-evading-review* exception to mootness. And third, Defendants completely ignore the clear evidence of that exception's applicability which occurred only 12 days after this Motion was filed.

#### 1.  Voluntary Cessation

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). *See also Knox v. Serv. Emps. Int'l Union Local 1000*, 567 U.S. 298, 307 (2012) ("The voluntary cessation of challenged conduct does not render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed.").

Voluntary cessation of a challenged practice can only yield mootness *if a "stringent" standard is met*: "A case might become moot if subsequent events made it **absolutely clear** that the allegedly wrongful behavior could not reasonably be expected to recur." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)) (emphasis added). The party asserting mootness bears the "formidable burden" of establishing this element. *Friends of the Earth*, 528 U.S. at 190. *See also City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) (same); *Brach v. Newsom*, 6 F.4th 904, 919 (9th Cir. 2021) (same). Furthermore, uncertainty weighs in favor of the plaintiff. *Wall v. Wade*, 741 F.3d 492, 498 n.8 (4th Cir. 2014) (that defendant alters challenged conduct after complaint is filed "strongly indicates that the change was at least

somewhat related to the . . . pending lawsuit."). In fact, the cessation of disputed activity need only be "at least somewhat related to the pending litigation for the voluntary cessation exception to apply." *Id.*

The Supreme Court has held that a defendant satisfies this heavy burden when, for example, it enters into an "unconditional and irrevocable" agreement that prohibits it from returning to the challenged conduct. *Already, LLC v. Nike, Inc.,* 568 U.S. 85, 93 (2013). *See also Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1152 (9th Cir. 2019) (defendant may satisfy this heavy burden by "persuading the court that 'the change in its behavior is "entrenched" or "permanent."'") (citing *Fikre v. FBI*, 904 F.3d 1033, 1037 (9th Cir. 2018) (quoting *McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015))).

Defendants have not alleged any agreement not to repeat their wrongful conduct, much less an irrevocable one. Indeed, nothing Defendants have said to this Court precludes them from permanently suspending Plaintiffs' accounts anytime Defendants jointly act with, or are compelled by, the government.

The "general amnesty" policy under which Plaintiffs Cuadros' and Root's Twitter accounts were reinstated does not meet Defendants' heavy burden of proof. Def. Opp. at 3; Sebhatu Decl. ¶¶ 5, 7. These scant attestations (1) do not evidence that the "amnesty" program was not incentivized by litigation liability; and (2) fail to establish that the "amnesty" program was the *only* motivation for returning the accounts. Nothing Defendants have presented by way of evidence (as opposed to bald assertions in their brief) establishes that Musk's decisions were based *solely* (or at all) on a "business judgment;" explains the purported "amnesty" program; or denies that Musk's actions were influenced by this litigation. Furthermore, Defendants' bare assertion that the "general amnesty" policy was a business judgment lacks any indication that the business judgment would not change if the government again pressured Twitter to suspend plaintiffs' accounts. There is real world evidence of which this Court can take judicial notice that Mr. Musk's business judgment is particularly tractable when Twitter comes under government pressure. On May 12, 2023, nine days after Plaintiffs filed their Motion, Twitter engaged in viewpoint censorship at the direction of the Turkish government. *See* Matt Novak, *Twitter Blocks*

*Content In Turkey One Day Before National Election*, Forbes (May 13, 2023) https://tinyl.io/8ntC.  Twitter's official Global Government Affairs account Tweeted:  "In response to legal process and to ensure Twitter remains available to the people of Turkey, we have taken action to restrict access to some content in Turkey today."  Twitter Global Government Affairs (@GlobalAffairs), Twitter (May 12, 2023, 11:00 P.M.) https://twitter.com/GlobalAffairs/status/1657219168863756288.  Elon Musk responded to a user highlighting the censorship policy by stating "Did your brain fall out of your head, [Matthew] Yglesias?  The choice is have Twitter throttled in its entirety or limit access to some tweets.  Which one do you want?"  Elon Musk (@elonmusk), Twitter (May 13, 2023, 12:27 PM) https://twitter.com/elonmusk/status/1657422401754259461.  Musk admitted that Twitter was actively engaging in content censorship at the behest of a state—just two days before an election, far too short a time to litigate the matter.

Defendants further suggest that Plaintiff Trump's account was reinstated pursuant to a public poll conducted by Elon Musk.  Def. Opp. at 3.  Mr. Musk's "rule by popular vote," *see* Holtzblatt Decl. ¶ 3; Exhibit B, is quite well documented, including a history of discarding public poll results that he finds inconvenient.  For example, after suspending an account that had publicized Musk's location in real-time, Musk held a Twitter poll asking when the banned account should be reinstated.  Fewer than 30 minutes from the poll's closure – when the results were favoring immediate unsuspension – Musk tweeted: "Sorry, too many options.  Will redo poll."  Elon Musk (@elonmusk), Twitter (Dec. 15, 2022, 11:33 PM). https://twitter.com/elonmusk/status/1603609278664712192?lang=en.  Accordingly, the assertion that "Mr. Trump's account was thus reinstated pursuant to Twitter's business judgment," Def. Opp. at 3, fails for the same reasons as stated above.

Notably, Defendants have not produced a sworn statement from their client, Mr. Musk, clarifying his motives and intentions.  Rather, Defendants ask this Court to rely on counsel's speculation and conjecture as to Musk's mind.  Defendants have the burden of showing that the reinstatement of plaintiffs' accounts was not prompted by the pending litigation and that the suspensions will not recur.  They have the means to provide proof on these points from their own

client but, tellingly, have failed to do so.  Musk unquestionably knew about this litigation at the time he acquired Twitter and subsequently implemented the so-called "amnesty" policy; reinstating some of Plaintiffs' Twitter accounts was one obvious means of reducing the company's litigation risk.  If that is not the reason, why hasn't he provided a sworn declaration saying so?  His apparent unwillingness to do so invites the inference that it is not true, and that he does not intend to bind himself not to suspend plaintiffs' accounts again as soon as the FBI and its sister agencies start pressuring him to do so.  If Turkey can convince Twitter to disregard its alleged "policy," why not the U.S. government?

In summary there is no record evidence, much less conclusive proof, that Twitter's reinstatement of Plaintiffs Trump's, Cuadros', and Root's accounts were not "somehow related" to this case, and common sense counsels otherwise.  The failure to present such evidence, when it would have been readily available to the Defendants, establishes the contrary.

### 2. Capable of Repetition Yet Evading Review

Defendants suggest that Plaintiffs forfeited an argument to the *capable-of-repetition-yet-evading review* exception by not raising the exception in Plaintiff's Motion.  Def. Opp. at 3, n.2. This is a peculiar assertion, as it suggests Plaintiffs bear the burden of rebutting Defendants' anticipated mootness arguments before Defendants even raise them, or else risk waiving such potential counterarguments.  Defendants' sole authority for this argument does not contemplate forfeiture, and in fact analyzed the exemption on the merits. *See Native Vill. of Nuiqsut v. BLM*, 9 F.4th 1201, 1216 (9th Cir. 2021).  Furthermore, the Ninth Circuit has held that counterarguments to mootness are forfeited when they are not raised *in a reply brief*.  *See Maicel v. Cate*, 731 F.3d 928, 932 n.4 (9th Cir. 2013) (finding that petitioner had forfeited a counterargument to mootness "by failing to address it in his reply brief even though the state raised mootness in its answering brief.").  The converse must be true:  Raising an argument in a reply brief precludes forfeiture.

The Turkey incident discussed above is a prime example of Twitter's susceptibility to government pressure and influence in content moderation decisions.  While that instance involved a foreign state exerting its coercive authority, pressure by the U.S. government is far more potent, given the many forms of leverage and legal sanctions U.S. authorities can bring to bear.  Any

suggestion that Twitter no longer makes censorship decisions as a consequence of governmental pressures is facially unreasonable.

The suppression of Turkish Twitter accounts on the eve of a national election is reminiscent of Twitter's suppression of the Hunter Biden laptop story—which has now been proven to be true. Nevertheless, Twitter and other media platforms suppressed it just three weeks before the 2020 national election, again too short a time to litigate the issue. Plaintiff Trump, who was victimized by suppression of the Biden laptop story in the last national election, is a declared candidate for the 2024 election and, at this time, the front-runner in national polling. He is therefore particularly susceptible to a repetition of the Biden laptop episode from a government controlled by his likely principal opponent.

## III. CONCLUSION

For the reasons stated, Plaintiffs respectfully submit that the Court should grant this Motion.

Dated: June 22, 2023

Respectfully submitted,

RICHARD POLK LAWSON *(pro hac vice)*
GARDNER BREWER HUDSON

By:   */s/ Richard Polk Lawson*
        Richard Polk Lawson

ANDREI D. POPOVICI (SBN 234820)
MARIE L. FIALA (SBN 79676)
LAW OFFICE OF ANDREI D. POPOVICI, P.C.
2121 North California Blvd. Suite 290
Walnut Creek, CA 94596
Telephone: (650) 530-9989
Email: andrei@apatent.com
Email: marie@apatent.com

JOHN P. COALE *(pro hac vice)*
2901 Fessenden Street NW
Washington, DC 20008
Telephone: (202) 255-2096
Email: johnpcoale@aol.com

|   |   |
|---|---|
| 1 | JOHN Q. KELLY *(pro hac vice)* |
|   | FERGUSON COHEN LLP |
| 2 | 25 Field Point Road |
|   | Greenwich, CT 06830 |
| 3 | Tel: (203) 661-1197 |
|   | Email: jqkelly@fercolaw.com |
| 4 |   |

JOHN Q. KELLY *(pro hac vice)*
FERGUSON COHEN LLP
25 Field Point Road
Greenwich, CT 06830
Tel: (203) 661-1197
Email: jqkelly@fercolaw.com

MICHAEL J. JONES *(pro hac vice)*
RYAN TOUGIAS *(pro hac vice)*
IVEY, BARNUM & O'MARA, LLC
170 Mason Street
Greenwich, CT 06830
Telephone: (203) 661-6000
Email: mjones@ibolaw.com
Email: rtougias@ibolaw.com

FRANK C. DUDENHEFER, JR. *(pro hac vice)*
THE DUDENHEFER LAW FIRM, LLC
2721 Saint Charles Avenue, Suite 2A
New Orleans, LA 70130
Telephone: (504) 616-5226
Email: fcdlaw@aol.com

*Attorneys for Plaintiffs Donald J. Trump,
American Conservative Union, Rafael Barbosa,
Linda Cuadros, Dominick Latella,
and Wayne Allyn Root*

**ATTORNEY ATTESTATION**

I, Andrei D. Popovici, am the ECF user whose user ID and password are being used to file these documents, including Plaintiff's Reply Brief in Support of Plaintiffs' Motion for Indicative Ruling.  Pursuant to N.D. Cal. Civil L.R. 5-1(h)(3), I attest that concurrence in the filing of these documents has been obtained from each of the other signatories.

Dated: June 22, 2023          */s/ Andrei D. Popovici*
                              Andrei D. Popovici